# EXHIBIT A

**EMPLOYEE CONFIDENTIALITY, WORK PRODUCT,**
**INTELLECTUAL PROPERTY, AND NON-SOLICITATION AGREEMENT**

This Confidentiality, Work Product, Intellectual Property, and Non-Solicitation Agreement  (the "Agreement") is entered between the undersigned employee ("Employee" or "You") and LD Holdings.com, LLC, a Delaware limited liability corporation, along with its parents, subsidiaries, affiliates, joint ventures, and its successors and assigns or any such related entities (collectively, "LD Holdings").  In consideration of the employment opportunity provided by LD Holdings, and/or opportunity for increased compensation, and/or promotion, and/or training opportunity and allowing Employee access to Confidential Information, and as an express condition of such access and Employee's employment, or continuing employment, or opportunity for increased compensation, or promotion, or training opportunity by LD Holdings, the sufficiency of which consideration Employee expressly acknowledges, Employee and LD Holdings agree as follows:

1.  **CONFIDENTIAL INFORMATION.**

    A.  Employee agrees that, while employed by LD Holdings and at any time thereafter, Employee will keep strictly confidential and will not, directly or indirectly, disclose to any person or entity or use for the benefit of Employee or any other person or entity any "Confidential Information," as defined below, that Employee learned, obtained or had access to in the course of or as the result of Employee's employment with LD Holdings or using LD Holdings' systems, access means or computing or mobile devices.  Employee agrees, at all times, to take appropriate and reasonable steps to safeguard Confidential Information and to protect it against disclosure, misuse, unauthorized access, espionage and theft.

    B.  "Confidential Information" means,  information and materials in any medium learned, obtained or accessed by Employee because of or through his or her employment with LD Holdings, or using LD Holdings' systems, access means or computing or mobile devices, about LD Holdings' business, prospects, plans and operations, products, processes, methods of doing business, systems, databases and technology, inventions and other intellectual property, loan origination and marketing practices, training, services, and Customers (as defined herein) and that is not known or readily available through proper and lawful means to the general public.  "Customers" means for purposes of this Agreement visitors or registrants to LD Holdings websites, leads, callers to LD Holdings call centers, loan or prequalification or preapproval applicants (whether or not a loan is approved or closed or denied), and loan customers, in each case, past, present and future.

    C.  Employee agrees that Confidential Information includes, without limitation:

        i.   LD Holdings' business policies and strategies, finances, and business plans;
        ii.  LD Holdings' custom-developed or proprietary training methods and materials, including by way of example all materials used in LD Holdings' ACES, SELECT, and STARS training programs;
        iii. LD Holdings' marketing and advertising plans and strategies, marketing and promotional partnerings, digital keyword strategies, conversion strategies, website and online marketing data, and data generated and output from the foregoing efforts;
        iv.  Customer data, regardless of how collected, including by way of example, all personal data and non-public personal financial information of or regarding Customers, loan

Page **1** of **9**

applications, Customer loan files and all information in them (including by way of example account and payment card data, credit reports, social security numbers and other personal identification numbers, income, employment history, names, contact information, and other data that identifies or can be used to identify a person);

v. Underwriting information, loan decision information, information on the usefulness to Customers of LD Holdings' products and/or services, records of Customer purchases of LD Holdings' products or services, other LD Holdings databases, and the details of any loan originated by LD Holdings;

vi. Pricing and fee policies and practices;

vii. Physical and virtual security systems, system passwords and other access credentials, access control systems and protocols, information and network security information, data protection procedures and measures, disaster recovery and business continuity policies and procedures, and network designs;

viii. LD Holdings' "trade secrets" as defined in California Civil Code section 3426 *et seq.* and/or as defined under the law in any applicable jurisdiction;

ix. Job aids;

x. Source code and other computer code of any websites, products, loan origination or servicing platforms, and other software, systems and interfaces developed by or for LD Holdings or used by LD Holdings to conduct its business and the designs, data schema, algorithms, documentation, workflows  and architecture thereof;

xi. Terms of contracts and arrangements with third parties;

xii. Supplier and vendor information;

xiii. Legal, regulatory affairs and compliance information of LD Holdings;

xiv. Personnel records;

xv. Proprietary techniques and know-how;

xvi. Proprietary or confidential information disclosed by third parties to LD Holdings which LD Holdings is required to treat with confidentiality; and

xvii. Any notes, analyses, summaries, reproductions, extracts, translations, compilations, logs, records, work products and work in progress, software or other material or documents obtained, accessed, or prepared by or for the Employee which contain, reflect or are based on the Confidential Information.

D. Employee acknowledges and agrees that LD Holdings has taken reasonable measures to keep such Confidential Information confidential  or secret, and that the Confidential Information derives independent economic value from not being generally known to and not being readily ascertainable through proper means by another person who can obtain economic value from the disclosure or use of the information.

E. Employee further agrees that all Confidential Information, and all materials, documents, records, files, memoranda, reports, presentations, proposals, business plans, data, customer lists, storage devices, and other property, whether in hard copy, tangible or electronic form, relating to or containing Confidential Information that Employee may or will use, prepare, access, modify, obtain, work on or come into contact with, and all systems, software, computing equipment and mobile devices provided by LD Holdings, will be and remain the sole property of LD Holdings.  Employee agrees that he or she will return any such Confidential Information and property to LD Holdings upon the termination of Employee's employment or at any other time promptly upon the request of LD Holdings and that Employee will not share, copy, transmit, or use such Confidential Information or property

DocuSign Envelope ID: A5B35005-F4A3-446C-AF4C-00C6F9AEF958

except only to the extent required solely for and in the course of Employee's employment by LD Holdings.  To the extent the property is in an electronic format, Employee will confirm in writing upon request that he or she has returned or destroyed any such electronically-stored information or property that was in his or her possession, custody, and/or control.

F.   Employee understands that Employee is not authorized to remove from the place of employment or download to unencrypted mobile devices or laptops, or to sell, distribute, transfer, share, publish or otherwise communicate publicly any of the Confidential Information, and may use or disclose such Confidential Information to others only as may be strictly necessary for the performance of the Employee's duties for LD Holdings as directed by LD Holdings.  Subject to the remaining terms of this Agreement, if Employee receives a subpoena, request for information or documents, court order or other governmental or third party request for information or materials that contain Confidential Information, before producing the material or information, Employee agrees to notify LD Holdings immediately in writing and permit LD Holdings to seek a protective order or other protection against the disclosure of the Confidential Information.

## 2.   **WORK PRODUCT.**

A.   "Work Product" means, in any medium and whether completed, in draft form or in progress, all the work product, work in progress, work notes, work files, output, materials, data, inventions, improvements, records, strategies, plans, computer code, documentation, brands, trade secrets, technologies and systems,  works of authorship, Customer files and information, analyses, prototypes, manuals, websites, methodologies, procedures, techniques, and derivative works that have been or are created, authored, conceived, developed, contributed to, reduced to practice, generated or produced by Employee, solely or  jointly  with  others,  at any time during the period of Employee's employment by LD Holdings, and all other results and proceeds of Employee's services and duties performed for or on behalf of LD Holdings, and the Intellectual Property Rights in all of the above.

B.   Employee agrees that Work Product includes, by way of example and whether tangible or intangible, without limitation:

   i.   all material, writings, audiovisual works, concepts, plans, strategies, data, formats, suggestions, discoveries, methodologies, systems, websites, notes, analyses; summaries, copies, extracts, translations, compilations, logs, records, presentations

   ii.   documents of any kind and nature, information fixed in any tangible medium of expression (whether or not protected under copyright laws);

   iii.   application, underwriting and loan records, contracts with third parties, applicant and customer data (including any and all personal data), call center records and data;

   iv.   personnel records, training materials and methods;

   v.   computer programs, source code, object code, code libraries, documentation, technical or business data, algorithms, data models, drawings, designs, specifications, calculations, renderings, websites, portals, user interfaces, the look and feel of online presences, prototypes, products, methods of doing business, systems, tools, and databases;

   vi.   loan origination and marketing practices and data, conversion strategies, website and online marketing data, legal files and regulatory submissions; and

   vii.   regulatory affairs and compliance information of LD Holdings, in each case that are produced, prepared, conceived, developed, acquired, obtained, generated, created

and/or furnished by or submitted to You prior to or during Your employment by LD Holdings.

C.  Employee agrees that all Work Product that is in the nature of works of authorship that are made by Employee (solely or jointly with others) during the employment term with LD Holdings will be considered "works made for hire," as that term is defined in the United States Copyright Act and any successor statutes, and Employee recognizes and agrees that LD Holdings is the sole author and copyright holder of such Work Product.

D.  To the extent any Work Product is not under applicable law created as a work made for hire exclusively owned by LD Holdings, Employee  hereby irrevocably transfers and assigns from the moment of creation and without reservation of rights,  and agrees to irrevocably transfer and assign without further compensation or other further consideration,  to LD Holdings.com, LLC or its successors or assigns as determined by LD Holdings, all right, title and interest in and to the Work Product including, but not limited to, all copyrights and similar protections and renewals and extensions of copyright, patent rights, trademark rights, trade secrets rights and all other Intellectual Property Rights in  or to the Work Product, and  any and all causes of action that have accrued or may accrue in Employee's favor for infringement or misappropriation of any such Intellectual Property Rights and all rights to seek and retain recoveries from enforcement of such Intellectual Property Rights. To the extent that any Intellectual Property Right in any Company Materials or derivative works of Company Materials vested or in the future vests in Employee, if any, Employee further agrees to irrevocably assign and transfer, and hereby irrevocably assigns and transfers to LD Holdings.com, LLC or its successors or assigns as determined by LD Holdings, all right, title and interest in the Company Materials (as defined below) including all Intellectual Property Rights therein, without further compensation or other consideration, and from the moment of creation and without reservation of rights.

E.  Notwithstanding the foregoing, Employee hereby acknowledges that LD Holdings has notified Employee that any assignment otherwise provided for above shall not apply to any invention that qualifies fully for exemption from assignment under the provisions of Section 2870 of the California Labor Code, which provides as follows:

"(a) Any provision in an employment agreement which provides that an employee shall assign, or offer to assign, any of his or her rights in an invention to his or her employer shall not apply to an invention that the employee developed entirely on his or her own time without using the employer's equipment, supplies, facilities, or trade secret information except for those inventions that either: (1) relate at the time of conception or reduction to practice of the invention to the employer's business, or actual or demonstrably anticipated research or development of the employer; or (2) result from any work performed by the employee for the employer.  (b) To the extent a provision in an employment agreement purports to require an employee to assign an invention otherwise excluded from being required to be assigned under subdivision (a), the provision is against the public policy of this state and is unenforceable."

F.  Employee hereby forever waives and agrees never to assert (or cause another to assert) against LD Holdings, its successors, assigns or licensees any and all ownership, interest, "moral rights" or similar rights with respect to the Work Product or the Company Materials. Neither the suspension nor termination of Employee's employment nor any expiration of this Agreement will in any way adversely affect LD Holdings' ownership of the Work Product and the Company Materials, and this Agreement and the assignments made herein survive any termination of employment or this Agreement for any reason.

G.  During or subsequent to Employee's employment with LD Holdings, Employee agrees to execute and deliver all documents and other instruments, and otherwise provide assistance, at LD Holdings' request and expense, to enable LD Holdings or  its  nominees to  apply for protection and registration of the Intellectual Property Rights in the Work Product and Company Materials, and obtain  and  enforce  all  proprietary rights  with  respect  to  the Work Product and Company Materials in any and all countries.  To that end, Employee will execute, verify and deliver such documents and perform such other acts (including appearances as a witness) as LD Holdings may reasonably request for use in applying for, obtaining, perfecting, defending, evidencing and enforcing any such proprietary rights, and the assignment of any or all of such proprietary rights.  In addition, Employee will execute, verify and deliver assignments of such rights to LD Holdings or its designee.  Employee's obligation to assist LD Holdings with respect to such rights shall continue beyond the termination of Employee's association with LD Holdings.  LD Holdings will reimburse Employee for all reasonable and documented out-of-pocket expenses incurred by Employee in fulfilling Employee's obligations under this Section.

H.  Employee waives and quitclaims to LD Holdings all claims of any nature whatsoever that Employee now has or may in the future obtain for infringement or misappropriation of any proprietary rights assigned or required to be assigned under this Agreement or otherwise to LD Holdings.

I.  The "Intellectual Property Rights" that LD Holdings owns and will own in the Work Product and the Company Materials include copyrights, inventions and rights to patentable inventions (whether or not an application for protection has been filed under patent laws), patent rights,  design rights, rights in mask works, trademarks, trade names, trade dress, trade secrets, publicity rights, database rights, rights in know-how, ideas (whether or not protected under trade secret laws), moral rights (which are rights to claim authorship of a work, any right to object to any distortion or other modification of a work, and any similar right, existing under the law of any country, or under any treaty) and all other intellectual or industrial property rights recognized anywhere in the world and all rights to file applications and obtain registrations therefor, all rights of renewal, extension, continuation, division, extension and protection, in each case in each case that have been or are have been or are created, authored, invented, conceived, developed, contributed to, reduced to practice, generated or produced by Employee, solely  or  jointly with others,  at  any  time  during the  employment  term.

J.  "Company Materials" means all the materials, data, computer code, software, supplies, records, files, manuals, works of authorship, checklists, templates, forms, equipment, systems, tools, portals, guidelines, instructions, customer and applicant lists, customer and

applicant data, loan documents and loan data, analyses, disclosures, and other items in any medium that are provided or made available or accessible to Employee by or on behalf of LD Holdings in connection with or as a result of Employee's employment by LD Holdings or to be used to perform Employee's employment services and duties, whether or not You have or had any involvement in the creation, development or production of such items, and the Intellectual Property Rights in and derivative works of all of the above.

K.   For purposes of this Agreement, "Prior Inventions" means all inventions, original works of authorship, developments, discoveries and improvements which were made by Employee, alone or jointly with others, prior to or independent of Employee's employment with LD Holdings.  To preclude any possibility of uncertainty, Employee has set forth on Exhibit A attached hereto a complete list of all Prior Inventions that Employee considers to be Employee's property or the property of third parties and that Employee wishes to have excluded from the scope of this Agreement.  If disclosure of any such Prior Invention on Exhibit A would cause Employee to violate any prior confidentiality agreement, Employee understands that Employee is not to list such Prior Invention in Exhibit A but is to inform LD Holdings that all Prior Inventions have not been listed for that reason.  Unless the parties otherwise agree in writing, Employee is under no obligation to incorporate any Prior Inventions in any of LD Holdings' products or processes or other Work Product.  If, in the course of Employee's performance Employee chooses to incorporate into any such LD Holdings product or process or other Work Product any Prior Invention owned by Employee or in which Employee otherwise has an interest, Employee grants to LD Holdings a non-exclusive, royalty free, irrevocable, perpetual, world-wide license to copy, make and have made, distribute, display, modify and create derivative works of such Prior Inventions and use, sell and license derivative works as part of or in connection with any such LD Holdings product or process or other Work Product.

L.   **TANGIBLE/ INTANGIBLE PROPERTY.**

i.    Upon termination of Employee's employment for any reason, or upon receipt of written request from LD Holdings, Employee shall immediately deliver to LD Holdings all tangible and intangible property (including computers, computing devices, cell phones, memory devices, files, data downloads and any other tangible item), drawings,  notes, memoranda,  specifications,  devices, notebooks,  formulas and  documents, together with all copies of any of the foregoing, and any other material containing, summarizing, referencing, or incorporating in any way or otherwise disclosing any Work Product or Company Materials.

ii.   Employee agrees to follow the security protocols and policies adopted by LD Holdings with respect to the access, use and handling of Confidential Information, as those may vary from time to time, and to promptly notify LD Holdings of any suspected or known unauthorized use, disclosure, sharing, transmission or access to Confidential Information of which Employee becomes aware (whether by Employee, another employee or any third party).

iii.  Employee acknowledges that Employee is prohibited from using or disclosing in the performance of Employee's responsibilities for LD Holdings any confidential information, proprietary materials or trade secrets of any other person or entity and the Employee shall not bring onto the premises, databases or systems of LD Holdings any

confidential or proprietary information or materials belonging to any such party unless consented to in writing in advance by such party and by LD Holdings.

3.  **NON-SOLICITATION.**

To the fullest extent permitted by applicable law:

A.  Employee agrees that, for a period of one (1) year following the termination of his or her employment, regardless of reason,  solicit, take away, or attempt to call on, solicit or take away any Customer with whom he or she became acquainted during the term of his or her employment, as a result of his or her employment with LD Holdings.

B.  Employee agrees that he or she will not, while in the employment of LD Holdings and for a period of one (1) year after the termination of that employment regardless of reason, solicit or induce, directly or indirectly, whether on his or her own behalf, working with or through others, on or behalf of or through any other person, business or entity, an employee or independent contractor of LD Holdings to terminate his or her employment or contractor relationship with LD Holdings or apply for employment or a contractor relationship with any person, business or entity.

C.  Employee agrees that he or she will not directly or indirectly, while in the employment of LD Holdings and for a period of one (1) year after the termination of that employment regardless of reason, or as otherwise required by law, induce any employee or independent contractor of with LD Holdings to terminate or breach an employment, contractual, or other relationship with LD Holdings.

4.  **LIQUIDATED DAMAGES.**

A.  Employee acknowledges and agrees that Customers' privacy and the non-disclosure of Confidential Information are vitally important to LD Holdings, that LD Holdings will be seriously harmed by the breach of Customers' privacy or unauthorized disclosure of Confidential Information, that the amount of such harm is likely to be very substantial and to vary with the type and extent of disclosure and/or use of such information, and that it would be extremely difficult and impractical, if not impossible, to measure the full extent of the actual damages caused by Employee's violation of Employee's obligations under this Agreement.  ACCORDINGLY, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, IF EMPLOYEE VIOLATES HIS OR HER OBLIGATIONS HEREUNDER, EMPLOYEE AGREES TO PAY LIQUIDATED DAMAGES TO LD HOLDINGS ACCORDING TO THE FOLLOWING SCHEDULE OF LIQUIDATED DAMAGES, WHICH EMPLOYEE  ACKNOWLEDGES AND AGREES IS REASONABLE IN LIGHT OF THE CIRCUMSTANCES EXISTING AT THE TIME THIS CONTRACT IS MADE:

B.  Private disclosure or repetition of Confidential Information: 10% OF THE EMPLOYEE'S ANNUAL COMPENSATION in US dollars ($) for each person to whom each such disclosure or repetition is made.

C.  Causing, participating in, cooperating in, aiding or abetting the publication, broadcast or other public disclosure or repetition of Confidential Information:

       i.   In a newspaper, magazine or other periodical: $20 for each copy printed, with a minimum of $250,000 per publication.

      ii.   On the Internet: 100% OF THE EMPLOYEE'S ANNUAL COMPENSATION in US dollars ($) for each publication or repetition.

     iii.   By other public disclosure or repetition, including via any electronic medium other than the Internet: 100% OF THE EMPLOYEE'S ANNUAL COMPENSATION in US dollars ($) for each such disclosure or repetition.

5.   **REMEDIES.**  Employee acknowledges that monetary damages alone will not be a sufficient remedy for Employee's breach of any provision of this Agreement and that, in addition to other remedies available to LD Holdings, LD Holdings shall be entitled to specific performance, injunctive relief, or such other equitable relief a court of competent jurisdiction deems appropriate.  The prevailing party in any legal action arising from or relating to this Agreement shall be entitled to recover its reasonable attorneys' fees and costs including those incurred in any related appeal.

6.   **GOVERNING LAW.**  This Agreement shall be governed, construed, and enforced in accordance with the laws of the State in which the office where Employee is principally employed is located without regard to principles of conflicts of law.

7.   **IMMUNITY FROM LIABILITY FOR CONFIDENTIAL DISCLOSURE OF A TRADE SECRET TO THE GOVERNMENT OR IN A COURT FILING.**  Employee shall not be held criminally or civilly liable under any U.S. Federal or State trade secret law for the disclosure of a trade secret that (i) is made (a) in confidence to a U.S. Federal, State, or local government official, either directly or indirectly, or to an attorney and (b) solely for the purpose of reporting or investigating a suspected violation of law; or (ii) is made in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal.

8.   **USE OF TRADE SECRET INFORMATION IN ANTI-RETALIATION LAWSUIT.**  If Employee files a lawsuit against LD Holdings for retaliation by LD Holdings for Employee's reporting of a suspected violation of law, Employee may disclose the trade secret to Employee's attorney and use the trade secret information in the court proceeding if Employee (a) files any document containing the trade secret under seal; and (b) does not disclose the trade secret except pursuant to court order.

9.   **SUCCESSORS.**  This Agreement shall be binding upon Employee and his or her heirs, executors and representatives and shall inure to the benefit of LD Holdings and its successors, representatives, and assigns.

10.  **SEVERABILITY.**  Should any of the provisions in this Agreement be declared or be determined to be illegal or invalid, all remaining parts, terms, or provisions shall be valid, and the illegal or invalid portion or provision shall be deemed not to be a part of this Agreement.

11.  **ENTIRE AGREEMENT.**  Employee and LD Holdings agree that this Agreement is the sole and entire agreement between Employee and the Company as to the matters described herein and that it supersedes any prior or contemporaneous agreements or understandings as to the

matters described herein.  This Agreement does not supersede any other agreement(s) Employee may have with LD Holdings unrelated to the subject matter of this Agreement except where any portion of such other agreement conflicts with this Agreement.

12. **MODIFICATIONS.**  This Agreement can only be modified or canceled by a writing signed by Employee and an executive of LD Holdings at the level of Executive Vice President or higher. Any waiver of a provision of this Agreement must be expressly given in a writing signed by the parties and the failure to enforce any provision of this Agreement will not constitute a waiver of its provisions.

13. **AT-WILL EMPLOYMENT.**  This Agreement is not and shall not be construed as a contract for employment for a specified term.  This Agreement is limited to the subject matter of confidentiality and data protection as described in this Agreement.  Employment with LD Holdings is at-will, meaning that Employee and LD Holdings may terminate Employee's employment at any time, with or without cause and with or without advance notice.

14. **CONTINUATION OF OBLIGATIONS**.  The obligations of the Employee under this Agreement and all ownership rights, assignments and licenses provided for in this Agreement will survive and continue after the termination of the Employee's employment for any reason or any termination of this Agreement.  All Confidential Information accessed, learned or obtained by the Employee will continue to be treated by the Employee as Confidential Information under the terms of this Agreement, until such time as the information is or becomes lawfully publicly known through no fault or act or breach of the Employee or any unauthorized third party. The Employee agrees to perform any further acts and execute and deliver any documents that may be reasonably necessary to carry out the provisions of this Agreement.

EMPLOYEE'S SIGNATURE CONFIRMS THAT HE OR SHE HAS READ THIS AGREEMENT IN ITS ENTIRETY AND UNDERSTANDS ITS TERMS AND ACKNOWLEDGES THAT HE OR SHE HAS HAD THE OPPORTUNITY TO CONSULT WITH LEGAL COUNSEL OF HIS OR HER CHOICE AND/OR OTHER PERSONS TO THE FULL EXTENT DESIRED BEFORE SIGNING THIS AGREEMENT. EMPLOYEE'S SIGNATURE REPRESENTS THAT HE OR SHE HAS BEEN GIVEN A REASONABLE TIME TO REVIEW AND CONSIDER THIS AGREEMENT AND ENTERS THIS AGREEMENT OF HIS OR HER OWN FREE CHOICE. IF EMPLOYEE HAS ANY QUESTIONS REGARDING THESE TERMS, PLEASE CONTACT generalcounsel@LD Holdings.com.

_____

Signed: Kevin Tackaberry

EVP, Human Resources
_____

TITLE

05/14/2019
_____

DATE

_____

Acknowledged

Mar 30, 2020 | 6:41 AM PDT
_____

Date