# EXHIBIT C



# RETAIL MASTER INCENTIVE PLAN

All incentive plans at loanDepot.com, LLC ("the Company"), including sales incentives and other incentive plans, are covered by this Retail Master Incentive Plan (the "MIP") effective from and after January 1, 2019. The Company's incentive programs are intended to reward eligible participants for their contributions in meeting the Company objectives. The MIP describes the overarching purpose, structure, eligibility, administration and payout mechanics as well as the general terms and conditions of all incentive plans.

## I. PLAN STRUCTURE

A. The Plan. The "Plan" collectively refers to this MIP and the Role-Specific Incentive Terms ("RITs") offered for a particular role.

B. Plan Governance. The Plan has been approved and is governed by a Plan Governance Committee (the "Committee") comprised of Company executives.

C. Eligible Employees. Employees of the Company who have been designated by the Committee as eligible to participate in an incentive compensation plan and who sign and return to the Company a copy of the Plan may participate ("Participant") in this Plan.

D. New Hires. Eligible employees hired will be eligible for participation in the Plan as of such employee's official start date of employment in an eligible role.

E. RITs. Each Participant's opportunity to earn incentive compensation will be based on the RITs offered for his or her role. Those terms are attached to this MIP as Attachment A. The RITs for each position may vary, and Participant should look to both this MIP and their RITs to understand the full terms of their incentive compensation.

## II. KEY BEHAVIORS AND COMPETENCIES REQUIRED FOR PARTICIPATION IN PLAN

A. Plan Participation. Participants may be disqualified from participation in the Plan or have their incentives adjusted if they are found to have violated Company policy, engaged in misconduct, or failed to demonstrate expected performance behaviors or key competencies such as initiative, teamwork, leadership, job ownership & accountability, which the Company considers vital for ensuring individual team member success. Incentive payments that may be impacted by failures in these areas will be made at the discretion of the Committee.

## III. INCENTIVE PAYMENT TERMS



A. Incentive Compensation Eligibility. Incentive compensation is not earned until: (1) all conditions precedent for eligibility for incentives under the terms of the Plan have been met; (2) all conditions precedent set out in the RITs have been met; (3) all information necessary to calculate and verify eligibility for an incentive has been received by Company and the calculations have been performed; and (4) the Measurement Period has concluded. The applicable "Measurement Period" is the period of time (i.e., quarterly, monthly, etc.) used to calculate the incentive and/or on which incentives are awarded. Measurement Periods are described in the RITs, based on the incentives available to a role. In some instances, the Company may pay anticipated incentives prior to all conditions being met; in any such case, the payment is a draw or advance on anticipated earnings and is subject to reconciliation (i.e., a true-up) based on actual results.

B. Loan Quality/Compliance: Loans that are obtained, procured, originated, sourced or funded through fraud or misconduct or in a manner that is inconsistent with the Company's policies specific to loan origination quality and compliance will not be eligible or considered for purposes of calculating any potential incentive compensation under the Plan. This term is not intended to limit any further action to address such issues by the Company, including disqualification of a Participant from participation in this Plan, and possible disciplinary action, up to and including termination of employment.

C. Adjustments for Uncollected Appraisal Fees: Pursuant to Company policy, Participants are required to collect all applicable appraisal pass-through fees on a loan ("Appraisal Fees"). Failure to collect Appraisal Fees is a willful violation of Company policy. A Participant's incentive compensation shall be adjusted at Company's discretion to account for any and all uncollected Appraisal Fees on canceled and denied loans as permitted by applicable law.

D. Payment of Incentives: Unless otherwise specified in the RIT, under typical circumstances, incentives calculable between the 1st and the 15th day of a month will be advanced on the 28th day of the same month. Incentives earned between the 16th through the last day of a month, will be advanced on the 15th day of the following month. Incentive payments are a draw, advanced on anticipated final earnings, and are subject to reconciliation (i.e., a true-up) based on actual results.

E. Treatment and Reconciliation of Advances: The Company is under no obligation to advance incentive pay and reserves the right to charge back an advance in the event that actual results fall short of expected earnings. In such cases, the Company ordinarily will reconcile advances in excess of earnings against future advances. Once the need for reconciliation is apparent to the Company, reconciliation against actual results ordinarily will be made at the next pay cycle. If a Participant's employment ends prior to full reconciliation of an advance, then the amount outstanding becomes due and payable in full at the time of termination. If permissible under state and local law, Participant acknowledges and agrees that Company can deduct advances that exceeded actual



earnings from his or her final paycheck (including accrued vacation if payable at the time of termination), future incentives, and or other compensation.

F. Withholding and Deductions: All compensation payable to a Participant pursuant to this this Plan shall be subject to such withholding and deductions by the Company as required by law.

G. Review and Correction of Incentives: All incentive payments made under the Plan are subject to review and approval by the Company. Any correction, and the manner in which it is addressed, shall be at the sole discretion of management.

IV. CHANGES IN EMPLOYEE STATUS AND EFFECT ON INCENTIVES AND PARTICIPATION IN PLAN

A. Death. An incentive payment, considering the Company and individual performance, may be approved for payment according to normal Plan payout timing to the estate of any Participant who dies.

B. Disability: An incentive payment, considering the Company and individual performance, may be approved for payment according to normal Plan payout timing to any Participant who becomes permanently disabled.

C. Reassignment/Transfer/Promotion/Termination: The RITs set forth the terms of any incentive payment for Plan participants who terminate employment with the Company or if Participant is reassigned, transferred, or promoted to a position that is not eligible to participate in this Plan.

V. ADDITIONAL TERMS AND CONDITIONS

The Company and the Committee have developed the Plan with the intent of honoring and executing all payments described by the MIP or the RITs according to the parameters defined herein. In compliance with expectations of the Committee, the Company maintains standard terms and conditions for all participants in the Plan. These standard terms and conditions are as follows:

A. The Plan may be changed, modified, amended or terminated at any time at the sole discretion of the Committee. The Plan does not guarantee any financial obligation and the representations and definitions in the Plan should not be construed as a proposed contract or promise of payment between the Company and any of its employees, whether or not they are Participants in the Plan.

B. No person shall have any right, vested or contingent, or any claim whatsoever, to be granted any award or receive any payment under the Plan.



C. Neither the action of the Company in establishing this Plan, nor any provisions hereof, nor any action taken by the Company, shall be construed as giving any employee the right to be retained in the employ of the Company for any period of time, or to be employed in any particular position, or any particular rate of remuneration. All employees of the Company are employed at-will.

D. Payment pursuant to this Plan shall not affect, or have application to, the Company life insurance, medical or other employee benefit plans, whether contributory on the part of the employees, except as may be specifically provided by the terms of the specific plan.

E. No right or benefit under this Plan shall be subject to anticipation, alienation, sale assignment, pledge, encumbrance or change by, or to the debts, contracts liabilities or torts of a participant or any other person. Any attempt to subject any such right or benefit shall be void, and upon any such attempt, or upon the bankruptcy of any Participant, such right or benefit (or, in the event of such bankruptcy, such rights and benefits as the Company may specify), shall, at the discretion of the Company, cease and terminate.

F. Any dispute about the terms of the Plan or a Participant's entitlement to any type of compensation under the Plan: (a) is subject to the Company's Mutual Arbitration Agreement. This Plan does not and shall not be construed to in any way alter the Mutual Arbitration Agreement, which remains in full force and affect; (b) , shall be governed by the law of the state in which the Participant primarily worked for the Company, and, without regard to conflicts of law principles, shall exclusively govern any disputes between them, including but not limited to, the validity, interpretation, and effect of this Plan, as well as any other disputes arising out of this Plan; except, however, this Plan shall in all respects be interpreted, enforced and governed under federal law to the extent federal law preempts state law.

VI. EMPLOYEE CONFIDENTIALITY, COMPANY PROPERTY, AND NON-SOLICITATION OBLIGATIONS (Referred to herein as "Section VI of this Plan")

In consideration of the opportunity to earn incentive compensation under the Plan, and allowing the Participant access to Confidential Information, and as an express condition of such opportunity to earn incentive compensation, and the Participant employment, or continuing employment, or opportunity for increased compensation, or promotion, or training opportunity by the Company, the sufficiency of which consideration Participant expressly acknowledges, Participant and the Company agree as follows:

A. Confidential Information & Tangible/Intangible Property.

1. Participant agrees that, while employed by the Company at any time thereafter, Participant will keep strictly confidential and will not, directly or indirectly, disclose to any person or entity or use for the benefit of Participant or



any other person or entity any "Confidential Information," as defined below, that Participant learned, obtained or had access to in the course of or as the result of Participant's employment with Company or using Company's systems, access means or computing or mobile devices. Participant agrees, at all times, to take appropriate and reasonable steps to safeguard Confidential Information and to protect it against disclosure, misuse, unauthorized access, espionage and theft.

2. "Confidential Information" means information and materials in any medium learned, obtained or accessed by Participant because of or through his or her employment with Company, or using Company's systems, access means or computing or mobile devices, about Company's business, prospects, plans and operations, products, processes, methods of doing business, systems, databases and technology, inventions and other intellectual property, loan origination and marketing practices, training, services, and Customers (as defined herein) and that is not known or readily available through proper and lawful means to the general public as well as Customer data. "Customers" mean, for purposes of this Section VI of this Plan, visitors or registrants to Company websites, leads, callers to Company call centers, loan or prequalification or preapproval applicants (whether or not a loan is approved or closed or denied), and loan customers, in each case, past, present and future.

3. Participant acknowledges and agrees that Company has taken reasonable measures to keep such Confidential Information confidential or secret, and that the Confidential Information derives independent economic value from not being generally known to and not being readily ascertainable through proper means by another person who can obtain economic value from the disclosure or use of the information.

4. Participant agrees that he or she will return any such Confidential Information and property to Company upon the termination of Participant's employment or at any other time promptly upon the request of Company and that Participant will not share, copy, transmit, or use such Confidential Information or property except only to the extent required solely for and in the course of Participant's employment by Company. To the extent the property is in an electronic format, Participant will confirm in writing upon request that he or she has returned or destroyed any such electronically-stored information or property that was in his or her possession, custody, and/or control.

5. Upon termination of Participant's employment for any reason, or upon receipt of written request from Company, Participant shall immediately deliver to Company all tangible and intangible property (including computers, computing devices, cell phones, memory devices, files, data downloads and any other tangible item), drawings, notes, memoranda, specifications, devices,



notebooks, formulas and documents, together with all copies of any of the foregoing, and any other material containing, summarizing, referencing, or incorporating in any way or otherwise disclosing any work product or Company materials.

B. Non-Solicitation. To the fullest extent permitted by applicable law, Participant agrees that he or she will not, while in the employment of Company and for a period of one (1) year after the termination of that employment regardless of reason, solicit or induce, directly or indirectly, whether on his or her own behalf, working with or through others, on or behalf of or through any other person, business or entity, an employee or independent contractor of Company to terminate or breach his or her employment or contractor relationship with Company or apply for employment or a contractor relationship with any person, business or entity.

C. Remedies. Participant acknowledges that monetary damages alone will not be a sufficient remedy for Participant's breach of any provision of this Section VI of this Plan and that, in addition to other remedies available to Company, Company shall be entitled to specific performance, injunctive relief, or such other equitable relief a court of competent jurisdiction deems appropriate. The prevailing party in any legal action arising from or relating to Section VI of this Plan shall be entitled to recover its reasonable attorneys' fees and costs including those incurred in any related appeal.

D. Continuing Obligations. The obligations of the Participant under Section VI of this Plan and all ownership rights, assignments and licenses provided for in this Section VI of this Plan will survive and continue after the termination of the Participant's employment for any reason or any termination of the Plan.



RECEIPT & ACKNOWLEDGEMENT

By acknowledging this document through DocuSign, I understand that I am acknowledging that I have received, reviewed, and accept the terms of the Plan, including the MIP and any applicable RITs. I also understand and agree that the Company may change, modify, amend or terminate the Plan at any time at its sole discretion. I understand that this Plan does not constitute a guarantee or contract of employment, and nothing in it should be construed to limit or change the at-will employment relationship between the Company and myself which may be terminated at any time, with or without cause or notice, by me or the Company.

EMPLOYEE'S ACKNOWLEDGMENT THROUGH DOCUSIGN CONSTITUTES AN ELECTRONIC SIGNATURE AND CONFIRMS THAT HE OR SHE HAS READ THE PLAN, INCLUDING ANY RITS, IN ITS ENTIRETY AND UNDERSTANDS ITS TERMS AND ACKNOWLEDGES THAT HE OR SHE HAS HAD THE OPPORTUNITY TO CONSULT WITH LEGAL COUNSEL OF HIS OR HER CHOICE AND/OR OTHER PERSONS TO THE FULL EXTENT DESIRED BEFORE SIGNING THIS AGREEMENT. EMPLOYEE'S ACKNOWLEDGEMENT REPRESENTS THAT HE OR SHE HAS BEEN GIVEN A REASONABLE TIME TO REVIEW AND CONSIDER THIS AGREEMENT AND ENTERS THIS AGREEMENT OF HIS OR HER OWN FREE CHOICE. IF EMPLOYEE HAS ANY QUESTIONS REGARDING THESE TERMS, PLEASE CONTACT generalcounsel@loandepot.com.

DocuSigned by:
Scott Bonora
999E961A718E4F8...
Scott Bonora

1/31/2019 | 2:18:22 PM PST

Dan Hanson
Chief Retail Production Officer
DHanson@loanDepot.com