**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **loanDepot.com, LLC** | |
| Plaintiff, | Case No. 1:22-cv-5971 |
| vs. | |
| **CROSSCOUNTRY MORTGAGE, LLC, KEISHA ANTOINE, SCOTT BONORA, STUART KOLINSKY, BARRY KOVEN, ENRICO MARTINO, SCOTT NADLER, EMELINE RAMOS, ROBERT RAUSH, MICHAEL SECOR, ERIKA VIGNOLA, and YAN ZHENG** | **ECF Case** |
| Defendants. | |

**PLAINTIFF LOANDEPOT'S MEMORANDUM OF LAW IN SUPPORT OF ITS
APPLICATION BY WAY OF AN ORDER TO SHOW CAUSE FOR TARGETED
EXPEDITED DISCOVERY**

Josh Greenblatt, P.C.
John Del Monaco
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
Telephone: +1 212 446 4800
Facsimile: +1 212 446 4900
josh.greenblatt@kirkland.com
john_delmonaco@kirkland.com

Dated: July 12, 2022                    *Counsel for Plaintiff loanDepot.com*

## **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................ 1

ARGUMENT ....................................................................................................... 4

I.     loanDepot Faces the Threat of Continued Irreparable Harm. ........................... 5

II.    loanDepot is Likely to Succeed on the Merits. ............................................ 8

     A.    loanDepot is Likely to Succeed on its Defend Trade Secrets Act Claim. ............. 9

     B.    loanDepot is Likely to Succeed on its Non-DTSA Claims ................................ 11

III.   loanDepot's Request for Expedited Discovery is Reasonable, Narrowly Tailored, and Does Not Injure Defendants. ..................................................................... 16

CONCLUSION ................................................................................................... 20

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Ameriwood Indus., Inc. v. Liberman*,
    2006 WL 3825291 (E.D. Mo. Dec. 27, 2006) ........................................................18

*Aon PLC v. Infinite Equity, Inc.*,
    2021 WL 4192072 (N.D. Ill. Sept. 15, 2021) ........................................................15

*Aon Risk Servs., Ne. v. Cusack*,
    34 Misc. 3d 1205(A), (N.Y. Sup. Ct., N.Y. Cnty. Dec. 20, 2011) ......................6, 16

*Ashland Mgmt. Inc. v. Altair Invs. NA, LLC*,
    59 A.D.3d 97 (1st Dep't 2008) ...........................................................................12

*Ayyash v. Bank Al–Madina*,
    233 F.R.D. 325 (S.D.N.Y. 2005) ......................................................................4, 5

*Balboa Threadworks, Inc. v. Stucky*,
    2006 WL 763668 (D. Kan. Mar. 24, 2006) .........................................................18

*BDO Seidman v. Hirshberg*,
    93 N.Y.2d 382 (1999) .........................................................................................12

*Capstone Logistics Holdings, Inc. v. Navarrete*,
    2018 WL 6786338 (S.D.N.Y. Oct. 25, 2018) .......................................................7

*Cont'l Indus. Grp., Inc. v. Altunkilic*,
    788 F. App'x 37 (2d Cir. 2019) ..........................................................................10

*In re Dana Corp.*,
    574 F.3d 129 (2d Cir. 2009)................................................................................10

*Digit. Sin, Inc. v. Does 1-176*,
    279 F.R.D. 239 (S.D.N.Y. 2012) .........................................................................4

*EarthWeb, Inc. v. Schlack*,
    71 F. Supp. 2d 299 (S.D.N.Y. 1999)....................................................................8

*Estee Lauder Cos. v. Batra*,
    430 F. Supp. 2d 158 (S.D.N.Y. 2006)...................................................................8

*ExpertConnect, L.L.C. v. Fowler*,
    2019 WL 3004161 (S.D.N.Y. July 10, 2019) .....................................................10

*FMC Corp. v. Taiwan Tainan Giant Indus. Co.*,
730 F.2d 61 (2d Cir. 1984) ........................................................................7, 8

*Frederick Chusid & Co. v. Marshall Leeman & Co.*,
279 F. Supp. 913 (S.D.N.Y. 1968) ..............................................................15

*Fuji Photo Film U.S.A., Inc. v. McNulty*,
640 F. Supp. 2d 300 (S.D.N.Y. 2009) ..........................................................15

*Genesee Valley Tr. Co. v. Waterford Grp.*,
LLC, 130 A.D.3d 1555 (4th Dep't 2015) ......................................................13

*Gidatex, S.r.L. v. Campaniello Imp., Ltd.*,
13 F. Supp. 2d 417 (S.D.N.Y. 1998) ............................................................5

*Homeside Fin., LLC v. CrossCountry Mortg., Inc.*,
8:18-cv-02639, Dkt. 27 (D. Md., Sept. 11, 2018) ........................................3

*Inventus Power, Inc. v. Shenzhen Ace Battery Co., Ltd.*,
2020 WL 3960451 (N.D. Ill. July 13, 2020) ................................................18

*In re Keurig Green Mountain Single-serve Coffee Antitrust Litig.*,
2014 WL 12959675 (S.D.N.Y. July 23, 2014) ..............................................5

*L.T. v. Zucker*,
2021 WL 4775215 (N.D.N.Y. Oct. 13, 2021) ................................................5

*loanDepot v. Schneider et al.*,
1:22-cv-1874, Dkt. 21 (N.D Ill. Apr. 15, 2022) ...............................1, 3, 13

*Marsh USA Inc. v. Karasaki*,
2008 WL 4778239 (S.D.N.Y. Oct. 31, 2008) ................................................6

*Mercer Health & Benefits LLC v. DiGregorio*,
307 F. Supp. 3d 326 (S.D.N.Y. 2018) ..............................................7, 15, 16

*N. Atl. Instruments Inc. v. Haber*,
188 F.3d 38 (2d Cir. 1999) ...........................................................7, 10

*Natsource LLC v. Paribello*,
151 F. Supp. 2d 465 (S.D.N.Y. 2001) ...........................................6, 13

*OMG Fid., Inc. v. Sirius Techs., Inc.*,
239 F.R.D. 300 (N.D.N.Y. 2006) .................................................................17

*Pure Power Boot Camp, Inc. v. Warrior Fitness Boot Camp, LLC*,
813 F. Supp. 2d 489 (S.D.N.Y. 2011) ..........................................................15

*Reed, Roberts Assocs. v. Strauman*,
 40 N.Y.2d 303 (1976) ...................................................................................................12

*Speedmark Transp., Inc. v. Mui*,
 778 F. Supp. 2d 439 (S.D.N.Y. 2011)..........................................................................14

*Standard Inv. Chartered, Inc. v. Nat'l Ass'n of Secs. Dealers, Inc.*,
 2007 WL 1121734 (S.D.N.Y. Apr. 11, 2007).............................................................17

*Stern v. Cosby*,
 246 F.R.D. 453 (S.D.N.Y. 2007) ...................................................................................4

*Ticor Title Ins. Co. v. Cohen*,
 173 F.3d 63 (2d Cir. 1999).............................................................................................6

*Union Home Mortg. Corp. v. Jenkins*,
 2021 WL 1979517 (N.D. Ohio May 18, 2021).............................................................13

*USI Ins. Servs. LLC v. Miner*,
 801 F. Supp. 2d 175 (S.D.N.Y. 2011).....................................................................12, 13

*Vigoro Indus., Inc. v. Crisp*,
 82 F.3d 785 (8th Cir. 1996) ..........................................................................................15

*Wood v. F.B.I.*,
 432 F.3d 78 (2d Cir. 2005).............................................................................................4

**Statutes**

18 U.S.C. § 1839........................................................................................................................10

**Rules**

Fed. R. Civ. P. 26.....................................................................................................................4, 5

Pursuant to Federal Rules of Civil Procedure 16(b), 26(d), 30(b)(1), 33, and 34, Plaintiff loanDepot.com, LLC ("Plaintiff" or "loanDepot") respectfully moves the Court for an order providing for limited expedited discovery in support of an anticipated motion for preliminary injunction. As explained below, this targeted relief is necessary to allow Plaintiff to uncover the full extent of Defendants' ongoing violations of Plaintiff's contractual and legal rights, including Defendants' ongoing misuse of Plaintiff's trade secrets and other confidential information. Discovery obtained pursuant to the relief sought herein will aid the Court in assessing the necessity of a preliminary injunction to enjoin Defendants from further misconduct while this case proceeds.[1]

## PRELIMINARY STATEMENT

As alleged in detail in Plaintiff's Verified Complaint,[2] Defendants CrossCountry Mortgage, LLC ("CrossCountry"), and departed New York loanDepot employees Keisha Antoine, Scott Bonora, Stuart Kolinsky, Barry Koven, Enrico ("Rick") Martino, Scott Nadler, Emeline Ramos, Robert Raush, Michael Secor, Erika Vignola, and Yan ("Jenny") Zheng (collectively, the "Departed NY Employees" and with CrossCountry, "Defendants") are actively engaged in an ongoing scheme to pillage loanDepot's New York employees and customers in order to capture

---

[1]   Defendant CrossCountry previously agreed in principle to enter into an agreement comparable in substance to the temporary restraining order recently entered against CrossCountry by a Chicago federal court in the *Schneider* matter. *See loanDepot v. Schneider et al.*, 1:22-cv-1874, Dkt. 21 (N.D Ill. Apr. 15, 2022). loanDepot is attaching as Ex. 1 a copy of the written agreement that loanDepot and CrossCountry negotiated to memorialize the understanding that CrossCountry would abide by the substantive terms of the *Schneider* TRO pending loanDepot's anticipated motion for a preliminary injunction in this case. CrossCountry has thus far declined to execute the agreement, while continuing to direct harmful activities at loanDepot as detailed herein, on the basis that it was waiting to obtain the agreement of the Departed NY Employees, which was a moving target given the ongoing departures. loanDepot prefers not to burden the Court with an unnecessary request for a TRO in this matter, but reserves the right to make such a motion if Defendants continue to delay their execution of the agreement.

[2]   Plaintiff's Complaint is filed contemporaneously with this motion. loanDepot incorporates by reference all facts and allegations set forth in the Complaint. Dkt. 1.

loanDepot's multi-billion dollar mortgage lending business.  Defendants' scheme is an egregious violation of loanDepot's contractual and other legal rights.  Defendants are well aware of loanDepot's contractual rights and protections given that the Departed NY Employees are themselves parties to restrictive covenants at issue, and Defendant CrossCountry is already embroiled in multiple lawsuits with loanDepot arising from nearly identical conduct in other jurisdictions.  Nonetheless, Defendants continue to push forward with a coordinated campaign to (i) misappropriate loanDepot's confidential and trade secret information; (ii) use loanDepot's information to divert customers to CrossCountry and capture these business relationships; and (iii) solicit loanDepot employees to cause wide-scale departures from, and maximum harm to, loanDepot's business.  To date, CrossCountry has improperly poached nearly three dozen loanDepot employees from loanDepot branches in New York.  These former employees have misappropriated thousands of documents containing loanDepot's trade secret and confidential information and taken this information to CrossCountry where, among other things, it is being used on an ongoing basis to close loans that were originated at loanDepot and otherwise compete unfairly.

None of this conduct is new.  On the contrary, the conduct at issue in this case is simply CrossCountry's *modus operandi* for how to unfairly compete against other mortgage lenders. Indeed, CrossCountry's now well-worn and well-known playbook is to target and collude with top loanDepot employees, and their team members, to cause the departure of key loanDepot employees and broad misappropriation of loanDepot's information.  CrossCountry's actions have produced a wave of litigation by loanDepot and numerous other competing mortgage companies.  Compl. ¶ 11.  These efforts have already been addressed and criticized by multiple federal courts; in fact, as CrossCountry has been enjoined at least twice for engaging in virtually identical conduct, most

recently by a Chicago federal court in April of this year.  *loanDepot v. Schneider et al.*, 1:22-cv-1874, Dkt. 21 (N.D Ill. Apr. 15, 2022); *see also Homeside Fin., LLC v. CrossCountry Mortg., Inc.*, 8:18-cv-02639, Dkt. 27 (D. Md., Sept. 11, 2018) (enjoining CrossCountry from: (a) directly or indirectly using, disclosing, or storing any of plaintiff's confidential information or trade secrets, including employee compensation information, training materials, and customer information; and (b) employing any of plaintiff's employees).

Unfortunately, such court orders have not prevented CrossCountry from pursuing its playbook in New York.  To the contrary, even as it faces injunctive relief in other jurisdictions, CrossCountry has deployed its improper business tactics to target loanDepot's highly profitable New York branches.  After a wave of departures from loanDepot's New York branches in February, loanDepot conducted an expedited investigation of the computers and accounts used by the Departed NY Employees while they were employed at loanDepot.  As detailed in the Complaint and the declaration of Jim Vaughn, that analysis revealed significant violations of restrictive covenants by the Departed NY Employees, including the unauthorized copying and transfer of **thousands** of files containing loanDepot's confidential and trade secret information, including as valuable loanDepot customer lists, sensitive internal rankings of top employees, and proprietary training materials.  By improperly acquiring such material, CrossCountry has obtained a major competitive advantage over loanDepot and a concrete means of targeting loanDepot's most crucial employees and valuable business relationships.  That is not mere speculation.  To the contrary, publicly-reported data has already demonstrated that CrossCountry has begun to close loans from borrowers originated by loanDepot and who were working with the Departed NY Employees before their departures from loanDepot.  This is likely just the tip of the iceberg given the multi-month time lag for the completion of a home purchase or re-financing through the public

recording of a mortgage. Expedited discovery will reveal how widespread CrossCountry's exploitation of loanDepot's sensitive internal information is and the extent to which customer relationships originated by loanDepot have been improperly and irreparably diverted to CrossCountry.

In addition to revealing widespread misappropriation of loanDepot's proprietary data, loanDepot's initial investigation has revealed that Defendants secretly utilized their own personal emails, accounts, and devices in furtherance of this scheme. These emails, accounts, and devices are not accessible to loanDepot. Accordingly, targeted discovery is necessary to allow loanDepot to evaluate the full extent of Defendants' coordinated attack on loanDepot's business. That discovery should be expedited to ensure that relevant evidence is timely discovered, preserved, and presented to the Court as part of loanDepot's proposed forthcoming motion for preliminary injunction.

For these reasons, and those further explained below, the Court should grant the motion and order expedited discovery as requested below.

## ARGUMENT

District courts have "broad discretion to manage pre-trial discovery." *Wood v. F.B.I.*, 432 F.3d 78, 84 (2d Cir. 2005). Consistent with this broad discretion, Rule 26(d) allows courts to order discovery prior to satisfying the meet and confer requirement of Rule 26(f). *Digit. Sin, Inc. v. Does 1-176*, 279 F.R.D. 239, 241 (S.D.N.Y. 2012) (citing Fed. R. Civ. P. 26). "Courts in this district have applied a 'flexible standard of reasonableness and good cause' in determining whether to grant a party's expedited discovery request." *Id.* (citing *Ayyash v. Bank Al–Madina*, 233 F.R.D. 325, 326–27 (S.D.N.Y. 2005); *see also Stern v. Cosby*, 246 F.R.D. 453, 457 (S.D.N.Y. 2007)). To determine whether a request is reasonable, courts may look to four factors: "(1) irreparable injury, (2) some probability of success on the merits, (3) some connection between the expedited

discovery and the avoidance of the irreparable injury, and (4) some evidence that the injury will result without expedited discovery looms greater than the injury that the defendant will suffer if the expedited relief is granted." *Gidatex, S.r.L. v. Campaniello Imp., Ltd.*, 13 F. Supp. 2d 417, 420 (S.D.N.Y. 1998).  Under this flexible standard, no one factor is dispositive.  *See L.T. v. Zucker*, 2021 WL 4775215, at *12 (N.D.N.Y. Oct. 13, 2021).[3]

Expedited discovery is particularly appropriate where, as here, a plaintiff intends to seek a preliminary injunction.  *In re Keurig Green Mountain Single-serve Coffee Antitrust Litig.*, 2014 WL 12959675, at *2 (S.D.N.Y. July 23, 2014) ("Requests for expedited discovery are typically appropriate in cases involving requests for preliminary injunction."); *see also* Fed. R. Civ. P. 26 Advisory Committee's Note (1993 Amendments to Subdivision (d)) (noting that expedited discovery may be appropriate in cases "involving requests for a preliminary injunction").  Expedited discovery "better enable[s] the court to judge the parties' interests and respective chances for success on the merits at a preliminary injunction hearing."  *In re Keurig*, 2014 WL 12959675, at *2.

## I.    LOANDEPOT FACES THE THREAT OF CONTINUED IRREPARABLE HARM.

loanDepot has suffered and will continue to suffer irreparable harm as a result of Defendants' misconduct.  The loss of customer relationships and goodwill from the violation of restrictive covenants by former employees constitutes irreparable harm.  *See Natsource LLC v. Paribello*, 151 F. Supp. 2d 465, 469 (S.D.N.Y. 2001) (noting that plaintiff "would be irreparably

---

[3]    Some courts in this District have expressed a reluctance to employ the four-part test when expedited discovery is requested in advance of a preliminary injunction hearing because the factors are similar to the preliminary injunction standard. *See Ayyash*, 233 F.R.D. at 326–27 (the four-part "test is similar to the analysis necessary to justify the far more dramatic decision to grant a preliminary injunction, and employing a preliminary-injunction type analysis to determine entitlement to expedited discovery makes little sense, especially when applied to a request to expedite discovery in order to prepare for a preliminary injunction hearing").  These courts have instead focused on the reasonableness of the expedited discovery request and good cause. *Id.*  loanDepot address both the four-part test and the reasonableness standard in this motion.

harmed if it did not receive the benefit of its bargain and its customers left [plaintiff] to follow [defendant]"); *see also Aon Risk Servs., Ne. v. Cusack*, 34 Misc. 3d 1205(A), at *21 (N.Y. Sup. Ct., N.Y. Cnty. Dec. 20, 2011) ("under New York law, it is clear that the continuing violation of restrictive covenants that result in the loss of customer goodwill or proprietary information constitute irreparable harm").  As the Second Circuit has recognized, it is "very difficult to calculate monetary damages that would successfully redress the loss of a relationship with a client that would produce an indeterminate amount of business in years to come." *Ticor Title Ins. Co. v. Cohen*, 173 F.3d 63, 68–70 (2d Cir. 1999) (noting that the company has a "unique relationship" with its clients and that if those relationships "are available to a competitor, the employer obviously suffers irreparable harm").

Similarly, the violation of a non-solicitation covenant that results in "the loss of [plaintiff's] employees also constitutes irreparable harm." *Marsh USA Inc. v. Karasaki*, 2008 WL 4778239, at *14 (S.D.N.Y. Oct. 31, 2008); *see also Natsource,* 151 F. Supp. 2d at 469 (holding that loss of employees to competitors satisfies the irreparable harm requirement because employee training and customer relationships are unquantifiable assets).

As detailed in the Complaint, Defendants have raided loanDepot's employees and already demonstrably diverted loanDepot's current and prospective customers to CrossCountry, all in violation of clear contractual covenants between loanDepot and the Departed NY Employees.  *See* Compl. ¶¶ 92-117.  In rapid and coordinated succession, over 30 of loanDepot's most successful New York employees abruptly resigned to join CrossCountry, taking with them thousands of files containing confidential customer information including customer leads and private financial documents.  Compl. ¶¶ 3-9, 126-169.  Despite its knowledge of loanDepot's restrictive covenants, CrossCountry coordinated and incentivized these violations by targeting loanDepot's highest

performers and by offering bonuses to loanDepot employees who successfully solicit other employees. *Id*. ¶¶ 2, 10-12, 92, 119-120, 122.  In an effort to move business from loanDepot to CrossCountry, loanDepot customers were repeatedly advised to contact personal cell phones to hide that these customers were being stalled and taken to CrossCountry with the departing employee. *Id.* ¶ 138, 149-150.

Equally egregious, Defendants have misappropriated thousands of files containing confidential information entrusted to loanDepot by its customers. *Id.* ¶¶ 5-6, 126, 128, 136, 147, 156, 158.  There is no credible reason for Defendants' misappropriation other than to use loanDepot's information to take its customers and goodwill.  There is no question that these actions create the reasonable prospect of irreparable harm.  "Under New York law, the use and disclosure of an employer's confidential customer information and the possibility of loss of customers through such usage, constitutes irreparable harm." *Capstone Logistics Holdings, Inc. v. Navarrete*, 2018 WL 6786338, at \*33 (S.D.N.Y. Oct. 25, 2018).

In fact, the Departed NY Employees cannot credibly contest the existence of irreparable harm given their *prior* agreement that monetary damages alone would not be a sufficient remedy for breaches of any of the restrictive covenants at issue in this case.  Compl. ¶ 77.  Contractual provisions acknowledging the inadequacy of money damages support a finding of irreparable harm. *See Mercer Health & Benefits LLC v. DiGregorio*, 307 F. Supp. 3d 326, 348 (S.D.N.Y. 2018) (citing *N. Atl. Instruments Inc. v. Haber*, 188 F.3d 38, 49 (2d Cir. 1999)).

In addition, irreparable harm is presumed where trade secrets have been misappropriated because a "trade secret once lost is, of course, lost forever." *FMC Corp. v. Taiwan Tainan Giant Indus. Co.*, 730 F.2d 61, 63 (2d Cir. 1984).  "[I]t is clear that the loss of trade secretes cannot be measured in money damages." *Id*.  Even where a trade secret has not yet been disclosed,

irreparable harm is found where the trade secrets will be disclosed when "the movant competes directly" with new employer and the former employee "possesses highly confidential or technical knowledge concerning [ ] marketing strategies, or the like." *Estee Lauder Cos. v. Batra*, 430 F. Supp. 2d 158, 162, 174 (S.D.N.Y. 2006) (quoting *EarthWeb, Inc. v. Schlack,* 71 F. Supp. 2d 299, 309 (S.D.N.Y. 1999)).

Here, Defendants have copied and transferred vast amounts of loanDepot's confidential and trade secret information.  Just prior to resigning, one former employee **copied over 9,500 documents to a personal USB external storage device** including client financial statements, credit reports, pay stubs, tax returns, pre-approvals, consultant pipelines, and spreadsheets of all loanDepot consultants' active loans.  Compl. ¶¶ 6, 156.  Another former employee copied over 1,000 documents to a USB, including preapprovals with income statements, pay stubs, tax returns, and other information typically supplied by borrowers in support of their applications.  *Id.* ¶ 147. These actions were not limited to one or two Departed NY Employees.  Numerous others performed similar transfers of digital files containing loanDepot's confidential and trade secret information prior to resigning from loanDepot.  *Id.* ¶¶ 5-6, 126, 128, 136, 155, 158, 161.  This misappropriation of loanDepot's confidential records by Defendants' constitutes irreparable harm.

## II.   <u>LOANDEPOT IS LIKELY TO SUCCEED ON THE MERITS.</u>

loanDepot is also likely to succeed on the merits of its underlying claims.  CrossCountry's well-publicized and documented *modus operandi* is to raid employees from competitors, misappropriate competitors' confidential and trade secret information, and then to use that information and the competitor's goodwill to take the competitors' clients.  *See, id*. ¶¶ 2, 11.  Based on this conduct, at least two other courts have found it likely that CrossCountry's competitors will succeed on the merits of their claims and entered injunctive relief against CrossCountry.  *Id.* ¶ 11.

The same is true here.  The Court should grant the motion and allow expedited discovery in advance of a hearing for preliminary injunctive relief.

A.     **loanDepot is Likely to Succeed on its Defend Trade Secrets Act Claim.**

As alleged in the Complaint, Defendants' actions related to loanDepot's information includes:

- The Departed NY Employees took loanDepot customer lists including compilations of customer information, non-public personal information provided by customers or potential customers to loanDepot, as well as loanDepot employee sales information, the identities and volume of business of loanDepot "leaders," and loanDepot customized job aids and training materials.  Compl. ¶¶ 118-169.

- For example, Defendant Bonora transferred a loanDepot "Clients" folder to a personal USB storage device that included a compilation of client pre-approvals, client-specific property appraisals, and mortgage applications.  *Id.* ¶ 128.  Bonora also took customer pipeline reports for Defendant Raush, and Yusheng "Ron" Liu, Llewellyn Tejada, and Giovanni Narvaez that included client information such as loan numbers, borrower's names, credit scores, property addresses, status of the loan, loan type, product type, and rate and rate lock information.  *Id.* ¶ 133.

- Defendant Secor transferred three separate types of trade secret information: (1) customer lists with compiled customer information such as preapprovals with income statements, pay stubs, and tax returns; (2) loanDepot's internal employee sales information including rankings of the company's top producers; and (3) loanDepot customized, and non-public training materials containing loanDepot's methods.  *Id.* ¶¶ 136-140.

- Defendant Ramos similarly took documents containing customer information including compiled customer lists that included appraisals, disclosures, preapprovals, tax documents and paystubs.  She also copied and removed files containing loanDepot lists of new leads, and closed loans.  *Id.* ¶¶ 147.

- Defendants Raush, Kolinsky, and Martino each took extensive customer lists.  *Id.* ¶¶ 148, 155, 156.  Martino copied and removed non-public client information such as financial statements, credit reports, pay stubs, tax returns, pre-approvals, and loan consultant pipelines.  *Id.* ¶ 156.

- Defendants Bonora, Secor, Raush, Nadler, and Koven each closed loans for CrossCountry with customers listed in loanDepot's confidential information.  *Id.* ¶¶ 135, 143-146, 150-151, 164-165, 166-168.

Under the federal Defend Trade Secrets Act ("DTSA"), the above actions constitute misappropriation of trade secrets.

"A customer list developed by a business through substantial effort and kept in confidence may be treated as a trade secret and protected." *N. Atl. Instruments, Inc.*, 188 F.3d at 44.  Under the DTSA, "client lists" "client preferences, contract details" and "performance criteria" qualify as trade secrets.  *ExpertConnect, L.L.C. v. Fowler*, 2019 WL 3004161, at *4 (S.D.N.Y. July 10, 2019).  Information such as customer lists, "pricing and payment terms," "customer product mixes," and "employee data" are "routinely afforded trade secret protection." *Cont'l Indus. Grp., Inc. v. Altunkilic*, 788 F. App'x 37, 40-41 (2d Cir. 2019) (citing *In re Dana Corp.*, 574 F.3d 129, 152 (2d Cir. 2009)).

A trade secret is misappropriated when it is acquired "by a person who knows or has reason to know that the trade secret was acquired by improper means;" or when the trade secret is disclosed or used "by a person who . . . used improper means to acquire knowledge of the trade secret" or "knew or had reason to know that the knowledge of the trade secret was . . . derived from or through a person who had used improper means to acquire the trade secret." 18 U.S.C. § 1839(5).  "Improper means" includes "theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy." *Id.* § 1839(6).

Each Departed NY Employee is bound by restrictive covenants protecting loanDepot's confidential, proprietary, and trade secret information and agreed to:

> [K]eep strictly confidential and will not, directly or indirectly, disclose to any person or entity or use for the benefit of Participant or any other person or entity any "Confidential Information," … that Participant learned, obtained or had access to in the course of or as the result of Participant's employment with Company or using Company's systems, access, means or computing or mobile devices.

Compl. ¶ 73.  Confidential Information is defined as:

> [I]nformation and materials in any medium learned, obtained or accessed by Participant because of or through his or her employment with Company, or using Company's systems, access means or computing or mobile devices, about Company's business, prospects, plans and operations, products, processes, methods of doing business, systems, databases and technology, inventions and other intellectual property, loan origination and marketing practices, training, services, and Customers (as defined herein) and that is not known or readily available through proper and lawful means to the general public as well as Customer data.

*Id.* ¶ 74.  In addition, the Departed NY Employees agreed that confidential consumer information was to be used only to perform his or her duties on behalf of loanDepot.  *Id.* ¶ 75.

The Departed NY Employees each downloaded, transferred, sent, copied and/or otherwise absconded with loanDepot's confidential, trade secret information just prior to their resignation in violation of the restrictive convents.  *Id.* ¶¶ 2-12, 126-168.  There was no legitimate business reason for these transfers; the only conceivable purpose was for improper use at CrossCountry.  This constitutes misappropriation.

Indeed, the evidence shows that CrossCountry and the Departed NY Employees have already used loanDepot's trade secret information.  As early as April of 2022, CrossCountry publicly recorded numerous loans made to borrowers who were leads or existing customers of loanDepot.  *Id.* ¶¶ 135, 143-146, 150-151, 164-165, 166-168.  In addition, CrossCountry recruited and incentivized the top performing loanDepot employees to leave loanDepot.  *Id.* ¶¶ 2, 10-12, 92, 119-120, 122.  CrossCountry knew to target these top performers from the disclosure of loanDepot's internal, confidential rankings of the company's top producers that were taken by former employees.  *See id.* ¶ 3, 122, 136.

B. **loanDepot is Likely to Succeed on its Non-DTSA Claims.**

The foregoing conduct also establishes that loanDepot is likely to succeed on its separate claims for breach of contract, breach of fiduciary duty, aiding and abetting breach of fiduciary

duty, tortious interference with contract, tortious interference with prospective economic advantage, and unfair competition.

The Departed NY Employee's covenants with loanDepot are enforceable under New York law. Restrictive covenants "are subject to specific enforcement to the extent that they are 'reasonable in time and area, necessary to protect the employer's legitimate interests, not harmful to the general public and not unreasonably burdensome to the employee.'" *Ashland Mgmt. Inc. v. Altair Invs. NA, LLC*, 59 A.D.3d 97, 102 (1st Dep't 2008) (quoting *BDO Seidman v. Hirshberg,* 93 N.Y.2d 382, 388–389 (1999)). "With respect to covenants aimed at protecting against misappropriation of an employer's trade secrets or confidential customer lists, 'courts . . . recognize the legitimate interest an employer has in safeguarding that which has made his business successful and to protect himself against deliberate surreptitious commercial piracy.'" *Id*. (quoting *Reed, Roberts Assocs. v. Strauman,* 40 N.Y.2d 303, 308 (1976)). "Thus, restrictive covenants will be enforceable to the extent necessary to prevent the disclosure or use of trade secrets or confidential customer information." *Id*.

The confidentiality covenants protect loanDepot's legitimate interests in its confidential and trade secret information, goodwill, and investment in its employees. These are recognized legitimate business interests under New York law. *USI Ins. Servs. LLC v. Miner*, 801 F. Supp. 2d 175, 187 (S.D.N.Y. 2011) ("Under New York law, an employer 'has a legitimate interest in preventing former employees from exploiting or appropriating the goodwill of a client or customer, which had been created and maintained at the employer's expense, to the employer's competitive detriment.'"); *Genesee Valley Tr. Co. v. Waterford Grp.*, LLC, 130 A.D.3d 1555, 1558 (4th Dep't 2015) ("employer has a legitimate interest in preventing an employee from leaving to work for a competitor if the employee has cultivated personal relationships with clients through the use of the

employer's resources").   In *Union Home Mortg. Corp. v. Jenkins*, a similar case where CrossCountry solicited an employee from a direct competitor, the court recognized that the original employer had a legitimate interest in ensuring that its confidential customer lists and information were not used by the employee to unfairly compete against it at CrossCountry.  2021 WL 1979517, at *7 (N.D. Ohio May 18, 2021).  Further, in the TRO entered against CrossCountry in *Schneider*, the federal court recognized loanDepot's legitimate interests by enjoining CrossCountry and loanDepot's former employees from "contacting or soliciting any customer or prospective customer listed on any document" taken from loanDepot.  *See loanDepot v. Schneider et al.*, 1:22-cv-1874, Dkt. 21 at 5 (N.D Ill. Apr. 15, 2022).

In addition to the confidentiality covenants, the Departed NY Employees agreed to a one-year employee non-solicitation provision where each promised not to "solicit or induce, directly or indirectly . . . an employee . . . of [loanDepot] to terminate or breach his or her employment . . . or apply for employment . . . with any person, business or entity."  Compl. ¶ 71.  A one-year duration for an employee non-solicitation provision is reasonable under New York law.  *USI Ins. Servs*, 801 F. Supp. 2d at 189 (finding that a two-year employee non-solicit is reasonable); *Genesee Valley Tr. Co.,* 130 A.D.3d at 1558 ("A covenant not to solicit employees is 'inherently more reasonable and less restrictive' than a covenant not to compete"); *Natsource*, 151 F. Supp. 2d at 471 (one-year employee non-solicit is reasonable and enforceable).

There is significant evidence that the Departed NY Employees have breached their restrictive covenants.  As shown above, in the days before leaving loanDepot, each took confidential customer lists that included non-public information provided by customers or potential customers to loanDepot.  Compl. ¶¶ 118-169.  Defendant Bonora copied and removed a folder of loanDepot clients that included client pre-approvals, client-specific property appraisals,

and mortgage applications.  *Id.* ¶ 128, 133.  Bonora also took loanDepot reports that included client information such as loan numbers, borrower's name, credit scores, and property addresses, status of the loan, loan type, product type, and rate and rate lock information.  *Id.*

Defendant Secor copied and removed customer lists with compiled customer information such as preapprovals with income statements, pay stubs, and tax returns.  He also took loanDepot's internal employee sales information including rankings of the company's top producers and loanDepot training materials.  *Id.* ¶¶ 136-137.  Defendant Ramos took documents containing similar types of customer information including appraisals, disclosures, preapprovals, tax documents and paystubs.  She also copied and removed files containing loanDepot's lists of new leads. *Id.* ¶¶ 147.  Defendants Raush, Kolinsky, and Martino each took extensive customer lists. *Id.* ¶¶ 148, 155, 156.  Indeed, Martino copied and ***removed over 9,500 documents*** including client financial statements, credit reports, pay stubs, tax returns, pre-approvals and customer pipeline documents.  *Id.* ¶ 156.

None of these documents were returned when the Departed NY Employees left loanDepot as required by the covenants.  Instead, the only plausible reason for the copy and transfer of this information was for its use in the Departed NY Employees' new roles at CrossCountry.  Moreover, the timing and the coordinated nature of the resignations at loanDepot's New York branches, including the similarity of the types of documents taken and the rapid succession of departures, shows that the Departed NY Employees were involved in improper solicitation.  *See Speedmark Transp., Inc. v. Mui*, 778 F. Supp. 2d 439, 443 (S.D.N.Y. 2011) (suspicious timing of defendants' resignations "support[s] a plausible claim that [defendants] violated the terms of their employment contracts" by soliciting employees with whom they worked to leave); *Aon PLC v. Infinite Equity,*

14

*Inc.*, 2021 WL 4192072, at *23 (N.D. Ill. Sept. 15, 2021) (finding that "[i]t is reasonable to infer, based on the closely timed resignations" that former leaders solicited others to join competitor).

In addition, this conduct evidences a breach of the Departed NY Employees' fiduciary duty to loanDepot.  "Under New York law, at-will employees owe their employers a fiduciary duty of loyalty, including a duty not to use the employer's confidential information to compete with the employer." *Mercer Health & Benefits LLC*, 307 F. Supp. 3d at 353 (citing *Pure Power Boot Camp, Inc. v. Warrior Fitness Boot Camp, LLC*, 813 F. Supp. 2d 489, 521–22 (S.D.N.Y. 2011)). Similarly, "[s]oliciting employees to leave their employer constitutes a breach of" an employee's duty of loyalty. *Frederick Chusid & Co. v. Marshall Leeman & Co.*, 279 F. Supp. 913, 918 (S.D.N.Y. 1968); *see also Vigoro Indus., Inc. v. Crisp*, 82 F.3d 785, 788 (8th Cir. 1996) (noting that an employee had a duty of loyalty that "precluded him from soliciting other employees" prior to the termination of the employee's employment).

CrossCountry aided, knowingly participated, induced, incentivized and caused the above breaches by the Departed NY Employees. CrossCountry knew the identity of the loanDepot employees with the most influence and highest loan production who would be able to cause coordinated and rapid defections from loanDepot to CrossCountry.  CrossCountry offered bonuses related to the recruitment of other loanDepot employees, indemnification for litigation related to their departures, and a $50,000 bounty for coopting an entire loanDepot branch.  Compl. ¶¶ 12, 92, 119.  CrossCountry's actions support that loanDepot is likely to succeed on its claims for aiding and abetting breach of fiduciary duty, tortious interference, and unfair competition.  *See Fuji Photo Film U.S.A., Inc. v. McNulty*, 640 F. Supp. 2d 300, 313 (S.D.N.Y. 2009) (aiding and abetting claim includes knowingly inducing breach); *Aon Risk Servs.*, 34 Misc. 3d 1205(A) (finding plaintiff likely to succeed on tortious interference with contract claim where defendant, among other things,

paid for legal counsel for employees who breached restrictive covenants in employment agreements with former employer); *Mercer Health & Benefits LLC*, 307 F. Supp. 3d at 353–54 ("a defendant engages in unfair competition if the defendant misappropriated and used the plaintiff's property or commercial advantage to compete against the plaintiff.").

Not only do the facts show a likelihood of success on the merits, they also show the need for expedited discovery. Defendants' have purposefully used personal emails and devices in an attempt to avoid detection of their knowingly wrongful misconduct. *See e.g.*, Compl. ¶¶ 9, 122, 136, 147, 155, 159. Additionally, loanDepot's ability to uncover the scope of CrossCountry's conversion of its customers is limited due to the unavailability of public mortgage records until nearly three months after a transaction occurs. *Id.* ¶ 8. Without expedited discovery, loanDepot is unable to discover the full extent of the Defendants' conduct and the threats to its business. Moreover, Defendants have already established their willingness to alter or delete files related to their conduct in this case. *Id*. ¶ 134, 147-148, 125. If discovery is not taken on an expedited basis, there is a real risk of spoliation on the part of Defendants.

## III. **LOANDEPOT'S REQUEST FOR EXPEDITED DISCOVERY IS REASONABLE, NARROWLY TAILORED, AND DOES NOT INJURE DEFENDANTS.**

Defendants cannot credibly assert that they will be injured by loanDepot's request for expedited discovery. loanDepot's requested expedited discovery will be narrowly tailored to issues related to the requested preliminary injunction and the protection of loanDepot's confidential and trade secret information. Specifically, loanDepot will seek discovery concerning the Departed NY Employees' communications with CrossCountry prior to their resignations from loanDepot; CrossCountry's and the Departed NY Employees' direct and indirect contacts with loanDepot customers and employees; and Defendants' access to, taking, use, and dissemination of loanDepot's confidential, proprietary, and trade secret information. A copy of loanDepot's

proposed discovery requests are attached as Ex. 2, hereto.  These requests are similar to the expedited discovery permitted in the *Schneider* matter in advance of a preliminary injunction motion in that matter.

Discovery on an expedited basis is needed to determine the full scope of Defendants' improper conduct and the irreparable harm caused by Defendants.  Expedited Discovery will also ensure this Court is equipped with the material information it needs when considering loanDepot's forthcoming motion for preliminary injunction.  loanDepot only seeks expedited discovery on what is necessary to the injunctive issues here, which will be directly tied to its injunction-related claims and allegations in the Complaint.  Without the ability to obtain discovery ahead of a preliminary injunction hearing, loanDepot will be unfairly prejudiced.  *See OMG Fid., Inc. v. Sirius Techs., Inc.*, 239 F.R.D. 300, 305 (N.D.N.Y. 2006) ("it is clear that plaintiff will potentially be unfairly prejudiced" by not permitting "discovery to go forward since it will not have an early opportunity to develop evidence for use in support [a preliminary injunction]"); *see also Standard Inv. Chartered, Inc. v. Nat'l Ass'n of Secs. Dealers, Inc.*, 2007 WL 1121734, at *4 (S.D.N.Y. Apr. 11, 2007).

loanDepot's requested expedited discovery will also focus on the Departed NY Employees' and CrossCountry's electronic devices, networks, email, and cloud storage accounts. Examinations of these data repositories are necessary and critical here given the record showing Defendants' reliance on electronic devices, email, and Google Documents to further their efforts to take loanDepot information.  And, any burden to Defendants by this process is outweighed by the fact that they elected to utilize such means to misappropriate loanDepot information.  In cases "***where trade secrets and electronic evidence*** are both involved, the Courts have granted permission to obtain [inspection] of the computer equipment which may contain electronic data

related to the alleged violation." *Balboa Threadworks, Inc. v. Stucky*, 2006 WL 763668, at *3 (D. Kan. Mar. 24, 2006) (emphasis added). "[A]llegations that a defendant downloaded trade secrets onto a computer provide a sufficient nexus between plaintiff's claims and the need to obtain [inspection through] a mirror image of the computer's hard drive." *Ameriwood Indus., Inc. v. Liberman*, 2006 WL 3825291, at *4 (E.D. Mo. Dec. 27, 2006).

Indeed, "inspections of devices used by the individuals in question while working for [CrossCountry] seems a highly logical place to focus attention in determining whether any of Plaintiff[]'s trade secrets have been disclosed to and used by [CrossCountry]." *Inventus Power, Inc. v. Shenzhen Ace Battery Co., Ltd.*, 2020 WL 3960451, at *14 (N.D. Ill. July 13, 2020). Further, "[CrossCountry] still employs . . . the former . . . employees who are accused of taking the data. If they actually took and are using the trade secrets identified by Plaintiff [] in their work at [CrossCountry], it should not be terribly difficult . . . to figure out through forensic examinations of the electronic devices used by the individuals in question." *Id.* at *9

For the above reasons, loanDepot respectfully requests expedited discovery as follows:

- **Written Discovery**.  loanDepot may serve no more than ten (10) document requests, ten (10) requests for admissions, and ten (10) interrogatories on each Defendant.  Defendants collectively may serve ten (10) document requests, ten (10) requests for admissions, and ten (10) interrogatories on Plaintiff.  Responses and/or verified answers must be served within fourteen (14) days from the date of service.  Documents must be produced within thirty (30) days of service of written document requests, except that documents produced pursuant to the forensic examinations referenced below may be produced on a rolling basis, which production shall be completed within forty-five (45) days of the commencement of the forensic examination.

- **Forensic Examinations (Departed NY Employees)**.  loanDepot may conduct a forensic examination of the Departed NY Employees' personal electronic devices, personal email accounts, Google accounts, and/or other electronic or cloud storage accounts, including any of their devices used while employed by loanDepot or CrossCountry.  This includes computers, storage media, thumb drives, external mass storage devices, external personal electronic devices (such as smartphones), cloud-based storage accounts (such as WeTransfer, iCloud, and/or Google Drive), Salesforce accounts, and Jungo accounts.  The parties must stipulate to

a forensic protocol and submit it to the Court within five (5) days from the date the Court enters its order granting expedited discovery.

- **Forensic Examinations (CrossCountry).**  loanDepot may conduct a forensic examination of electronic devices, email accounts, networks/shared drives, and other storage accounts or repositories of information used by CrossCountry's Brooklyn office or any other office with which the Departed NY Employees are affiliated.  This includes computers, storage media, thumb drives, external mass storage devices, personal electronic devices (such as smartphones), cloud- based storage accounts (such as WeTransfer, iCloud, and/or Google Drive), Salesforce accounts, and Jungo accounts.  The parties must stipulate to a forensic protocol and submit it to the Court within five (5) days from the date the Court enters its order granting expedited discovery.

- **Third-Party Written Discovery**.  loanDepot may serve a subpoena with up to ten (10) document requests upon relevant third parties as necessary.

- **Depositions**.  loanDepot may conduct up to fifthteen (15) depositions of relevant party witnesses and third-party witnesses.

- **Deadline**.  Expedited discovery must be completed within ninety (90) days from the date of the Court's order granting expedited discovery.

- **Preliminary Injunction Timing**.  At the end of the substantial completion of document production, the parties will meet and confer and propose a briefing schedule for loanDepot's motion for preliminary injunction.

## <u>CONCLUSION</u>

For the foregoing reasons, there is good cause for expedited discovery and the Court should

grant loanDepot's motion for expedited discovery to allow for further development of the record.

Dated: New York, New York
      July 12, 2022                       Respectfully Submitted,

                                            **KIRKLAND & ELLIS LLP**

                                            */s/ Josh Greenblatt*
                                            Josh Greenblatt, P.C.
                                            John P. Del Monaco
                                            KIRKLAND & ELLIS LLP
                                            601 Lexington Avenue
                                            New York, NY 10022
                                            Telephone: (212) 446-4800
                                            Facsimile: (212) 446-4900
                                            josh.greenblatt@kirkland.com
                                            john_delmonaco@kirkland.com

                                            *Counsel for Plaintiff loanDepot.com*