# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **loanDepot.com, LLC,** | |
| Plaintiff, | |
| v. | Case No. 1:22-cv-5971 |
| **CROSS COUNTRY MORTGAGE, LLC, KEISHA ANTOINE, SCOTT BONORA, STUART KOLINSKY, BARRY KOVEN, ENRICO MARTINO, SCOTT NADLER, EMELINE RAMOS, ROBERT RAUSH, MICHAEL SECOR, ERIKA VIGNOLA, and YAN ZHENG** | Judge Lorna G. Schofield **ECF Case** |
| Defendants. | |

## DEFENDANT CROSSCOUNTRY'S OPPOSITION TO PLAINTIFF LOANDEPOT'S APPLICATION BY WAY OF AN ORDER TO SHOW CAUSE FOR TARGETED EXPEDITED DISCOVERY

Jennifer L. Del Medico
JONES DAY
250 Vesey Street
New York, New York 10281
Telephone: (212) 326-3939
Facsimile: (212) 755-7306
jdelmedico@jonesday.com

*Attorney for Defendant*
*CrossCountry Mortgage, LLC*

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ............................................................. 1

BACKGROUND .................................................................................. 3

ARGUMENT ....................................................................................... 7

    I.    loanDepot Cannot Establish Any Entitlement to Expedited
    Discovery As to CrossCountry Under the *Notaro* Test ...................... 8

        A.    loanDepot Cannot Show It Is Likely to Suffer Irreparable
        Harm from CrossCountry .......................................................... 9

        B.    loanDepot Cannot Show Any Likelihood of Success On the
        Merits of Its Claims Against CrossCountry ............................ 13

            1.    loanDepot's Defend Trade Secrets Act Claim Lacks
            Merit ................................................................................ 14

            2.    loanDepot's Remaining Non-DTSA Claims Against
            CrossCountry Are Also Unlikely to Succeed On the
            Merits .............................................................................. 17

    II.    Expedited Discovery Is Unreasonable Under the Circumstances,
    and No Good Cause Exists .............................................................. 19

        A.    loanDepot's Requested Discovery Is Not Narrowly
        Tailored to Obtain Information Relevant to a Preliminary
        Injunction, and the Burden of Complying Would Be
        Unreasonably Heavy ................................................................ 20

        B.    There Is No Reasonable Necessity for Expedited Discovery
        to Preserve the Status Quo ...................................................... 23

        C.    loanDepot's Request for Expedited Discovery Comes Well
        In Advance of Typical Discovery ........................................... 24

    CONCLUSION ................................................................................ 25

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Aon PLC v. Infinite Equity, Inc.*,
No. 19 C 7504, 2020 WL 1954027 (N.D. Ill. Apr. 23, 2020)..................................... 24

*Aon Risk Servs. v. Cusack*,
34 Misc. 3d 1205(A), 946 N.Y.S.2d 65 (Sup. Ct. 2011) ......................................... 14

*Art and Cook, Inc. v. Haber*,
416 F. Supp. 3d 191 (E.D.N.Y. 2017) ...................................................................... 17

*Attkisson v. Holder*,
113 F. Supp. 3d 156 (D.D.C. 2015)................................................................. 25, 27, 29

*Ayyash v. Bank Al-Madina*,
233 F.R.D. 325 (S.D.N.Y. 2005) ........................................................................ 9, 22, 29

*Baker's Aid v. Hussman Foodservice Co.*,
830 F.2d 13 (2d Cir. 1987)......................................................................................... 13

*Better Packages, Inc. v. Zheng*,
No. Civ.A. 05-4477 (SRC), 2006 WL 1373055 (D.N.J. May 17, 2006)................... 24

*Capstone Logistics Holdings, Inc. v. Navarrete*,
No. 17-CV-4819 (GBD), 2018 WL 6786338 (S.D.N.Y. Oct. 25, 2018)................... 14

*Disability Rights Council of Greater Wash. v. Wash. Metro. Area Transit Auth.*,
234 F.R.D. 4 (D.D.C. 2006)........................................................................................ 27

*Estee Lauder Cos. V. Batra*,
430 F. Supp. 2d 158 (S.D.N.Y. 2006)........................................................................ 13

*Faiveley Transport Malmo AB v. Wabtec Corp.*,
559 F.3d 110 (2d Cir. 2009)............................................................................ 10, 12, 13

*Federal Exp. Corp. v. Federal Espresso, Inc.*,
No. Civ.A.97CV1219 (RSP) (GJD), 1997 WL 736530 (N.D.N.Y. Nov. 24, 1997) ............. 23

*FMC Corp. v. Taiwan Tainan Giant Indus. Co.*,
730 F.2d 61 (2d Cir. 1984)............................................................................... 12, 15

*FMC Corp. v. Taiwan Tainan Giant Indus. Co.*,
No. CIV-83-1042, 1983 WL 52357 (W.D.N.Y. Oct. 27, 1983) ........................... 15

*Free Country Ltd v. Drennen*,
    235 F. Supp. 3d 559 (S.D.N.Y. 2016).............................................................. 18, 19

*Geritrex Corp. v. Dermarite Indus., LLC*,
    910 F. Supp. 955 (S.D.N.Y. 1996) ...................................................................... 18

*Gidatex, S.r.L. v. Campaniello Imports, Ltd.*,
    13 F. Supp. 2d 417 (S.D.N.Y. 1998)...................................................................... 9

*Grand River Enter. Six Nations, Ltd. v. Pryor*,
    481 F.3d 60 (2d Cir. 2007)................................................................................... 10

*Guttenberg v. Emery*,
    26 F. Supp. 3d 88 (D.D.C. 2014) ................................................................... 28, 29

*In re Keurig Green Mountain Single-serve Coffee Antitrust Litig.*,
    No. 14-CV-4242, 2014 WL 12959675 (S.D.N.Y. July 23, 2014)......................... 22

*Irish Lesbian and Gay Org. v. Giuliani*,
    918 F. Supp. 728 (S.D.N.Y. 1996) ................................................................... 9, 27

*Iron Mountain Information Mgmt., Inc. v. Taddeo*,
    455 F. Supp. 2d 124 (E.D.N.Y. 2006) ................................................................. 16

*Kamerling v. Massanari*,
    295 F.3d 206 (2d Cir. 2002)................................................................................. 10

*L.T. v. Zucker*,
    No. 1:21-CV-1034, 2021 WL 4775215 (N.D.N.Y. Oct. 13, 2021) ................... 9, 22

*Lentjes Bischoff GmbH v. Joy Environmental Technologies, Inc.*,
    986 F. Supp. 183 (S.D.N.Y. 1997) ........................................................................ 9

*Litwin v. OceanFreight, Inc.*,
    865 F. Supp. 2d 385 (2011) ................................................................................. 15

*Marsh USA Inc. v. Karasaki*,
    No. 08 Civ. 4195(JGK), 2008 WL 4778239 (S.D.N.Y. Oct. 31, 2008) ............... 13

*Mercer Health & Benefits LLC v. DiGregorio*,
    307 F. Supp. 3d 326 (S.D.N.Y. 2018).................................................................. 14

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. O'Connor*,
    194 F.R.D. 618 (N.D. Ill. 2000)................................................................. 8, 21, 29

*N. Atl. Instruments, Inc. v. Haber*,
    188 F.3d 38 (2d Cir. 1999) ............................................................................................ 17

*NAACP v. Town of East Haven*,
    70 F.3d 219 (2d Cir. 1995) ............................................................................................ 10

*Nalco Chemical Co. v. Hydro Technologies, Inc.*,
    148 F.R.D. 608 (E.D. Wis. 1993) .................................................................................. 17

*Natsource LLC v. Paribello*,
    151 F. Supp. 2d 465 (S.D.N.Y. 2001) ........................................................................... 14

*North Atlantic Operating Co., Inc. v. Evergreen Distributors, LLC*,
    293 F.R.D. 363 (E.D.N.Y. 2013) ................................................................................... 23

*Notaro v. Koch*,
    95 F.R.D. 403 (S.D.N.Y. 1982) .................................................................................. 1, 8

*Oriska Insurance Company v. Avalon Gardens Rehabilitation & Health Care Center, LLC*,
    No. 6:18-CV-1030, 2018 WL 6074693 (N.D.N.Y. Nov. 21, 2018) ................................. 8

*Palermo v. Underground Sols., Inc.*,
    No. 12CV1223-WQH BLM, 2012 WL 2106228 (S.D. Cal. June 11, 2012) ..................... 24

*Qwest Commc'ns Int'l, Inc. v. WorldQuest Networks, Inc.*,
    213 F.R.D. 418 (D. Colo. 2003) .................................................................................... 28

*Rovio Entertainment Ltd v. Royal Plush Toys, Inc.*,
    907 F. Supp. 2d 1086 (N.D. Cal. 2012) ......................................................................... 25

*Share Corp. v. Momar Inc.*,
    No. 10-CV-109, 2010 WL 724321 (E.D. Wis. Feb. 26, 2010) ................................. 11, 12

*SingularDTV GmbH v. LeBeau*,
    No. 21-CV-10130 (VEC), 2022 WL 1082557 (S.D.N.Y. Apr. 6, 2022) ......................... 22

*Syntel Sterling Best Shores Mauritius Ltd v. Trizetto Grp., Inc.*,
    No. 15CV211LGSRLE, 2016 WL 5338550 (S.D.N.Y. Sept. 23, 2016) ......................... 18

*Ticor Title Ins. Co. v. Cohen*,
    173 F.3d 63 (2d Cir. 1999) ............................................................................................ 13

*Union Home Mortgage Corp. v. Jenkins*,
    No. 1:20-cv-0269, 2021 WL 1979517 (N.D. Ohio May 18, 2021) ................................ 21

*WarnerVision Entertainment Inc. v. Empire of Carolina, Inc.*,
101 F.3d 259 (2d Cir. 1996) ................................................................................................ 23

*Wolcox Indus. Corp. v. Hansen*,
279 F.R.D. 64 (D.N.H. 2012) ................................................................................................ 8


**Statutes**

18 U.S.C. § 1836(b)(1) ................................................................................................ 14

Fed. R. Civ. P. 26(d)(1) ................................................................................................ 7


**Other Authorities**

Scotsman Guide, Inc., *Top Dollar Volume 2021 – Scotsman Guide,*
*https://www.scotsmanguide.com/rankings/top-originators/2021/top-dollar-volume* (last
visited July 26, 2022) ................................................................................................ 5

Scotsman Guide, Inc., *Top Originators – Scotsman Guide*,
*https://www.scotsmanguide.com/rankings/top-originators* (last visited July 26, 2022) ........... 5

## PRELIMINARY STATEMENT

loanDepot.com, LLC's Application By Way of an Order to Show Cause for Targeted Expedited Discovery against CrossCountry ("Application" or "Appl.") (ECF No. 6) fails in the most basic way.  It fails to plausibly allege any unlawful conduct by CrossCountry that would establish either a likelihood of success on the merits of loanDepot's claims as to CrossCountry or that would even begin to justify the expansive discovery sought in its Application.  Although loanDepot purports to incorporate the allegations of its Complaint into its Application, the Complaint itself alleges very little or anything as to CrossCountry, focusing instead on the purported conduct of the individual Defendants in this case.  loanDepot cannot get such expansive, expedited discovery against CrossCountry on such a flimsy basis.

 As a threshold matter, loanDepot cannot establish the elements of the test cited in *Notaro v. Koch*, 95 F.R.D. 403, 405 (S.D.N.Y. 1982) because it cannot show that it faces an ongoing threat of irreparable harm from, or that it is likely to succeed on the merits of it claims against, CrossCountry.  The crux of loanDepot's claims is that CrossCountry induced the individual Defendants in this action to breach confidentiality, non-disclosure and non-solicitation clauses in their employment agreements with loanDepot, primarily by misappropriating lists of customers, which loanDepot argues qualify as trade secrets.  But CrossCountry never sought any confidential information from loanDepot.  To the contrary, CrossCountry instructed the individual Defendants—in writing—upon their hiring by CrossCountry that they may not bring to, disclose, or use in connection with their CrossCountry employment any confidential information from any prior employer.  Further, every individual Defendant acknowledged to CrossCountry in writing that they would not bring, disclose, or use any confidential information belonging to loanDepot in connection with their employment at CrossCountry.  To the extent the individual Defendants transferred any customer contact information to CrossCountry, that

information consists of only publicly-available information.  CrossCountry does not accept non-public information such as social security numbers, credit scores, etc. and will scrub that information if an incoming employee tries to provide it.  The basic customer information that CrossCountry did accept is exactly the same type of information loanDepot itself seeks from new hires, as typically does every competitor in the industry.

Nor can loanDepot establish that its proposed discovery is reasonably tailored to the relief it seeks in this action.  The discovery requests that loanDepot represents it will serve on CrossCountry, attached as Exhibit 2 to loanDepot's Application (ECF No. 6-2), go well beyond even the merits of this case, let alone are tailored to a prospective motion for preliminary injunctive relief.  By way of example, loanDepot seeks expedited discovery of all documents and communications related to the recruitment of *any* loanDepot employee, without limitation, since January 1, 2021.  *See* Appl. Ex. 2 at 33 (ECF No. 6-2) (loanDepot's First Req. for Prod. of Docs. to CrossCountry No. 3).  It also seeks all internal analyses regarding decisions to hire the individual Defendants.  *Id.* (loanDepot's First Req. for Prod. of Docs. to CrossCountry No. 1).  Such discovery has no relationship to any of loanDepot's claims against CrossCountry, which are limited to its supposed receipt of confidential customer information and claims of tortious interference with the individual Defendants' non-solicitation agreements, and are beyond the bounds of even normal discovery, much less expedited discovery.  Expedited discovery cannot be abused in such a way.

Taken at face value, loanDepot's vague and conclusory allegations do not amount to plausible unlawful conduct by CrossCountry.  But even if they do, the broad expedited discovery loanDepot seeks in preparation of a preliminary injunction hearing is so far outside the bounds of the narrowly tailored discovery permitted in such situations that it should be denied in its

entirety.  For these reasons, and those below, this Court should deny loanDepot's request for expedited discovery.

## **BACKGROUND**

This lawsuit is closely related to a similar action loanDepot filed against CrossCountry just a few months ago in federal court in Chicago, *loanDepot.com, LLC v. CrossCountry Mortgage, LLC, et al*., No. 22-cv-1874 (N.D. Ill. April 15, 2022) ("Chicago Action").  According to loanDepot, a forensic investigation in the Chicago Action revealed that certain employees sent CrossCountry information relating to loanDepot's "leaderboard," which it claims consists of "information regarding the performance of loanDepot's top originators by purchase volume and units and loan amount volume and units."  Compl. ¶ 122, n.4 (ECF No. 1).  loanDepot asserts that the leaderboard includes the names of certain individual Defendants in this action, and was "likely used by CrossCountry to target and solicit loanDepot's top originators."  *Id.*  The heart of the allegations here is that when those employees (whom loanDepot calls the "Departed NY Employees")[1] left their employment at loanDepot to go to work for CrossCountry—as they were perfectly free to do—they misappropriated trade secrets by sending lists of customer contact information to CrossCountry and using them at CrossCountry to solicit customers.

What is omitted from loanDepot's Complaint in this action is that loanDepot itself solicits exactly the same type of customer information from individuals it hires from competing mortgage companies.  loanDepot requests that new hires, during their onboarding process, send "all of the following items to mretail_marketing@loandepot.com," including "***past/current clients***, B2B/referral contacts."  *See* "Marketing Get Started Checklist!" (hereinafter "Marketing

---

[1] The Departed NY Employees are Keisha Antoine, Scott Bonora, Stuart Kolinsky, Barry Koven, Enrico Martino, Scott Nadler, Emeline Ramos, Robert Raush, Michael Secor, Erika Vignola, and Yan Zheng.

Checklist" and attached as <u>Exhibit A</u> to the Declaration of Jennifer Del Medico ("Del Medico

Decl.") (emphasis added).  Consistent with loanDepot's own practice, when CrossCountry hired

the Departed NY Employees, it requested that they provide customer names and email addresses

or telephone numbers for customer and business contacts.  *See* "Migrating Your Contacts into

Salesforce," Del Medico Decl. <u>Exhibit B</u>.  CrossCountry also asked the Departed NY Employees

to provide other basic information, including mailing address, the contact's affiliated company,

the type of contact, and the relationship to the contact.  *Id.*  Based on the contact type, the

Departed NY Employees could also complete fields of additional contact information and past

client information.  *Id*.  At the same time, CrossCountry ensured it was not receiving any

information that the Departed NY Employees should not be providing; it asked the Departed NY

Employees to sign Confidential Information Acknowledgements, in which they acknowledged

that CrossCountry instructed them "not to bring to, disclose to or use in connection with [their]

employment or potential employment with [CrossCountry] any Confidential Information from

any prior employer or other person or entity."  *See* Confidential Information Acknowledgements,

compiled at Del Medico Decl. <u>Exhibit C</u>.[2]  By signing the Confidential Information

Acknowledgements, the Departed NY Employees also attested that they did not and would not

bring to, disclose to, or use in connection with their employment or potential employment with

---

[2] CrossCountry has not been able to locate a Confidential Information Acknowledgement for one of the Departed NY Employees, Scott Bonora.  Mr. Bonora, however, made substantially similar representations and acknowledgements in his employment agreement with CrossCountry.  Specifically, Mr. Bonora represented and acknowledged to CrossCountry that he "has not taken any written records, computer disks, or other materials which are the property of any previous employer and shall not use any such written records or computer disks to solicit any loan applications or perform his/her duties hereunder," and that he "has been informed that [CrossCountry] strictly forbids the solicitation of any actual or prospective customers from any previous employment, either as an employee or independent contractor, for the purpose of switching these customers' loans from the previous employer to [CrossCountry]."  *See* Excerpt of Bonora Originating Branch Manager Employment Agreement, Del Medico Decl. <u>Exhibit D</u>.  As discussed below, Mr. Bonora was also reminded by CrossCountry on April 2, 2022, and again by email on April 25, 2022, that he must not use any confidential information that may have been taken from loanDepot and must honor his legal and contractual obligations to loanDepot.

CrossCountry any confidential information "from any prior employer or other person or entity." *Id.*

Also missing from loanDepot's Complaint in this action is any factual allegation that CrossCountry used loanDepot's "leaderboard," or any other item of confidential information to improperly recruit the Departed NY Employees. The best loanDepot can do is to state that CrossCountry "likely used" that document to recruit the Departed NY Employees. Compl. ¶ 122, n.4 (ECF No. 1). But not only is that allegation devoid of any support, it ignores the fact that data on loanDepot's "top" loan originators, like data on all competitors' loan originators (including CrossCountry's), are publicly available. For example, the Scotsman Guide, "the leading resource for mortgage originators," compiles and maintains publicly available rankings of the "top-producing residential mortgage originators" on its website. *See* Scotsman Guide, Inc., *Top Originators - Scotsman Guide*, *https://www.scotsmanguide.com/rankings/top-originators* (last visited July 26, 2022). Anyone who visits that website can instantly generate a ranking of loanDepot's top loan originators based on a variety of categories, including dollar volume, purchase volume, most loans closed, and refinance volume (among other things). The publicly available information includes the loan originator's name, employer, location, the number of loans closed, the total dollar volume of loans closed, and years of experience, among other information. *See. e.g.,* Scotsman Guide, Inc., *Top Dollar Volume 2021 – Scotsman Guide*, *https://www.scotsmanguide.com/rankings/top-originators/2021/top-dollar-volume* (last visited July 26, 2022). The website also provides a filter that can be used to list loanDepot employees only, and further narrow it to include only employees in the state of New York. Indeed, when these filters are applied to the 2021 rankings by total dollar volume, five of the eleven Departed NY Employees appear on the first page:

| Rank | First Name | Last Name | Company | State | Total Volume | Closed Loans | % Purchases | % Refis | Banker or Broker | Yrs. in Biz |
|------|-----------|-----------|---------|-------|--------------|--------------|-------------|---------|------------------|-------------|
| 555 | Jonathan | Yellon | loanDepot | NY | $160,719,248 | 326 | 37% | 63% | Banker | 8 |
| 1018 | Christian | Babcock | loanDepot | NY | $125,351,113 | 324 | 68% | 32% | Banker | 12 |
| 1407 | Scott | Bonora | loanDepot | NY | $108,574,763 | 192 | 42% | 58% | Banker | 11 |
| 1782 | Eliezer | Sklar | loanDepot | NY | $97,576,109 | 176 | 29% | 71% | Banker | 9 |
| 2735 | Scott | Nadler | loanDepot | NY | $77,603,094 | 144 | 39% | 61% | Banker | 10 |
| 3625 | Barry | Koven | loanDepot | NY | $65,622,035 | 110 | 52% | 48% | Banker | 15 |
| 3937 | Constantine | Curtis | loanDepot | NY | $62,478,743 | 158 | 57% | 43% | Banker | 11 |
| 4015 | Jaroslaw | Kwiatkowski | loanDepot | NY | $61,644,965 | 142 | 47% | 53% | Banker | 11 |
| 4892 | Vincent | Vicchio | loanDepot | NY | $54,341,581 | 135 | 49% | 51% | Banker | 10 |
| 5040 | Daniel | Meidan | loanDepot | NY | $53,411,868 | 94 | 51% | 49% | Banker | 7 |
| 5269 | George | Tandy | loanDepot | NY | $51,837,312 | 127 | 38% | 62% | Banker | 9 |
| 5972 | James | Delfin | loanDepot | NY | $47,662,391 | 108 | 32% | 68% | Banker | 8 |
| 6409 | Robert | Raush | loanDepot | NY | $45,254,397 | 86 | 35% | 65% | Banker | 10 |
| 6666 | Michael | Secor | loanDepot | NY | $43,911,780 | 143 | 76% | 24% | Banker | 9 |
| 7096 | Chaya | Edelman | loanDepot | NY | $41,804,348 | 74 | 40% | 60% | Banker | 11 |
| 7406 | Stanislav | Aleshin | loanDepot | NY | $40,528,671 | 77 | 46% | 54% | Banker | 7 |

*Id.*  (Three of the eleven Departed NY Employees are processors or assistants who do not originate mortgage loans.)

After loanDepot's counsel initially sent cease-and-desist letters to some of the Departed NY Employees last spring, CrossCountry held a group conference call on April 2, 2022, during which it reminded the attendees that they may not use any confidential information they may have taken from loanDepot, and must honor their obligations to loanDepot.  *See* Declaration of Ashley Wakefield ¶ 2.  The conference call was attended by several Departed NY Employees, including Mr. Bonora, Mr. Secor, Mr. Raush, Mr. Koven, and Mr. Nadler.  *Id.*  And after another round of cease-and-desist letters by loanDepot in late April, CrossCountry sent emails to several of the Departed NY Employees—including Mr. Bonora, Mr. Secor, Ms. Ramos, Mr. Raush, Mr. Koven, and Mr. Nadler—reminding them that they may not use any confidential information they may have taken from loanDepot and must honor their contractual and legal obligations to loanDepot.  *See* E-mails of April 25, 2022, compiled at Del Medico Decl. Exhibit E. CrossCountry likewise informed loanDepot's counsel that it was willing to abide the terms of the TRO in the Chicago Action—which prohibited the employees in that action from soliciting other loanDepot employees, prohibited the use of certain loanDepot information to contact customers

or prospective customers (but allowed them to establish contact information through independent means), and created a forensic protocol to identify and remediate any loanDepot confidential information that may have been transmitted to CrossCountry—with respect to the Departed NY Employees.  *See* Chicago Action at Dkt. 21.  The parties engaged in discussions and negotiations throughout April and May 2022 but ultimately could not get all parties, including more than 25 individual employees, to agree to sign a draft Standstill Agreement.  After it appeared that those individual employees were not all willing to sign the agreement, loanDepot insisted that CrossCountry simply sign the draft agreement, without actually revising the draft to contemplate a bilateral agreement.  CrossCountry was not willing to do that, but repeatedly informed loanDepot's counsel that CrossCountry "has been living by what th[e] [draft Standstill] [A]greement says as to CrossCountry, and has so instructed the Departed NY Employees, including that they must honor their legal and contractual obligations to loanDepot."  E-mails from May 5 and 6, 2022, Del Medico Decl. <u>Exhibit F</u>.  After negotiations failed, loanDepot commenced this action.

## **ARGUMENT**

The Federal Rules of Civil Procedure mandate that a "party may not seek discovery from any source before the parties have conferred as required by Rule 26(f)."  Fed. R. Civ. P. 26(d)(1).  While the Rule provides an exception when authorized by court order, "[e]xpedited discovery is not the norm."  *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. O'Connor*, 194 F.R.D. 618, 623 (N.D. Ill. 2000).  Indeed, the "court must protect defendants from unfairly expedited discovery."  *Notaro*, 95 F.R.D. at 405.  The party seeking expedited discovery has the burden of showing that there is a need for it.  *Id*.  While an asserted need for discovery in order to support or defend against a preliminary injunction motion can in certain circumstances provide the requisite good cause for approving expedited discovery, not even "[t]he pendency of [] a [preliminary

injunction] motion […]automatically entitle[s] a party to expedited discovery." *Oriska Insurance Company v. Avalon Gardens Rehabilitation & Health Care Center, LLC*, No. 6:18-CV-1030, 2018 WL 6074693, *10 (N.D.N.Y. Nov. 21, 2018) (citing *Wolcox Indus. Corp. v. Hansen*, 279 F.R.D. 64, 68 (D.N.H. 2012)).

In this District, courts have utilized two tests for determining if a request for expedited discovery is warranted.  First, under the *Notaro* test, a court may consider the following factors: (1) irreparable injury, (2) some probability of success on the merits; (3) some connection between the expedited discovery and the avoidance of the irreparable injury, and (4) some evidence that the injury will result without expedited discovery looms greater than the injury that the defendant will suffer if the expedited relief is granted.  *See Gidatex, S.r.L. v. Campaniello Imports, Ltd.*, 13 F. Supp. 2d 417, 420 (S.D.N.Y. 1998) (citing *Lentjes Bischoff GmbH v. Joy Environmental Technologies, Inc.*, 986 F. Supp. 183, 188 (S.D.N.Y. 1997) (quoting *Irish Lesbian and Gay Org. v. Giuliani*, 918 F. Supp. 728, 730 (S.D.N.Y. 1996))).  Second, some courts have applied a more general "reasonableness and good cause" test where a court examines the request "on the entirety of the record to date and the reasonableness of the request in light of all the surrounding circumstances."  *Ayyash v. Bank Al-Madina*, 233 F.R.D. 325, 326-27 (S.D.N.Y. 2005).  Under the second test, courts may consider a variety of factors, including: "(1) the timing and context of the discovery requests, including whether a preliminary injunction hearing has been scheduled; (2) the scope and purpose of the requests; and (3) the nature of the burden to the respondent."  *L.T. v. Zucker*, No. 1:21-CV-1034, 2021 WL 4775215, *12 (N.D.N.Y. Oct. 13, 2021) (citation omitted).  loanDepot's request for expedited discovery fails both tests.

**I.    loanDepot Cannot Establish Any Entitlement to Expedited Discovery As to CrossCountry Under the *Notaro* Test.**

loanDepot's allegations fail to connect *any* injury or harm to CrossCountry's purported

actions.  Thus, it cannot show that expedited discovery against CrossCountry is either necessary

to avoid irreparable injury or that it has a likelihood of success on the merits.  loanDepot's

request for expedited discovery accordingly fails to meet the *Notaro* test.

### A.     loanDepot Cannot Show It Is Likely to Suffer Irreparable Harm from CrossCountry.

In order to establish irreparable harm, a plaintiff must show that an injury is "likely and

imminent, not remote and speculative." *NAACP v. Town of East Haven*, 70 F.3d 219, 224 (2d Cir.

1995).  The injury must be one that "cannot be remedied if a court waits until the end of trial to

resolve the harm" and one where there is not an adequate remedy at law.  *Faiveley Transport*

*Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009) (quoting *Grand River Enter. Six*

*Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007)); *see also Kamerling v. Massanari*, 295 F.3d

206, 214 (2d Cir. 2002) (finding that to establish irreparable harm a party "must show that there is

a continuing harm which cannot be adequately redressed by final relief on the merits and for which

money damages cannot provide adequate compensation.").

Here, loanDepot's allegations of irreparable harm based on conduct *by CrossCountry* are

remarkably thin.  loanDepot's Application asserts that CrossCountry recruited loanDepot's

highest performers and offered bonuses to those who solicited other employees.  Appl. at 6-7.

But there is nothing unlawful about recruiting successful employees from another mortgage

lender in a highly competitive market, and any allegations of bonuses to such employees for

improper solicitation are completely unsupported by any well-pleaded factual allegation.  To the

extent loanDepot alleges that CrossCountry threatened to pay "a $50,000 bounty" for a

loanDepot branch, loanDepot fails to mention that the text message it cites refers to making that

offer to "recruiters," *not* loanDepot employees.  Compl. ¶ 92.  Not only is it entirely lawful to

pay recruiters to recruit employees, but loanDepot makes no allegation that any supposed

"bounty" was ever offered or paid in connection with the loanDepot branches at issue.

loanDepot likewise alleges vaguely that "Defendants" misappropriated thousands of confidential files.  Appl. at 7-8.  But, regardless of loanDepot's claims about what individual Defendants may have done, there are zero factual allegations that CrossCountry ever solicited confidential information.  To the contrary, CrossCountry required the Departed NY Employees to sign confidentiality acknowledgements, confirming that they did not take any confidential information from loanDepot, and sent email communications reminding them of their obligations not to use any such information and to honor their obligations to loanDepot.  *See* Del Medico Decl. Exhibits C, D, & E.  As CrossCountry has told loanDepot repeatedly, it does not want any confidential information that may have been taken by any Departed NY employees.

loanDepot cannot get expedited discovery against CrossCountry based on such flimsy, conclusory, and speculative allegations.  For example, *Share Corp. v. Momar, Inc.* is an illustrative case in which the plaintiff, Share Corp., sued its competitor in the chemical solutions industry and several former Share employees for various confidentiality and trade secret violations, alleging that the defendant, Momar, Inc., used such information to solicit Share customers.  No. 10-CV-109, 2010 WL 724321, at *1 (E.D. Wis. Feb. 26, 2010).  The court rejected Share's motion  for expedited discovery, finding that "all of the plaintiff's allegations are purely speculative at this stage of the litigation and do not justify court ordered discovery prior to any potential hearing on a preliminary injunction."  *Id.* at *2.  In so doing, the court *rejected* Share's arguments that retaining customer lists indicated that illicit customer solicitation occurred; that improper solicitation can be implied from the fact other employees joined the new employer; and that former employees would inevitably use or disclose confidential information for the benefit of their new employer.  *Id.* at *2 (holding that because Share's "only connection

with these customers was through its sales representatives," it could be just as likely that the customers wanted to keep doing business with those sales representatives.).  Likewise here, loanDepot's speculative and conclusory assertions that CrossCountry induced the Departed NY Employees to breach non-solicitation agreements or induced misappropriation of confidential information despite admonishments to the contrary do not warrant expedited discovery.

loanDepot's cited authority likewise provides no support for expedited discovery as to CrossCountry.  For instance, loanDepot cites *FMC Corp. v. Taiwan Tainan Giant Indus. Co*., 730 F.2d 61 (2d Cir. 1984), for the proposition that irreparable harm is "presumed where trade secrets have been misappropriated."  But the Second Circuit has clarified that this interpretation of *FMC Corp.* is incorrect.  *See Faiveley Transport Malmo AB*, 559 F.3d at 118 (holding that a reading of *FMC Corp*. that includes a presumption of irreparable harm in trade secret cases "is not correct.").  Rather, "[a] rebuttable presumption of irreparable harm *might* be warranted in cases where there is a danger that, unless enjoined, a misappropriator of trade secrets will disseminate those secrets to a wider audience or otherwise irreparably impair the value of those secrets."  *Id*. (emphasis added).  But, if a "misappropriator seeks only to use those secrets— without further dissemination or irreparable impairment of value—in pursuit of profit, no such presumption is warranted because an award of damages will often provide a complete remedy for such an injury."  *Id*.; *see also Baker's Aid v. Hussman Foodservice Co*., 830 F.2d 13, 15 (2d Cir. 1987) (rejecting the proposition "that irreparable harm must inevitably be assumed in breach of covenant cases").  Here, of course, there is no allegation whatsoever that CrossCountry intends to disseminate or irreparably impair the value of any piece of information in its possession; to the contrary, loanDepot alleges CrossCountry is "focused" on loanDepot's New York operations precisely because they are "highly profitable."  Compl. ¶ 3 (ECF No. 1).

loanDepot's remaining citations fare no better.  Several of the decisions on which loanDepot relies involve claims by a former employer against *only the former employee*, not the new employer, and thus do nothing to establish entitlement to expedited discovery as to CrossCountry.  *See, e.g.*, *Ticor Title Ins. Co. v. Cohen*, 173 F.3d 63, 68-70 (2d Cir. 1999) (affirming denial of preliminary injunction against individual defendant for violation of an employment agreement); *Marsh USA Inc. v. Karasaki*, No. 08 Civ. 4195(JGK), 2008 WL 4778239 (S.D.N.Y. Oct. 31, 2008) (granting in part and denying in part preliminary injunction against individual defendant); *Estee Lauder Cos. V. Batra*, 430 F. Supp. 2d 158 (S.D.N.Y. 2006) (granting preliminary injunction against only individual defendant); *Natsource LLC v. Paribello*, 151 F. Supp. 2d 465, 469 (S.D.N.Y. 2001) (granting a motion for preliminary injunction against only individual defendant); *see also Mercer Health & Benefits LLC v. DiGregorio*, 307 F. Supp. 3d 326, 346 (S.D.N.Y. 2018) (granting a preliminary injunction against individual defendants but not against the new employer where there was insufficient evidence of general jurisdiction or specific jurisdiction with respect to new employer).

And the cases in which the employer was a defendant in the lawsuit are easily distinguishable.  For example, *Capstone Logistics Holdings, Inc. v. Navarrete* involved an employer that was created by one of the individual defendants to compete with his former employer.  No. 17-CV-4819 (GBD), 2018 WL 6786338, at *8 (S.D.N.Y. Oct. 25, 2018), *aff'd and remanded in part*, 796 F. App'x 55 (2d Cir. 2020).  *Aon Risk Servs. v. Cusack* involved evidence that, among other things, the new employer created a budget based on confidential revenue information provided by senior executives of its competitor, reserved nearly $25 million for legal expenses (including $19.2 million for settlement) in anticipation of litigation, and guaranteed an employee's salary and bonus even in the event of an injunction by the court.

34 Misc. 3d 1205(A), 946 N.Y.S.2d 65 (Sup. Ct. 2011).  And *FMC Corp.* involved evidence that

letters were sent to customers with the new employer's knowledge representing that the new

employer manufactured a chemical that implicated the use of the plaintiff's trade secrets.

730 F.2d at 63; *see also FMC Corp. v. Taiwan Tainan Giant Indus. Co.*, No. CIV-83-1042, 1983

WL 52357, at *3 (W.D.N.Y. Oct. 27, 1983), *rev'd*, 730 F.2d 61 (2d Cir. 1984).  No similar facts

are alleged here.

At bottom, there is no basis for finding any irreparable harm based on the conduct of

CrossCountry.  There are no factual allegations that CrossCountry knowingly received

confidential information belonging to loanDepot, or induced the Departed NY Employees to

violate any non-solicit provisions in their agreements.  Indeed, the evidence is to the contrary.

And, unlike the Departed NY Employees (allegedly), CrossCountry has never agreed that

monetary damages would be an insufficient remedy for violations of any agreement.  It thus goes

without saying that there is no connection between the expedited discovery and the avoidance of

irreparable injury, especially where, as here, CrossCountry is preserving documents.  *See Litwin*

*v. OceanFreight, Inc.*, 865 F. Supp. 2d 385, 402 (2011) (denying expedited discovery in part

because "the defendants have represented to the Court that they have undertaken appropriate

steps to preserve all potentially relevant materials, electronic or otherwise.").

Accordingly, loanDepot has failed to establish irreparable harm or a need for expedited

discovery to avoid irreparable harm and on this basis alone its Application should be denied.

### B.    loanDepot Cannot Show Any Likelihood of Success On the Merits of Its Claims Against CrossCountry.

In addition to loanDepot's inability to show an ongoing threat of irreparable harm at the

hands of CrossCountry, loanDepot is not entitled to expedited discovery under the *Notaro*

standard for the additional reason that it is unlikely to succeed on the merits of its claims against

CrossCountry.  loanDepot asserts five causes of action against CrossCountry:  (1) trade secret misappropriation under the Federal Defend Trade Secrets Act, (2) tortious interference with contract, (3) tortious interference with prospective economic advantage, (4) aiding and abetting breach of fiduciary duty, and (5) unfair competition.  On all these claims, loanDepot's allegations *as to CrossCountry* are particularly lacking or nonexistent entirely.

### 1.    loanDepot's Defend Trade Secrets Act Claim Lacks Merit.

loanDepot is unlikely to succeed on the merits of its Defend Trade Secrets Act claim against CrossCountry.  To state a claim for trade secret misappropriation under the DTSA, a plaintiff must plausibly allege both that (1) it possessed a trade secret, and (2) the defendant misappropriated the trade secret.  *See* 18 U.S.C. § 1836(b)(1).  loanDepot's claims against CrossCountry fail to establish a likelihood of success as to either element.

*First*, loanDepot contends that its customer contact lists and internal rankings of top performing employees are protectable trade secrets.  Appl. at 14.  To be a protected trade secret, the owner must have "taken reasonable measures to keep such information secret" and the information must derive "independent economic value . . . from not being generally known to, and not being readily ascertainable through proper means by, another person."  18 U.S.C. § 1836(b)(1).  "Customer lists are generally not considered confidential information."  *Iron Mountain Information Mgmt., Inc. v. Taddeo*, 455 F. Supp. 2d 124, 138 (E.D.N.Y. 2006) (applying New York law, noting that it is substantially the same as the DTSA) (citations omitted).  However, "under certain circumstances, a customer contact list may be deemed a trade secret" if it was "developed by a business through substantial effort and kept in confidence . . . provided the information it contains is not otherwise readily ascertainable."  *Art and Cook, Inc. v. Haber*, 416 F. Supp. 3d 191, 195 (E.D.N.Y. 2017) (quoting *N. Atl. Instruments, Inc. v. Haber*, 188 F.3d 38, 44 (2d Cir. 1999)).  Importantly, the list must "derive[] independent economic value

14

from not being generally known." *Id.*

Fatal to loanDepot's claim that its customer contact lists should be afforded trade secret protection is the fact that loanDepot itself does not treat that information as a trade secret when it hires new employees.  When loanDepot hires employees from a competitor, it asks the new hires, during their onboarding process, to send "all of the following items to mretail_marketing@loandepot.com," including "***past/current clients***, B2B/referral contacts." *See* Del Medico Decl. Exhibit A.  This is the same information CrossCountry is alleged to have collected.  loanDepot's routine collection and possession of customer information from the former employees of its competitors are directly relevant to its claims in this case that such information is confidential, and weigh significantly against loanDepot's claim that such information is a trade secret.  Put simply, loanDepot's own conduct defeats its claim of trade secret misappropriation.  *See, e.g.*, *Nalco Chemical Co. v. Hydro Technologies, Inc.*, 148 F.R.D. 608, 617 (E.D. Wis. 1993) (finding that evidence that a company possesses the same information as its competitor weighs against a finding that it is a trade secret).

Likewise, loanDepot's internal rankings of top loan originators does not constitute a trade secret (Appl. at 14), as that information is publicly available.  As discussed, loanDepot's top loan originators easily can be identified using public sources, such as the Scotsman Guide website. And many of the Departed NY Employees in this case are easily and readily identifiable through that public website.  In essence, loanDepot seeks trade secret protection for information that is available to anyone with an internet connection.  *See Geritrex Corp. v. Dermarite Indus., LLC*, 910 F. Supp. 955, 961 n.4 (S.D.N.Y. 1996) ("Information that is readily ascertainable from publicly available sources does not constitute a trade secret.") (citation omitted).

*Second*, even if loanDepot could establish that its customer lists or internal employee

rankings are trade secrets (it cannot), it still fails to allege misappropriation by CrossCountry.  To establish misappropriation under the DTSA, a party must show "an unconsented disclosure or use of a trade secret by one who (i) used improper means to acquire the secret, or, (ii) at the time of disclosure, knew or had reason to know that the trade secret was acquired through improper means, under circumstances giving rise to a duty to maintain the secrecy of the trade secret, or derived from or through a person who owed such a duty."  *Free Country Ltd v. Drennen*, 235 F. Supp. 3d 559, 565 (S.D.N.Y. 2016) (citing *Syntel Sterling Best Shores Mauritius Ltd v. Trizetto Grp., Inc.*, No. 15CV211LGSRLE, 2016 WL 5338550, *6 (S.D.N.Y. Sept. 23, 2016)).

Here, the most that loanDepot has alleged as to CrossCountry is that CrossCountry has engaged in fair competition by hiring employees who no longer wanted to work for loanDepot. That is not enough to allege trade secret misappropriation, much less establish a likelihood of success on the merits, regardless of what the Departed NY Employees may have done.  In *Free Country Ltd.*, for example, the plaintiff sued both individual employees and its competitors, Rousso Apparel and Santa Fe Apparel, for misappropriation based on claims that the individual employees saved confidential information to their personal devices, including  product designs, customer order information, and client contact information.  *Id.* at 562-64.  Before even considering the merits of plaintiff's motion for a TRO, the court noted "at the outset that there is no evidence of any wrongdoing by the corporate defendants, Rousso and Santa Fe."  *Id.* at 565. The court found that it was the corporate defendants' "clear (and legitimate) intent" to compete with the plaintiff, but that they were unaware of the alleged misappropriated trade secrets in the individual employees' possession and thus the plaintiff was not likely to succeed on the merits of its claims against the corporate defendants.  *Id.* at 565-66.  The same is true here.

The Departed NY Employees were required to sign an acknowledgment that they did not

retain, and would not use, confidential information from loanDepot; and CrossCountry further reinforced those directives both orally and in writing.  (*See supra* pp. 4-7.)  As such, CrossCountry had no basis to know, and loanDepot has no basis to allege, that the Departed NY Employees retained or used any confidential loanDepot information after becoming employed by CrossCountry.  Moreover, all the alleged misappropriation of loanDepot information by the Departed NY Employees—including customer lists and information about loanDepot "leaders"—occurred before they were even employed by CrossCountry.  loanDepot's bare bone allegations do not provide any facts indicating that CrossCountry acquired confidential information or knew that any such information was taken by the Departed NY Employees, and thus it cannot show a likelihood of success on its DTSA claim.

### 2. loanDepot's Remaining Non-DTSA Claims Against CrossCountry Are Also Unlikely to Succeed On the Merits.

Typical of its Complaint, loanDepot's allegations supporting its non-DTSA claims against CrossCountry are actually targeted at the Departed NY Employees.  Indeed, loanDepot dedicates only one paragraph of its Application to alleged misconduct by CrossCountry, and even there relies on mischaracterizations of fact and conclusory allegations to assert that CrossCountry aided and abetted breaches by the Departed NY Employees.  *See* Appl. at 15.

For instance, loanDepot broadly alleges in its Application that CrossCountry "offered bonuses related to the recruitment of other loanDepot employees, indemnification for litigation related to their departures and a $50,000 bounty for coopting an entire loanDepot branch."  Appl. at 15.  loanDepot does not allege a single fact or concrete example to support these claims, citing only to allegations made "upon information and belief" regarding its claims of recruitment bonuses and indemnification.  *Id*.  As to the purported "$50,000 bounty," loanDepot points only to a text message between CrossCountry CEO Ronald Leonhardt and loanDepot's National

Director of Business Development, which loanDepot characterizes as an enticement to "recruiters," not the Departed NY Employees.  *See* Compl. ¶ 92.  In any event, there is no evidence such an incentive was even provided to recruiters, much less offered to the Departed NY Employees to violate non-solicitation agreements.

In addition, although loanDepot cites in support of its non-DTSA claims what it purports to be "a similar case where CrossCountry solicited an employee" (Appl. at 13), loanDepot fails to acknowledge that CrossCountry was not a party to the case.  *See Union Home Mortgage Corp. v. Jenkins*, No. 1:20-cv-0269, 2021 WL 1979517 (N.D. Ohio May 18, 2021).  In that case, the court focused on the question whether the individual defendant's restrictive covenant was valid, and granted a limited preliminary injunction against the individual defendant regarding customers obtained during the employee's employment with the plaintiff.  *Id.* at 14.  There was no relief against CrossCountry, and in fact, one of the individual defendants "testified that he has not given the [data] to CrossCountry or otherwise used the customer documents from the OneDrive to compete against Union Home."  *Union Home Mortgage*, 2021 WL 1979517, *3.

In short, loanDepot's allegations are insufficient to satisfy any plausibility standard as to CrossCountry.  It is difficult—if not impossible—to see how loanDepot could succeed on the merits of its non-DTSA claims against CrossCountry, there are no claims of irreparable injury by CrossCountry, and there is no connection between expedited discovery and the avoidance of any irreparable injury.  loanDepot's has thus failed to meet its burden under *Notaro* to establish its need for expedited discovery as to any non-DTSA claims, and its Application should be denied as to these claims as well.  *See Merrill Lynch*, 194 F.R.D. at 623 ("courts should not grant [expedited discovery] without some showing of the necessity for the expedited discovery").

## II.     Expedited Discovery Is Unreasonable Under the Circumstances, and No Good Cause Exists.

loanDepot also fails to establish a right to expedited discovery under the "reasonableness and good cause" test.  Under that test, a district court examines the request "on the entirety of the record to date and the reasonableness of the request in light of all the surrounding circumstances."  *In re Keurig Green Mountain Single-serve Coffee Antitrust Litig.*, No. 14-CV-4242, 2014 WL 12959675, at *1 (S.D.N.Y. July 23, 2014); *Ayyash*, 233 F.R.D. at 327 ("in deciding on a matter merely of regulating the timing of discovery, 'it makes sense to examine the discovery request . . . on the entirety of the record to date and the reasonableness of the request in light of all the surrounding circumstances.'").  Some courts find that the four *Notaro* factors discussed above govern this inquiry.  *SingularDTV GmbH v. LeBeau,* No. 21-CV-10130 (VEC), 2022 WL 1082557, at *1 (S.D.N.Y. Apr. 6, 2022) ("Four factors govern this inquiry: "(1) irreparable injury, (2) some probability of success on the merits, (3) some connection between the expedited discovery and the avoidance of the irreparable injury, and (4) some evidence that the injury will result without expedited discovery looms greater than the injury that the defendant will suffer if the expedited relief is granted.")  Under those factors, for the reasons discussed above, the expedited discovery sought by loanDepot must be denied.  But even if the Court looks to factors considered by other courts under this standard, expedited discovery as to CrossCountry remains inappropriate.  *See Zucker*, 2021 WL 4775215 *12 (stating that under this test, courts may consider a variety of factors, including: "(1) the timing and context of the discovery requests, including whether a preliminary injunction hearing has been scheduled; (2) the scope and purpose of the requests; and (3) the nature of the burden to the respondent."); *North Atlantic Operating Co., Inc. v. Evergreen Distributors, LLC*, 293 F.R.D. 363, 371 (E.D.N.Y. 2013) (denying plaintiffs' application for expedited discovery because it was "overbroad, overly

burdensome and not reasonable under the circumstances").

Here, as discussed below, loanDepot fails the "reasonableness and good cause test" because (1) its requested expedited discovery is not narrowly tailored to the needs of a preliminary injunction, and the burden on CrossCountry would be enormous (which is also relevant under *Notaro*), and (2) the request comes well in advance of typical discovery.

**A.**    **loanDepot's Requested Discovery Is Not Narrowly Tailored to Obtain Information Relevant to a Preliminary Injunction, and the Burden of Complying Would Be Unreasonably Heavy.**

It is axiomatic that the purpose of a preliminary injunction "is not to give the plaintiff the ultimate relief it seeks," but to "prevent irreparable injury so as to preserve the court's ability to render a meaningful decision on the merits." *WarnerVision Entertainment Inc. v. Empire of Carolina, Inc.*, 101 F.3d 259, 261 (2d Cir. 1996) (internal citations omitted). "[T]he scope of permissible expedited discovery is limited to requests that are more narrowly 'tailored to the time constraints under which both parties must proceed [and] to the specific issues that will have to be determined at the preliminary injunction hearing.'" *Federal Exp. Corp. v. Federal Espresso, Inc.*, No. Civ.A.97CV1219 (RSP) (GJD), 1997 WL 736530, *2 (N.D.N.Y. Nov. 24, 1997) (quoting *Irish Lesbian and Gay Org.*, 918 F.Supp. at 731). Expedited discovery is not a "vehicle to conduct the entirety of discovery prior to the Rule 26(f) conference." *Palermo v. Underground Sols., Inc.*, No. 12CV1223-WQH BLM, 2012 WL 2106228, at *3 (S.D. Cal. June 11, 2012) (denying expedited discovery where "excessively broad" expedited discovery requests not narrowly tailored to preliminary injunction issues); *see also Better Packages, Inc. v. Zheng*, No. Civ.A. 05-4477 (SRC), 2006 WL 1373055, *5 (D.N.J. May 17, 2006) (denying expedited discovery because "[t]he scope of the requested discovery and Defendants likely discovery in response would lead to the parties conducting nearly all discovery in an expedited fashion under the premise of preparing for a preliminary injunction hearing, which is not the purpose of

expedited discovery"); *Aon PLC v. Infinite Equity, Inc.*, No. 19 C 7504, 2020 WL 1954027, *2 (N.D. Ill. Apr. 23, 2020) (denying in part a plaintiff's motion to expand expedited discovery because such discovery is "the production of information . . . solely for purposes of a preliminary injunction hearing, and not to uncover all the relevant facts related to the claims and defenses. The time for that more fulsome discovery will come later, once expedited discovery is complete and the preliminary injunction issue has been decided."). Thus, courts have held that "when a plaintiff's discovery requests would go to the heart of the case, such that they become discovery that seeks to prove an element of the plaintiffs' case, a request for expedited discovery is inappropriate." *Attkisson v. Holder*, 113 F. Supp. 3d 156, 163 (D.D.C. 2015) (citations and quotations omitted).

Here, the expedited discovery loanDepot seeks is facially over broad, not reasonably tailored to a preliminary injunction motion, and goes to the ultimate merits of the case. *See* Appl., Ex. 2 at 2-9 (loanDepot's First Set of Interrogs. Directed to CrossCountry) and 28-35 (loanDepot's First Req. for Prod. of Docs. to CrossCountry) (ECF No. 6-2). loanDepot demands ten document requests for each defendant, ten requests for admission from each defendant, ten interrogatories for each defendant, ten third party subpoenas, and fifteen depositions. *See* Appl. at 18-19. It proposes no limitations on the extent of those third party subpoenas, the topics to be covered in written discovery, or the length and scope of the depositions. *Id.* What is more, loanDepot asks this Court to order, on an expedited basis, a complete forensic examination of electronic files belonging to the Departed NY Employees and of any storage account or repository "used by CrossCountry's Brooklyn office or any other office with which the Departed NY Employees are affiliated," without any limitations whatsoever. *Id.* All of this, loanDepot insists, is to be completed in 90 days.

As if to demonstrate the absurdity of its own proposal, loanDepot attaches to its Application a litany of overbroad discovery requests that have nothing to do with its threatened preliminary injunction motion.  *See, e.g.*, *Rovio Entertainment Ltd v. Royal Plush Toys, Inc.*, 907 F. Supp. 2d 1086, 1100 (N.D. Cal. 2012) (holding that "Plaintiff has not clearly shown that the discovery requested is narrowly tailored to obtain information relevant to a preliminary injunction determination") (emphasis added).  For instance, Request for Production No. 1, asks for any and all communications and documents that were sent to, received from, or discuss any of the Departed NY Employees, including internal discussions and analyses of hiring the employees.  Appl., Ex. 2 at 28-35 (loanDepot's First Req. for Produc. of Docs. to CrossCountry) (ECF No. 6-2).  loanDepot has no right to discovery over CrossCountry's internal decision-making process, not in merits discovery and certainly not at the preliminary approval stage, and this Request—which has no time limitation—would include tens of thousands of ordinary course documents that were sent to or received from the Departed NY Employees.  The same is true for Request for Production No. 3, which asks for all documents and communications regarding the recruitment or employment of ***any*** loanDepot employee from January 1, 2021 through the present.  *Id*.  This request not only predates the allegations of this suit by a full year, but would apparently pertain to the recruitment or employment of any loanDepot employee anywhere in the country, regardless of circumstances.  It has no bearing whatsoever on the claims in this case or the conduct of the Departed NY Employees, nor is there anything remotely improper about CrossCountry hiring loanDepot employees.  Likewise, Request for Production No. 8, asks for all documents and communications related to the personnel files for the Departed NY Employees. This request would require production of countless ordinary course documents regarding the Departed NY Employees' employment agreements, acknowledgements, health benefits, etc. that

have no relevance to the issues in this case, or any future application for injunctive relief.

loanDepot's proposed Interrogatories are equally overbroad and unrelated to a motion for preliminary injunction. *See, e.g.,* Appl. Ex. 2 at 8-9 (ECF No. 6-2) (loanDepot's First Set of Interrogs. Directed to CrossCountry Nos. 4 and 8 ("Identify each and every current or former employee of loanDepot, other than the Departed NY Employees, with or about whom CrossCountry has had contact or communicated since November 1, 2021 regarding employment or potential employment with CrossCountry or the Departed NY Employees;" "Identify all CrossCountry email accounts, Computers, data storage devices, hardware, Customer Relationship Management tools or applications, media, cloud-based storage accounts, or other repositories of information any of the Departed NY Employees utilize or to which any of the Departed NY Employees have access to perform their work for CrossCountry.").  None of this information would assist this Court in determining whether to grant a preliminary injunction. And these are just examples—none of the interrogatories or requests for production that loanDepot intends to serve on CrossCountry are narrowly tailored towards a claim for injunctive relief.  Indeed, the broad discovery sought by loanDepot would require CrossCountry to expend the same amount of resources it would under traditional discovery.  Such "broadside" discovery requests are not "reasonably tailored" to the specific issues to be decided at the preliminary injunction hearing. *See Irish Lesbian and Gay Org.*, 918 F. Supp. at 731.  For these reasons, loanDepot's Application fails to meet the "reasonableness and good cause test."

### B.    There Is No Reasonable Necessity for Expedited Discovery to Preserve the Status Quo.

loanDepot's request for expedited discovery should also be denied for the simple reason that it is unnecessary to preserve the status quo.  Expedited discovery is warranted when "the plaintiff seeks to 'gain evidence to get the court to preserve the status quo.'" *Attkisson*, 113

F. Supp. 3d at 164 (quoting *Disability Rights Council of Greater Wash. v. Wash. Metro. Area Transit Auth.*, 234 F.R.D. 4, 7 (D.D.C. 2006)).  However, "[i]f there is no urgency in conducting discovery . . . this factor weighs against granting expedited discovery." *Id.* (citing *Guttenberg v. Emery*, 26 F. Supp. 3d 88, 98 (D.D.C. 2014)).

Here, there is no reasonable necessity for expedited discovery against CrossCountry. CrossCountry already has instructed the Departed NY Employees that they must honor their contractual and legal obligations to loanDepot, may not solicit any loanDepot employee to the extent such solicitation is prohibited by their loanDepot employment agreements, and must not use any confidential information that they might have taken from loanDepot.  *See supra* pp. 4-7. And expedited discovery cannot be sought to address a harm that has already occurred.  *See Qwest Commc'ns Int'l, Inc. v. WorldQuest Networks, Inc.*, 213 F.R.D. 418, 421 (D. Colo. 2003) ("preliminary injunctive relief cannot remedy harm that already has occurred.  Thus, the moving party must come forward with evidence showing irreparable injury may occur *pendente lite* if the preliminary injunction is not granted").

### C.     loanDepot's Request for Expedited Discovery Comes Well In Advance of Typical Discovery.

In deciding whether to grant a request for expedited discovery, courts consider the timing of the motion for expedited discovery, in particular how long before the normal discovery process the motion comes.  And in deciding on a matter merely of regulating the timing of discovery, "it makes sense to examine the discovery request . . . on the entirety of the record to date and the *reasonableness* of the request in light of all the surrounding circumstances." *Ayyash*, 233 F.R.D. at 327 (S.D.N.Y. 2005) (citing *Merrill Lynch*, 194 F.R.D. at 624 (emphasis in original)).  "Because discovery typically occurs after the resolution of motions to dismiss, […] presenting a motion for expedited discovery prior to rulings on motions to dismiss is often

disfavored." *Attkisson*, 113 F. Supp. 3d at 165 (citations omitted).  Even filing a motion for expedited discovery after briefing of motions to dismiss has concluded is "well in advance of typical discovery."  *Id.*  "Relatedly, requiring defendants to comply with an order for expedited discovery when the case may later be dismissed for failure to state a claim could 'force[ ] [the defendants] to expend significant resources responding to discovery requests in a case where plaintiffs did not have a viable cause of action.'"  *Id.* (quoting *Guttenberg*, 26 F. Supp. 3d at 99).  "At the very least, reasonableness dictates that the Court consider defendants' motion to dismiss before requiring extensive and expensive discovery."  *Id*. at 166.

In this case, the request for expedited discovery comes well in advance of typical discovery.  Further, in light of the deficiencies in loanDepot's allegations identified throughout this opposition brief, CrossCountry certainly intends on moving to dismiss loanDepot's claims for failure to state a claim.  Hence, loanDepot's request for expedited discovery as to CrossCountry should be denied.

## CONCLUSION

loanDepot's Application fails under either test articulated by this Court.  For the reasons set out above, this Court should deny loanDepot's request for expedited discovery as to CrossCountry.

Dated: July 29, 2022                                Respectfully submitted,

                                                    /s/ *Jennifer L. Del Medico*
                                                    Jennifer L. Del Medico
                                                    JONES DAY
                                                    250 Vesey Street
                                                    New York, New York 10281
                                                    Telephone: (212) 326-3939
                                                    Facsimile: (212) 755-7306
                                                    jdelmedico@jonesday.com

                                                    *Attorney for CrossCountry Mortgage, LLC*

25

<u>**CERTIFICATE OF SERVICE**</u>

The foregoing document was served on counsel of record by undersigned counsel on July 29, 2022 by electronic mail through the Court's CM/ECF system.

/s/ *Jennifer L. Del Medico*
Jennifer L. Del Medico