

321 N. Clark Street
Suite 1600
Chicago, IL 60654
Tel (312) 517-9200
Fax (312) 517-9201
www.foxrothschild.com

JEFFREY L. WIDMAN
Direct No: 312.980.3807
Email: JWidman@Foxrothschild.com

August 25, 2022

**Via ECF**
Hon. Lorna G. Schofield
Southern District of New York
United States Courthouse
40 Foley Square
New York, NY 10007

      **Re:**    *loanDepot.com, LLC v. CrossCountry Mortgage, LLC, et al.,* Case No 1:22-cv-05971-LGS

Dear Judge Schofield:

Pursuant to your Honor's August 18, 2022 Order (ECF No. 66), I write on behalf of Defendants Keisha Antoine, Scott Bonora, Stuart Kolinsky, Barry Koven, Enrico Martino, Scott Nadler, Emeline Ramos, Robert Raush, Michael Secor, Erika Vignola and Yan Zheng (the "Individual Defendants") in the above-referenced matter regarding entry of an agreed order granting preliminary injunctive relief in substantially the form of the Chicago TRO. In considering this issue, and at the Court's suggestion, we have reviewed your Honor's opinion in *ExpertConnect, L.L.C. v. Fowler,* 2019 WL 3004161 as well as other relevant authority in determining whether such an order would be appropriate. In short, we believe injunctive relief similar to that granted in the Chicago action is not warranted in the case *sub judice* for the reasons set forth below.

As loanDepot's letter to your Honor asserts, the question of whether to grant such relief is very fact dependent. And while the parties can argue over whether loanDepot's counsel conceded at the hearing before Judge Finnegan that basic customer contact information such as name, address, phone number, etc. is or is not entitled to trade secret protection, what the facts in this case will show is that loanDepot clearly and unequivocally failed to treat such information as confidential for *years* before forcing the Individual Defendants to sign the agreements attached to the Complaint. But those agreements are not the first agreements that several of the Individual Defendants (as well as hundreds of other loanDepot employees) signed. For

August 25, 2022
Page 2

example, Stuart Kolinsky, who plaintiff alleges began working for loanDepot in 2012, was provided and signed the attached employment agreement on December 3, 2012.[1]

As your Honor's *ExpertConnect* opinion makes clear, the term "trade secret" can include all forms and types of business information so long as "the owner thereof has taken reasonable measures to keep such information secret."  *ExpertConnect,* 2019 WL 3004161 at *4.  In holding that the Complaint adequately alleged that plaintiff took reasonable steps to protect its trade secrets, your Honor noted that the plaintiff required its employees to enter into agreements stating that the employees could only use confidential information for the purpose of performing his/her duties as an employee, that the information could only be accessed through password protected points of entry and that the employee handbook prohibited employees from misusing or removing client lists and other confidential information without authorization. *Id.*

While loanDepot may have checked certain boxes in its Complaint to satisfy the above pleading requirements, the facts in this case are far different.  For a period of approximately *four years after its acquisition of Mortgage Master, Inc.,* the terms of employment that governed hundreds of loanDepot employees (defendants Bonora, Kolinsky, Rausch, and Vignola were all former Mortgage Master employees) were set forth in employment agreements such as the one attached hereto.  This is significant because the agreement's definition of "Confidential Information" specifically excludes the identity and lists of customers that the loan officers either brought to loanDepot or developed while they were employed by loanDepot, and affirmatively grants the loan officers an entitlement to retain customer contact information after they leave loanDepot:

> 3.    Confidential Information.  Employee agrees that all non-public information related to Employer's business or Employer's customers, brokers, or loan investor contacts and sources, including but not limited to the Employer's business methods, product pricing, financial information, **identity and lists of customers (other than those brought to Employer by Employee, or developed by Employee while employed)** and brokers, loans, loan files and contents of same, that Employee learns of, is given access to, or develops, while employed by Employer (collectively, "Confidential Information") is and shall remain the without time limit the sole and exclusive property of Employer . . . .
>
> **Neither this Section 3 nor anything else in this Agreement shall prevent the Employee from contacting, at any point in the future, customers or prospects with whom he/she has had direct contact in the past or which he/she develops during the course of his/her employment by Employer. In addition, the Employee shall be entitled to retain contact information about such customers or prospects in hard copy and/or electronic form**.

(Emphasis added.)  loanDepot cannot escape the simple fact that, from the beginning of 2015 through the beginning of 2019, hundreds of former Mortgage Master loan officers who signed agreements with the above provision were operating under the express agreement that the identities and lists of customers were not confidential.  So, unlike the plaintiff in

---

[1] loanDepot actually acquired Mortgage Master, Inc. in or around late 2014/early 2015 so from 2012 through that time, Kolinsky was a Mortgage Master employee.

August 25, 2022
Page 3

*ExpressConnect*, loanDepot did not, in fact, take reasonable steps to keep its customer lists confidential. In fact, the opposite is true: loanDepot expressly told its loan officers that contact information for the customers they developed or brought to loanDepot was *not* confidential and that they were entitled to retain such information. Moreover, the fact that loanDepot tried to change course years later cannot undo the fact that it took no efforts to keep basic customer information or lists confidential. And while it surely will argue that the agreements attached to the Complaint changed its prior policy, loanDepot cannot unring that bell.

Like CrossCountry Mortgage, the Individual Defendants have no desire to use or misappropriate confidential information and are amenable to a consensual order stating that they will not use any confidential trade secrets. Under these circumstances, however, we believe that the parties should have the opportunity to negotiate the language of any such order to account for the issues discussed herein, so that the order is limited to information that is, in fact, confidential. The Chicago TRO was entered a mere three days after the Complaint there was filed. The defendants did not have the benefit of time to conduct an investigation into the merits of loanDepot's allegations that it kept customer contact information confidential at all relevant times. Here, those allegations are demonstrably false. Accordingly, it would not be appropriate for the Individual Defendants to agree to the entry of injunctive relief similar to that entered in Chicago.

Moreover, and in any event, as CrossCountry Mortgage states in its August 19 letter, the defendants in Chicago are taking steps to have that order modified. loanDepot misrepresents the scope of the Chicago TRO, minimizing it as protecting only "customer lists and information ***developed by loanDepot*** and kept in confidence." But this is demonstrably incorrect; the Chicago TRO goes well beyond that, enjoining the defendants from soliciting customers listed in or accessing "any document that was downloaded from or contains customer information that was downloaded from or contains customer information that was downloaded from loanDepot's systems or databases." By definition, such documents would contain customer information on loanDepot's systems or databases that the Chicago defendants brought with them to loanDepot, not just those customers that were developed while at loanDepot.

As CrossCountry's letter to the Court points out, loanDepot explicitly acknowledged at the August 16 hearing in Chicago that, when hiring loan originators, loanDepot onboards those loan originators' customer contacts onto their systems. Accordingly, it cannot now seriously contend that the Chicago TRO is limited to customer lists and information developed solely by loanDepot. To do so would ignore the plain language of the order, which clearly covers customer lists brought *to* loanDepot or, for that matter, developed by the defendants while at loanDepot. At best, loanDepot's misrepresentation that the Chicago TRO is limited to "customer lists and information developed by loanDepot and kept in confidence" is a tacit admission that the Chicago TRO goes too far, and that customer information brought to loanDepot should not be included in any agreed-upon injunction before this Court.

August 25, 2022
Page 4

We remain happy to further discuss this issue with the Court.

Sincerely,

Jeffrey L. Widman

cc:  Counsel of Record