**KIRKLAND & ELLIS LLP**
AND AFFILIATED PARTNERSHIPS

Josh Greenblatt, P.C.
To Call Writer Directly:
+1 212 446 4869
josh.greenblatt@kirkland.com

601 Lexington Avenue
New York, NY 10022
United States

+1 212 446 4800

www.kirkland.com

Facsimile:
+1 212 446 4900

September 6, 2022

**VIA ECF**

Hon. Lorna G. Schofield
U.S. District Court, Southern District of New York
40 Foley Square, Courtroom 1106
New York, New York 10007

Re: *loanDepot.com, LLC v. CrossCountry Mortgage, LLC, et al.*, Case No. 1:22-cv-05971-LGS

Dear Judge Schofield:

loanDepot submits this letter in response to CrossCountry's August 30, 2022 letter seeking permission to file a motion to dismiss. (ECF No. 75, "CC Letter"). As addressed below, CrossCountry's proposed motion does not raise colorable arguments for dismissal. Instead, both the timing and substance of CrossCountry's proposed motion strongly suggests that it is intended to distract from or scuttle loanDepot's forthcoming motion for preliminary injunction and accompanying expedited discovery. As the Court is by now well aware, loanDepot is constrained to seek such preliminary relief because CrossCountry has twice offered but then refused to agree to stipulated relief that would preserve the status quo during the pendency of this matter.

With respect to its proposed motion to dismiss, CrossCountry's letter does not deny that former loanDepot employees misappropriated vast quantities of proprietary loanDepot data. Nor does CrossCountry deny that those former employees are now employees at CrossCountry. Nor does CrossCountry deny that its *modus operandi*—as reflected in numerous lawsuits—is to steal and exploit competitors' confidential information and trade secrets when conducting employee raids. Nor does CrossCountry deny that it is ***actively converting*** former loanDepot customers whose loan information is contained in misappropriated data. Each of these facts is alleged in the Complaint and buttressed by a sworn declaration from a leading independent forensic examiner. Compl. ¶¶ 3, 7, 11, 126-169. None are denied by CrossCountry. Instead, CrossCountry offers a sort of "head-in the-sand" argument as purported grounds for its proposed motion, asserting that the Complaint is "devoid" of allegations that stolen information was actually brought to CrossCountry by employees poached from loanDepot who are now using such information to close loans with former loanDepot customers. This argument fails based on the allegations in the Complaint. Permitting CrossCountry to file what would be a futile motion to dismiss would only reward CrossCountry's efforts to distract the parties and Court from loanDepot's motion for preliminary injunction. At a minimum, loanDepot respectfully requests that any briefing on the motion to dismiss occur after the preliminary injunction and limited expedited discovery.

## KIRKLAND & ELLIS LLP

September 6, 2022
Page 2

### I.  THE COMPLAINT ALLEGES A PLAUSIBLE DTSA CLAIM.

On a Rule 12(b)(6) motion, the Court must "accept as true the facts alleged in the Complaint" and draw "all reasonable inferences in favor of the plaintiff." *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012). "To state a claim for trade secret misappropriation under the DTSA, a plaintiff must plausibly allege that (1) it possessed a trade secret, and (2) the defendant misappropriated the trade secret." *ExpertConnect, L.L.C. v. Fowler*, No. 18 CIV. 4828 (LGS), 2019 WL 3004161, at *3 (S.D.N.Y. July 10, 2019) (citing 18 U.S.C. § 1836(b)(1)). "Under the DTSA, a complaint must plead that the defendant misappropriated a trade secret (1) by acquiring a trade secret by improper means, or (2) disclosing or ***using the trade secret*** without consent." *Id.*[1] "Improper means" can involve "theft or breach or ***inducement*** of a breach of a duty to maintain secrecy, ***including contractual agreements not to disclose or disseminate information***." *Id.*

CrossCountry argues that loanDepot has failed to plead a DTSA claim because the Complaint is purportedly "devoid of any factual allegation that any such information subsequently came into CrossCountry's possession." (CC Letter at 1.) This argument relies on an illusory distinction between CrossCountry and the individual defendants who, as alleged in the Complaint, were induced to breach their obligations to loanDepot, are now working for CrossCountry, and are actively using loanDepot's stolen trade secrets to benefit all Defendants, including CrossCountry, by converting loanDepot customers. Compl. ¶¶ 7, 135, 143-46, 150-51, 164-65, 166-68. These allegations plainly support a DTSA claim against CrossCountry at the pleading stage. *See, e.g.*, *ExpertConnect* 2019 WL 3004161, at *6 (finding that plaintiff plausibly pleaded misappropriation under the DTSA "on the theory that Defendants ***disclosed and used*** [plaintiff's] trade secrets to solicit ExpertConnect clients without [p]laintiff's consent"); *Starwood Hotels Inc. v. Hilton Hotels Corp.*, No. 09 CIV. 3862 (SCR), 2010 WL 11591050, at *6 (S.D.N.Y. June 16, 2010) (denying motion to dismiss and finding actions by new employees of defendant employer were imputed to employer where plaintiff alleged they were "working in concert" to take plaintiff's confidential information).[2]

Because loanDepot has adequately alleged the use of loanDepot's trade secrets without consent, the Court need not consider CrossCountry's other argument that the Complaint supposedly does not allege that it "knew, or had reason to know, that any confidential information was acquired by improper means." (CC Letter at 2.) That argument is unavailing in any event: the Complaint expressly alleges that: (i) CrossCountry had specific knowledge of the Departed

---

[1]  Unless otherwise noted, all emphases have been added and all internal citations and quotations have been omitted.

[2]  CrossCountry advances an "obvious alternative explanation" of how it has closed loans with loanDepot customers whose confidential information was contained in misappropriated documents. (CC Letter at 2.) But loanDepot's Complaint "states a plausible version of events," and cannot properly be dismissed "merely because the court finds a different version more plausible." *Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 185 (2d Cir. 2012). This is especially true because the most plausible explanation here is that Defendants are using loanDepot's trade secrets. Discovery will confirm whose explanation is correct.

**KIRKLAND & ELLIS LLP**

September 6, 2022
Page 3

NY Employees' restrictive covenants, Compl. ¶ 123; (ii) CrossCountry's *modus operandi* is to misappropriate its competitors' confidential information as part of its wide-scale raiding practices, *id*. ¶¶ 3, 11 n.1l; (iii) CrossCountry intentionally recruited the top-performing loanDepot employees using loanDepot trade secrets stolen by the Departed NY Employees, *id*. ¶¶ 2, 10-12, 92, 119-20, 122, 136; and (iv) once again, CrossCountry is issuing loans to customers whose information was part of the stolen files, *id*. ¶¶ 7, 135, 143-46, 150-51, 164-15, 166-68.  This is more than sufficient to allege misappropriation by improper means.[3]

**II.      THE COMPLAINT ALLEGES PLAUSIBLE NON-DTSA CLAIMS.**

CrossCountry argues that loanDepot's tortious interference claims fail because, despite clear allegations to the contrary, they do not "plead intent and causation" and only plead "lawful motives." (CC Letter at 3.)  This ignores the Complaint's allegations that CrossCountry induced, assisted, and coordinated with the Departed NY Employees to steal and use loanDepot's trade secrets to take loanDepot's customers, goodwill, and employees.  Compl. ¶¶ 118-24.  The Complaint further alleges that the encouragement and assistance provided by CrossCountry included—at minimum—solicitation, bonuses, and indemnification for any litigation resulting from the departed employees' violations of their loanDepot agreements.  *Id*.  These allegations speak to CrossCountry's actions and intent, and plainly state tortious interference claims at the pleading stage.  *See ExpertConnect*, 2019 WL 3004161, at *9 (plaintiff stated a tortious interference claim by alleging that defendant "solicited a major client" through plaintiff's client lists, causing plaintiff to "lose the client").  Based on these allegations, loanDepot also "alleges that Defendants' interference was accomplished through wrongful means" because CrossCountry misappropriated "Plaintiff's trade secrets, an independent tort under New York law."  *Id.*

CrossCountry's putative motion likewise also asserts that loanDepot failed to plead CrossCountry's involvement in any breaches of duty by the individual Defendants. (CrossCountry Letter at 3.)  But loanDepot has alleged CrossCountry's "knowing participation in the breach," including because CrossCountry (i) "knew that [its conduct] breached the Departed NY Employees' and other loanDepot employees' duty of loyalty to loanDepot"; and (ii) rendered "substantial assistance" by, among other things, "soliciting loanDepot employees to leave loanDepot and join CrossCountry," and "planning a group departure designed to harm loanDepot." Compl. ¶¶ 220-22.  These allegations state a plausible aiding and abetting claim.  *See Trahan v. Lazar*, 457 F. Supp. 3d 323, 350 (S.D.N.Y. 2020).  Finally, contrary to CrossCountry's arguments, loanDepot's unfair competition claim is distinct from its misappropriation claim because it alleges that CrossCountry improperly solicited loanDepot's employees in addition to its trade secrets.[4]

---

[3]   In any event, knowledge may be alleged generally.  *See* Fed. R. Civ. P. 9(b).

[4]   As loanDepot explained in its August 31 Joint Letter (ECF No. 76), loanDepot intends to make a modest amendment to its Complaint to make clear that it is pursuing a damages claim against certain Departed NY Employees that recently made clear to loanDepot that they contest any effort to arbitrate.

## KIRKLAND & ELLIS LLP

September 6, 2022
Page 4

loanDepot appreciates the Court's attention to this matter.

Respectfully submitted,

*/s/ Josh Greenblatt*

Josh Greenblatt, P.C.
