

**Littler Mendelson, P.C.**
900 Third Avenue
New York, NY  10022.3298

Miguel A. Lopez
212.471.4482 direct
212.583.9600 main
malopez@littler.com

February 16, 2023

**VIA ELECTRONIC FILING**

Hon. Lorna G. Schofield
U.S. District Court, Southern District of N.Y.

**Re:** *loanDepot.com, LLC v. CrossCountry Mortgage, LLC, et al.*, **No. 1:22-cv-05971-LGS**

Dear Judge Schofield:

    This letter responds to CrossCountry's February 10, 2023 letter [Dkt. 231], consistent with Your Honor's Individual Rules.[1] CrossCountry is not entitled to the discovery it seeks, and loanDepot will oppose any motion to compel filed by CrossCountry for (at least) the following reasons:

- **RFP Nos. 23, 43, 44, 45, 46 and 47**

    CrossCountry mischaracterizes these requests. Contrary to CrossCountry's description of RFP Nos. 23 and 44 as being related to loanDepot's "efforts to target CrossCountry's business," these RFPs seek the production of any document "relating to any aspect of CrossCountry's business" and/or "referring to CrossCountry or [its CEO]." Virtually identical document requests were propounded by CrossCountry in the Chicago Lawsuit, and *voluntarily withdrawn* upon scrutiny from the Magistrate Judge, a fact absent from CrossCountry's letter. loanDepot will provide relevant excerpts from the hearing in the Chicago Lawsuit on this issue, upon request.

    The remainder of the RFPs transparently seek information related to CrossCountry's baseless abuse-of-process claim. Specifically, they seek documents about CrossCountry's purported theory that this lawsuit is some sort of improper retribution for CrossCountry having turned down a request by loanDepot to merge companies on the heels of the uncovering of a supposed "no document" loan scheme. Recognizing the Court's comments to the parties during the February 1, 2023 telephonic conference regarding the weakness of the claim, and burden on loanDepot to respond to discovery relating to same, CrossCountry repackages these RFPs as somehow relating to a "defense" that loanDepot's DTSA claim was brought in bad faith. But: (a) the RFPs do not even seek documents

---

[1] Section III(A)(1) requires that letters seeking a pre-motion conference be three pages or less, ***inclusive of exhibits***. CrossCountry's letter extends over forty-three pages.  To the extent the Court finds any of CrossCountry's requests to have merit (loanDepot believes none have merit), loanDepot respectfully requests leave to respond in kind, and submit information in excess of this 3-page letter. For example, loanDepot provided a detailed chart to CrossCountry explaining its positions with respect to each of the RFPs and Interrogatories discussed herein. loanDepot would also submit relevant experts from the discovery hearing in the Chicago Action relating to similar requests.

relating to any "ulterior motive" (instead, they broadly seek "all documents" related to a "proposed merger between loanDepot and CrossCountry," and documents relating to loanDepot's underwriting and closing of mortgage loans); (b) CrossCountry's "ulterior motive" theory is totally undermined by the evidence to date regarding the massive amount of documents misappropriated by Defendants; and (c) critically, any "bad faith" theory CrossCountry would pursue relating to loanDepot's DTSA claims must relate to loanDepot's claim itself, not far-fetched notions of corporate vendettas (as suggested here). *See, e.g., Insurent Agency Corp. v. Hanover Ins. Co.*, 2020 WL 1080774, at *4 (S.D.N.Y.) (Schofield, J.) (fee request for a supposed "bad faith" DTSA claim denied). CrossCountry's DTSA argument is a non-starter, and loanDepot will challenge these discovery requests as overbroad, unduly burdensome, and as seeking irrelevant information.

- **RFP Nos. 8 and 10; Interrogatory No. 4**

CrossCountry acknowledges, as it must, that loanDepot already agreed to produce certain documents requested in RFP Nos. 8 and 10. It nonetheless suggests that loanDepot's offered compromise is not good enough. loanDepot explained to CrossCountry the burdens associated with attempting to respond to CrossCountry's *44* document requests, as broadly written.[2] CrossCountry's attempt to compel production of additional documents in response to RFP Nos. 8 and 10 is an overreach. Specifically, RFP Nos. 8 and 10 relate to specific contracts that the Individual Defendants signed. loanDepot agreed to produce both the contracts and the cover/transmittal letters under which the contracts were sent to the Individual Defendants. Forcing loanDepot to also produce "all" company-wide communications regarding such contracts is not reasonable and unduly burdensome. Moreover, CrossCountry seeks documents and information (*see* Interrog. No. 4) relating to outdated agreements with Mortgage Master, a company loanDepot acquired years ago, which were replaced by the agreements that are at issue in this litigation. The extrinsic evidence that CrossCountry apparently seeks relating to Mortgage Master agreements is not relevant or proportional to the needs of this case.

- **RFP No. 14**

RFP No. 14 seeks documents irrelevant to the claims and defenses in this case. CrossCountry claims it needs this information in order to "assess[] what customer information belonged to the Individual Defendants prior to their employment with loanDepot" and "whether loanDepot's own practices support a finding that basic customer contact information constitutes a trade secret." Regarding the former, loanDepot already agreed to search for and produce any contact information uploaded by the Individual Defendants to loanDepot's CRM at the time of their hire (and for a period of 1 month thereafter). Regarding the latter, whether loanDepot used information uploaded by the Individual Defendants after they left loanDepot does not have anything to do with whether loanDepot treats "basic customer contact information" as a "trade secret" (it does). loanDepot has separately agreed to produce documents relating to its efforts to keep customer information secret, which addresses CrossCountry's purported need for this information. More generally, as Judge Chang observed in the Chicago Action: "The reality is that [CrossCountry is] arguing that the loan industry generally has not treated the customer contact compilation—this valuable compilation—as a trade secret before. But that does not mean that loanDepot was frozen from taking steps to protect the

---

[2] loanDepot has expended well over 1,000 hours searching for, collecting, reviewing, and responding to CrossCountry's 44 document requests. The time, effort, and expense continues to mount.

Page 3

information as a trade secret…". As noted above, loanDepot is producing documents relating to those "steps." This addresses CrossCountry's purported need for the information sought in RFP No. 14.

- **RFP Nos. 17, 20**

As CrossCountry's letter concedes, loanDepot agreed to produce financial data for 2019-2021 for the branches where the Individual Defendants worked. loanDepot will also produce data for 2022-2023. CrossCountry's ask for an additional 2 years of data, based purely on speculation and again tied to its baseless "abuse-of-process" claim, is not proportional to the needs of the case. loanDepot already agreed to produce data from 2019, prior to any "boom" cited by CrossCountry in its letter. This position is consistent with Your Honor's Individual Rules, which do not contemplate discovery going back more than 5 years. *See* § 11, A, 1.

- **RFP Nos. 37, 38, and 39**

The information that CrossCountry seeks in these RFPs is irrelevant to this litigation, and vastly overbroad. Although CrossCounty asserts that its broad request for "any and all documents" about headcount reductions, profit projections, or unrelated lawsuits will show that employees "left loanDepot for financial and business reasons" and not due to unlawful conduct by the Defendants, these RFPs *do not even mention the Defendants*. Further, we are not aware of any Individual Defendant claiming that they resigned *because of* the information sought in these RFPs (e.g., headcount reductions and unrelated lawsuits). In addition, reductions in headcount generally, whether *other* employees resigned, and unrelated lawsuits brought by *other* employees have nothing to do with the allegations in this case, which pertain to the *Individual Defendants*. Moreover, CrossCountry does not, and cannot, offer any legal support for the proposition that an employee's *fear* of inclusion in a reduction-in-force relieves that employee of his contractual obligations or immunizes him from liability under the DTSA or the common-law claims asserted here. Thus, the discovery sought in RFP Nos. 37-39 does not relate to any claim or defense in the case. Further, loanDepot has already agreed to search for and produce documents concerning the reasons asserted by the Individual Defendants for why they were resigning from loanDepot, which directly addresses the information CrossCountry claims to seek in connection with RFP Nos. 37-39. Simply put, RFP Nos. 37-39 are overbroad, unduly burdensome and seek irrelevant information. loanDepot will oppose a motion to compel relating to these RFPs.

- **RFP Nos. 16, 42**

RFPs 16 and 42—which seek "all documents" relating to compensation paid to "any loanDepot executive and/or employee" relating to the recruitment of the Individual Defendants, as well as "all non-privileged documents" which broadly relate to the "recruitment and hiring" of any loan officers from CrossCountry—are overbroad and seek irrelevant information. loanDepot's hiring and compensation practices are not at issue. Further, CrossCountry claims it needs this information in order to support a dubious defense that loanDepot engages in similar compensation practices tied to recruitment efforts. But, as loanDepot already told CrossCountry, to our knowledge, the Individual Defendants do not claim that they, or any other person, received compensation from loanDepot tied to the *recruitment* of any other Individual Defendant. We told CrossCountry that if they were aware of such information, to please provide us with details and we will investigate. CrossCountry's silence betrays these requests as nothing more than a "fishing expedition."

Page 4

Respectfully submitted,

*/s/ Miguel A. Lopez*

cc: All Counsel of Record (via ECF)

littler.com