IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| loanDepot.com, LLC,<br><br>       Plaintiff,<br><br>     v.<br><br>CROSSCOUNTRY MORTGAGE, LLC, STANISLAV ALESHIN, KEISHA ANTOINE, ANTHONY AYALA, SCOTT BONORA, FAHEEM HOSSAIN, STUART KOLINSKY, BARRY KOVEN, DANIEL KWIATKOWSKI, JAROSLAW KWIATKOWSKI, YUSHENG LIU, ROBERT LONDON, ENRICO MARTINO, DANIEL MEIDAN, SCOTT NADLER, GIOVANNI NARVAEZ, DAVID OSTROWSKY, EMELINE RAMOS, ROBERT RAUSH, RAFAEL REYES, MICHAEL SECOR, LLEWELLYN TEJADA, ILYA VAYSBERG, ERIKA VIGNOLA, and YAN ZHENG,<br><br>       Defendants. | Case No. 1:22-cv-05971-LGS<br><br>**ECF Case** |

**AMENDED ANSWER, AFFIRMATIVE DEFENSES, AND
COUNTERCLAIMS OF DEFENDANT CROSSCOUNTRY
MORTGAGE, LLC TO VERIFIED AMENDED COMPLAINT**

Defendant CrossCountry Mortgage, LLC ("CrossCountry"), by its undersigned attorneys, submits this Answer to the Verified Amended Complaint of plaintiff loanDepot.com, LLC ("loanDepot"). For its Answer to the Verified Amended Complaint, CrossCountry hereby states as follows:

The allegations in the unnumbered paragraph at the beginning of the Verified Amended Complaint are characterizations of the Verified Amended Complaint to which no response is required. To the extent a response is required, CrossCountry denies the allegations of the unnumbered paragraph at the beginning of the Verified Amended Complaint.

Further, CrossCountry omits, and provides no response to, the headings used by loanDepot, as those headings are not part of the body of the Verified Amended Complaint.  To the extent any response to the Verified Amended Complaint's headings is necessary, CrossCountry denies any and all allegations contained in any headings.

1.       CrossCountry denies the allegations in Paragraph 1 of the Verified Amended Complaint.

2.       CrossCountry denies the allegations in Paragraph 2 of the Verified Amended Complaint.  The allegations in Paragraph 2 of the Verified Amended Complaint are also characterizations of the Verified Amended Complaint, other proceedings, and a recitation of relief that loanDepot is seeking, to which no response is required.

3.       CrossCountry denies the allegations in Paragraph 3 of the Verified Amended Complaint that pertain to CrossCountry.  CrossCountry is without knowledge or information sufficient to form a belief as to the remaining allegations in Paragraph 3 of the Verified Amended Complaint, and on that basis, denies those allegations.

4.       CrossCountry admits and avers that it has lawfully recruited one or more former loanDepot employees in the New York metropolitan area in 2022.  CrossCountry denies the allegations of the fifth sentence of Paragraph 4 of the Verified Amended Complaint. CrossCountry is without knowledge or information sufficient to form a belief as to the remaining allegations in Paragraph 4 of the Verified Amended Complaint, and on that basis, denies those allegations.

5.       CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 5 of the Verified Amended Complaint, and on that basis, denies those allegations.  Further, the last sentence in Paragraph 5 of the Verified Amended Complaint states a legal conclusion to which a response is not required.

6.      CrossCountry denies the allegations in Paragraph 6 of the Verified Amended Complaint that pertain to CrossCountry.  Otherwise, CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 6 of the Verified Amended Complaint, and on that basis, denies those allegations.

7.      CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in the last two sentences of Paragraph 7 of the Verified Amended Complaint, and on that basis, denies those allegations.  CrossCountry denies all of the remaining allegations in Paragraph 7 of the Verified Amended Complaint.

8.      CrossCountry denies the allegations in Paragraph 8 of the Verified Amended Complaint.

9.      CrossCountry denies the allegations in Paragraph 9 of the Verified Amended Complaint that pertain to CrossCountry.  Otherwise, CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 9 of the Verified Amended Complaint, and on that basis, denies those allegations.  The last sentence of Paragraph 9 of the Verified Amended Complaint also purports to characterize, summarize, or quote an email; the contents of that email speak for itself and CrossCountry refers to it for a complete and accurate portrayal of its contents.

10.      CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 10 of the Verified Amended Complaint, and on that basis, denies those allegations.  Paragraph 10 of the Verified Amended Complaint further purports to characterize, summarize, or quote pleadings in this proceeding; the contents of the pleadings speak for themselves and CrossCountry refers to them for a complete and accurate portrayal of their contents.

11.     CrossCountry denies the allegations in Paragraph 11 of the Verified Amended Complaint.  The last sentence of Paragraph 11 of the Verified Amended Complaint also purports to characterize or summarize an unrelated proceeding; the allegations and events in that proceeding speak for themselves and CrossCountry refers to them for a complete and accurate portrayal of that proceeding.

12.     The allegations in Paragraph 12 (including footnote 1) of the Verified Amended Complaint are characterizations of other proceedings, the Verified Amended Complaint, this Action, and a recitation of relief that loanDepot may seek or is seeking, to which no response is required.  To the extent a response is required, CrossCountry denies the allegations in Paragraph 12 (including footnote 1) of the Verified Amended Complaint.

13.     CrossCountry denies the allegations in Paragraph 13 of the Verified Amended Complaint.

14.     CrossCountry denies the allegations in Paragraph 14 of the Verified Amended Complaint that pertain to CrossCountry.  Certain allegations in Paragraph 14 of the Verified Amended Complaint also purport to characterize certain letters and draft agreements; the contents of those materials speak for themselves and CrossCountry refers to them for a complete and accurate portrayal of their contents.  The remaining allegations in Paragraph 14 of the Verified Amended Complaint are characterizations of unrelated proceedings and court decisions, to which no response is required. To the extent a response is required, CrossCountry denies the remaining allegations in Paragraph 14 of the Verified Amended Complaint.

15.     CrossCountry denies the allegations in Paragraph 15 of the Verified Amended Complaint that pertain to CrossCountry.  Certain allegations in Paragraph 15 of the Verified Amended Complaint also purport to characterize certain letters and the TRO order in this

proceeding; the contents of those materials speak for themselves and CrossCountry refers to them for a complete and accurate portrayal of their contents. CrossCountry is without knowledge or information sufficient to form a belief as to the remaining allegations in Paragraph 15 of the Verified Amended Complaint, and on that basis, denies those allegations.

16.    CrossCountry denies the allegations in Paragraph 16 of the Verified Amended Complaint.

17.    The allegations in Paragraph 17 (including footnote 2) of the Verified Amended Complaint are characterizations of the Verified Amended Complaint and a recitation of relief that loanDepot is seeking, to which no response is required. To the extent a response is required, CrossCountry denies the allegations in Paragraph 17 (including footnote 2) of the Verified Amended Complaint.

18.    CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 18 of the Verified Amended Complaint, and on that basis, denies those allegations.

19.    CrossCountry admits and avers that it is a limited liability company organized under the laws of the State of Delaware, and that its headquarters and principal place of business are located in Brecksville, Ohio. CrossCountry further admits and avers that it is registered to do business in New York and maintains offices in New York.

20.    CrossCountry admits and avers that Mr. Aleshin is a current employee of CrossCountry. CrossCountry is without knowledge or information sufficient to form a belief as to the remaining allegations in Paragraph 20 of the Verified Amended Complaint, and on that basis, denies those allegations.

21.    CrossCountry admits and avers that Ms. Antoine is a current employee of

CrossCountry.  CrossCountry is without knowledge or information sufficient to form a belief as to the remaining allegations in Paragraph 21 of the Verified Amended Complaint, and on that basis, denies those allegations.

22.     CrossCountry admits and avers that Mr. Ayala is a current employee of CrossCountry.  CrossCountry is without knowledge or information sufficient to form a belief as to the remaining allegations in Paragraph 22 of the Verified Amended Complaint, and on that basis, denies those allegations.

23.     CrossCountry admits and avers that Mr. Bonora is a current employee of CrossCountry.  CrossCountry is without knowledge or information sufficient to form a belief as to the remaining allegations in Paragraph 23 of the Verified Amended Complaint, and on that basis, denies those allegations.

24.     CrossCountry admits and avers that Mr. Hossain is a current employee of CrossCountry.  CrossCountry is without knowledge or information sufficient to form a belief as to the remaining allegations in Paragraph 24 of the Verified Amended Complaint, and on that basis, denies those allegations.

25.     CrossCountry admits and avers that Mr. Kolinsky is a current employee of CrossCountry.  CrossCountry is without knowledge or information sufficient to form a belief as to the remaining allegations in Paragraph 25 of the Verified Amended Complaint, and on that basis, denies those allegations.

26.     CrossCountry admits and avers that Mr. Koven is a current employee of CrossCountry.  CrossCountry is without knowledge or information sufficient to form a belief as to the remaining allegations in Paragraph 26 of the Verified Amended Complaint, and on that basis, denies those allegations.

27.     CrossCountry admits and avers that Mr. Dan Kwiatkowski is a current employee of CrossCountry.  CrossCountry is without knowledge or information sufficient to form a belief as to the remaining allegations in Paragraph 27 of the Verified Amended Complaint, and on that basis, denies those allegations.

28.     CrossCountry admits and avers that Mr. Jarek Kwiatkowski is a current employee of CrossCountry.  CrossCountry is without knowledge or information sufficient to form a belief as to the remaining allegations in Paragraph 28 of the Verified Amended Complaint, and on that basis, denies those allegations.

29.     CrossCountry admits and avers that Mr. Liu is a current employee of CrossCountry. CrossCountry is without knowledge or information sufficient to form a belief as to the remaining allegations in Paragraph 29 of the Verified Amended Complaint, and on that basis, denies those allegations.

30.     CrossCountry admits and avers that Mr. London is a current employee of CrossCountry.  CrossCountry is without knowledge or information sufficient to form a belief as to the remaining allegations in Paragraph 30 of the Verified Amended Complaint, and on that basis, denies those allegations.

31.     CrossCountry admits and avers that Mr. Martino is a current employee of CrossCountry.  CrossCountry is without knowledge or information sufficient to form a belief as to the remaining allegations in Paragraph 31 of the Verified Amended Complaint, and on that basis, denies those allegations.

32.     CrossCountry admits and avers that Mr. Meidan is a current employee of CrossCountry.  CrossCountry is without knowledge or information sufficient to form a belief as to the remaining allegations in Paragraph 32 of the Verified Amended Complaint, and on that basis,

denies those allegations.

33.     CrossCountry admits and avers that Mr. Nadler is a current employee of CrossCountry.  CrossCountry is without knowledge or information sufficient to form a belief as to the remaining allegations in Paragraph 33 of the Verified Amended Complaint, and on that basis, denies those allegations.

34.     CrossCountry admits and avers that Mr. Narvaez is a current employee of CrossCountry.  CrossCountry is without knowledge or information sufficient to form a belief as to the remaining allegations in Paragraph 34 of the Verified Amended Complaint, and on that basis, denies those allegations.

35.     CrossCountry admits and avers that Mr. Ostrowsky is a current employee of CrossCountry.  CrossCountry is without knowledge or information sufficient to form a belief as to the remaining allegations in Paragraph 35 of the Verified Amended Complaint, and on that basis, denies those allegations.

36.     CrossCountry admits and avers that Ms. Ramos is a current employee of CrossCountry.  CrossCountry is without knowledge or information sufficient to form a belief as to the remaining allegations in Paragraph 36 of the Verified Amended Complaint, and on that basis, denies those allegations.

37.     CrossCountry admits and avers that Mr. Raush is a current employee of CrossCountry.  CrossCountry is without knowledge or information sufficient to form a belief as to the remaining allegations in Paragraph 37 of the Verified Amended Complaint, and on that basis, denies those allegations.

38.     CrossCountry admits and avers that Mr. Reyes is a current employee of CrossCountry.  CrossCountry is without knowledge or information sufficient to form a belief as to

the remaining allegations in Paragraph 38 of the Verified Amended Complaint, and on that basis, denies those allegations.

39.     CrossCountry admits and avers that Mr. Secor is a current employee of CrossCountry.  CrossCountry is without knowledge or information sufficient to form a belief as to the remaining allegations in Paragraph 39 of the Verified Amended Complaint, and on that basis, denies those allegations.

40.     CrossCountry admits and avers that Mr. Tejada is a current employee of CrossCountry.  CrossCountry is without knowledge or information sufficient to form a belief as to the remaining allegations in Paragraph 40 of the Verified Amended Complaint, and on that basis, denies those allegations.

41.     CrossCountry admits and avers that Mr. Vaysberg is a current employee of CrossCountry.  CrossCountry is without knowledge or information sufficient to form a belief as to the remaining allegations in Paragraph 41 of the Verified Amended Complaint, and on that basis, denies those allegations.

42.     CrossCountry admits and avers that Ms. Vignola is a current employee of CrossCountry.  CrossCountry is without knowledge or information sufficient to form a belief as to the remaining allegations in Paragraph 42 of the Verified Amended Complaint, and on that basis, denies those allegations.

43.     CrossCountry admits and avers that Ms. Zheng is a current employee of CrossCountry.  CrossCountry is without knowledge or information sufficient to form a belief as to the remaining allegations in Paragraph 43 of the Verified Amended Complaint, and on that basis, denies those allegations.

44.     The allegations in Paragraph 44 of the Verified Amended Complaint constitute

conclusions of law, to which no response is required.

45.     The allegations in Paragraph 45 of the Verified Amended Complaint constitute conclusions of law, to which no response is required.

46.     The allegations in Paragraph 46 of the Verified Amended Complaint constitute conclusions of law, to which no response is required.

47.     The allegations in Paragraph 47 of the Verified Amended Complaint constitute conclusions of law, to which no response is required.

48.     CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 48 of the Verified Amended Complaint, and on that basis, denies those allegations.

49.     CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 49 of the Verified Amended Complaint, and on that basis, denies those allegations.

50.     CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 50 of the Verified Amended Complaint, and on that basis, denies those allegations.

51.     CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 51 of the Verified Amended Complaint, and on that basis, denies those allegations.

52.     CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 52 of the Verified Amended Complaint, and on that basis, denies those allegations.

53.     CrossCountry is without knowledge or information sufficient to form a belief as to

the allegations in Paragraph 53 of the Verified Amended Complaint, and on that basis, denies those allegations.

54.     CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 54 of the Verified Amended Complaint, and on that basis, denies those allegations.

55.     CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 55 of the Verified Amended Complaint, and on that basis, denies those allegations.

56.     CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 56 of the Verified Amended Complaint, and on that basis, denies those allegations.

57.     CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 57 of the Verified Amended Complaint, and on that basis, denies those allegations.

58.     CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 58 of the Verified Amended Complaint, and on that basis, denies those allegations.

59.     CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 59 of the Verified Amended Complaint, and on that basis, denies those allegations.

60.     CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 60 of the Verified Amended Complaint, and on that basis, denies those allegations.

61.     CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 61 of the Verified Amended Complaint, and on that basis, denies those allegations.

62.     CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 62 of the Verified Amended Complaint, and on that basis, denies those allegations.

63.     CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 63 of the Verified Amended Complaint, and on that basis, denies those allegations.

64.     CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 64 of the Verified Amended Complaint, and on that basis, denies those allegations.

65.     CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 65 of the Verified Amended Complaint, and on that basis, denies those allegations.

66.     CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 66 of the Verified Amended Complaint, and on that basis, denies those allegations.

67.     CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 67 of the Verified Amended Complaint, and on that basis, denies those allegations.

68.     CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 68 of the Verified Amended Complaint, and on that basis, denies those

allegations.

69.     CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 69 of the Verified Amended Complaint, and on that basis, denies those allegations.

70.     CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 70 of the Verified Amended Complaint, and on that basis, denies those allegations.

71.     CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 71 of the Verified Amended Complaint, and on that basis, denies those allegations.

72.     CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 72 of the Verified Amended Complaint, and on that basis, denies those allegations.

73.     CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 73 of the Verified Amended Complaint, and on that basis, denies those allegations.

74.     CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 74 of the Verified Amended Complaint, and on that basis, denies those allegations.

75.     CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 75 of the Verified Amended Complaint, and on that basis, denies those allegations.

76.     CrossCountry is without knowledge or information sufficient to form a belief as to

the allegations in Paragraph 76 of the Verified Amended Complaint, and on that basis, denies those allegations.

77.     CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 77 of the Verified Amended Complaint, and on that basis, denies those allegations.

78.     CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 78 of the Verified Amended Complaint, and on that basis, denies those allegations.

79.     CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 79 of the Verified Amended Complaint, and on that basis, denies those allegations.

80.     CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 80 of the Verified Amended Complaint, and on that basis, denies those allegations.

81.     CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 81 of the Verified Amended Complaint, and on that basis, denies those allegations.

82.     CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 82 of the Verified Amended Complaint, and on that basis, denies those allegations.

83.     CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 83 of the Verified Amended Complaint, and on that basis, denies those allegations.

84.     CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 84 of the Verified Amended Complaint, and on that basis, denies those allegations.

85.     CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 85 of the Verified Amended Complaint, and on that basis, denies those allegations.

86.     CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 86 of the Verified Amended Complaint, and on that basis, denies those allegations.

87.     CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 87 of the Verified Amended Complaint, and on that basis, denies those allegations.

88.     CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 88 of the Verified Amended Complaint, and on that basis, denies those allegations.

89.     CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 89 of the Verified Amended Complaint, and on that basis, denies those allegations.

90.     CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 90 of the Verified Amended Complaint, and on that basis, denies those allegations.

91.     CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 91 of the Verified Amended Complaint, and on that basis, denies those

allegations.

92.     CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 92 of the Verified Amended Complaint, and on that basis, denies those allegations.

93.     CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 93 of the Verified Amended Complaint, and on that basis, denies those allegations.

94.     CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 94 of the Verified Amended Complaint, and on that basis, denies those allegations.

95.     CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 95 of the Verified Amended Complaint, and on that basis, denies those allegations.

96.     CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 96 of the Verified Amended Complaint, and on that basis, denies those allegations.

97.     CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 97 of the Verified Amended Complaint, and on that basis, denies those allegations.

98.     CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 98 of the Verified Amended Complaint, and on that basis, denies those allegations.

99.     CrossCountry is without knowledge or information sufficient to form a belief as to

the allegations in Paragraph 99 of the Verified Amended Complaint, and on that basis, denies those allegations.

100.     CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 100 of the Verified Amended Complaint, and on that basis, denies those allegations.

101.     CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 101 of the Verified Amended Complaint, and on that basis, denies those allegations.

102.     CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 102 of the Verified Amended Complaint, and on that basis, denies those allegations.

103.     CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 103 of the Verified Amended Complaint, and on that basis, denies those allegations.

104.     CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 104 of the Verified Amended Complaint, and on that basis, denies those allegations.

105.     CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 105 of the Verified Amended Complaint, and on that basis, denies those allegations.

106.     CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 106 of the Verified Amended Complaint, and on that basis, denies those allegations.

107.     CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 107 of the Verified Amended Complaint, and on that basis, denies those allegations.

108.     CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 108 of the Verified Amended Complaint, and on that basis, denies those allegations.

109.     CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 109 of the Verified Amended Complaint, and on that basis, denies those allegations.

110.     CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 110 of the Verified Amended Complaint, and on that basis, denies those allegations.

111.     CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 111 of the Verified Amended Complaint, and on that basis, denies those allegations.

112.     CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 112 of the Verified Amended Complaint, and on that basis, denies those allegations.

113.     CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 113 of the Verified Amended Complaint, and on that basis, denies those allegations.

114.     CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 114 of the Verified Amended Complaint, and on that basis, denies

those allegations.

115.    CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 115 of the Verified Amended Complaint, and on that basis, denies those allegations.

116.    CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 116 of the Verified Amended Complaint, and on that basis, denies those allegations.

117.    CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 117 of the Verified Amended Complaint, and on that basis, denies those allegations.

118.    CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 118 of the Verified Amended Complaint, and on that basis, denies those allegations.

119.    CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 119 of the Verified Amended Complaint, and on that basis, denies those allegations.

120.    CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 120 of the Verified Amended Complaint, and on that basis, denies those allegations.

121.    CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 121 of the Verified Amended Complaint, and on that basis, denies those allegations.

122.    CrossCountry is without knowledge or information sufficient to form a belief as to

the allegations in Paragraph 122 of the Verified Amended Complaint, and on that basis, denies those allegations.

123.    CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 123 of the Verified Amended Complaint, and on that basis, denies those allegations.

124.    CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 124 of the Verified Amended Complaint, and on that basis, denies those allegations.

125.    CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 125 of the Verified Amended Complaint, and on that basis, denies those allegations.  Paragraph 125 of the Verified Amended Complaint (including footnote 3) further purports to characterize, summarize, or quote documents attached to the Verified Amended Complaint as Exhibits A through X and Appendix I; the contents of those documents speak for themselves and CrossCountry refers to them for a complete and accurate portrayal of their contents.

126.    CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 126 of the Verified Amended Complaint, and on that basis, denies those allegations.  Paragraph 126 of the Verified Amended Complaint purports to characterize, summarize, or quote provisions of agreements attached to the Verified Amended Complaint as Exhibits A through X; the contents of those agreements speak for themselves and CrossCountry refers to them for a complete and accurate portrayal of their contents.

127.    CrossCountry denies the allegations in Paragraph 127 of the Verified Amended Complaint.

128.     Paragraph 128 of the Verified Amended Complaint (including footnote 4) purports to characterize, summarize, or quote documents attached to the Verified Amended Complaint as Exhibits A through X; the contents of those documents speak for themselves and CrossCountry refers to them for a complete and accurate portrayal of their contents.  To the extent any additional response is required, CrossCountry denies the allegations in Paragraph 128 (including footnote 4) of the Verified Amended Complaint.

129.     Paragraph 129 of the Verified Amended Complaint purports to characterize, summarize, or quote documents attached to the Verified Amended Complaint as Exhibits A through X; the contents of those documents speak for themselves and CrossCountry refers to them for a complete and accurate portrayal of their contents.  To the extent any additional response is required, CrossCountry denies the allegations in Paragraph 129 of the Verified Amended Complaint.

130.     Paragraph 130 of the Verified Amended Complaint purports to characterize, summarize, or quote documents attached to the Verified Amended Complaint as Exhibits A through X; the contents of those documents speak for themselves and CrossCountry refers to them for a complete and accurate portrayal of their contents.  To the extent any additional response is required, CrossCountry denies the allegations in Paragraph 130 of the Verified Amended Complaint.

131.     Paragraph 131 of the Verified Amended Complaint purports to characterize, summarize, or quote documents attached to the Verified Amended Complaint as Exhibits A through X; the contents of those documents speak for themselves and CrossCountry refers to them for a complete and accurate portrayal of their contents.  To the extent any additional response is required, CrossCountry denies the allegations in Paragraph 131 of the Verified Amended

Complaint.

132.     CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 132 of the Verified Amended Complaint, and on that basis, denies those allegations.   Paragraph 132 of the Verified Amended Complaint further purports to characterize or summarize a document attached to the Verified Amended Complaint as Exhibit A; the contents of that document speak for themselves and CrossCountry refers to them for a complete and accurate portrayal of their contents.

133.     Paragraph 133 of the Verified Amended Complaint purports to characterize, summarize, or quote documents attached to the Verified Amended Complaint as Exhibits A through X; the contents of those documents speak for themselves and CrossCountry refers to them for a complete and accurate portrayal of their contents.   To the extent any additional response is required, CrossCountry denies the allegations in Paragraph 133 of the Verified Amended Complaint.

134.     CrossCountry denies the allegations in Paragraph 134 of the Verified Amended Complaint.

135.     The allegations in the second sentence of Paragraph 135 of the Verified Amended Complaint constitute conclusions of law, to which no response is required.   To the extent any additional response is required, CrossCountry denies the allegations in the second sentence of Paragraph 135 of the Verified Amended Complaint.   CrossCountry is without knowledge or information sufficient to form a belief as to the remaining allegations in Paragraph 135 of the Verified Amended Complaint, and on that basis, denies those allegations.

136.     CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in the first sentence of Paragraph 136 of the Verified Amended Complaint, and on

that basis, denies those allegations.  CrossCountry denies the remaining allegations of Paragraph 136 of the Verified Amended Complaint.

137.     Paragraph 137 of the Verified Amended Complaint purports to characterize, summarize, or quote pleadings in unrelated proceedings; the contents of the pleadings speak for themselves and CrossCountry refers to them for a complete and accurate portrayal of their contents.

138.     Paragraph 138 of the Verified Amended Complaint purports to characterize, summarize, or quote a pleading in an unrelated proceeding; the contents of that pleading speak for themselves and CrossCountry refers to them for a complete and accurate portrayal of their contents.

139.     CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 139 of the Verified Amended Complaint, and on that basis, denies those allegations.

140.     CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 140 of the Verified Amended Complaint, and on that basis, denies those allegations.

141.     The allegations in Paragraph 141 of the Verified Amended Complaint constitute conclusions of law, to which no response is required.

142.     CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 142 of the Verified Amended Complaint, and on that basis, denies those allegations.

143.     CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 143 of the Verified Amended Complaint, and on that basis, denies

those allegations.

144.    CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 144 of the Verified Amended Complaint, and on that basis, denies those allegations.   Paragraph 144 of the Verified Amended Complaint further purports to characterize or summarize a document attached to the Verified Amended Complaint as Exhibit Y; the contents of that document speak for themselves and CrossCountry refers to them for a complete and accurate portrayal of their contents.

145.    CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 145 of the Verified Amended Complaint, and on that basis, denies those allegations.   Paragraph 145 of the Verified Amended Complaint further purports to characterize or summarize a document attached to the Verified Amended Complaint as Exhibit Y; the contents of that document speak for themselves and CrossCountry refers to them for a complete and accurate portrayal of their contents.

146.    CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 146 of the Verified Amended Complaint, and on that basis, denies those allegations.   Paragraph 146 of the Verified Amended Complaint further purports to characterize or summarize a document referred to as loanDepot's "Employee Handbook," which is not attached to the Verified Amended Complaint; the contents of that document speak for themselves and CrossCountry refers to them for a complete and accurate portrayal of their contents.

147.    CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 147 of the Verified Amended Complaint, and on that basis, denies those allegations.

148.    CrossCountry denies it "raided" loanDepot branches in Manhattan and San Diego. The remaining allegations in Paragraph 148 of the Verified Amended Complaint purport to characterize, summarize, or quote a text, which is not attached to the Verified Amended Complaint; the contents of the text speaks for itself and CrossCountry refers to it for a complete and accurate portrayal of their contents.

149.    The allegations in the second and third sentences of Paragraph 149 of the Verified Amended Complaint purport to characterize, summarize, or quote reported statements attributed to Mr. Leonhardt and a CrossCountry "funder"; the full contents of those statements speak for themselves and CrossCountry refers to them for a complete and accurate portrayal of their contents.  CrossCountry denies all of the remaining allegations of Paragraph 149 of the Verified Amended Complaint.

150.    CrossCountry denies the allegations in Paragraph 150 of the Verified Amended Complaint.

151.    CrossCountry denies the allegations in Paragraph 151 of the Verified Amended Complaint which pertain to CrossCountry.  CrossCountry is without knowledge or information sufficient to form a belief as to the remaining allegations in Paragraph 151 of the Verified Amended Complaint, and on that basis, denies those allegations.

152.    CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 152 of the Verified Amended Complaint, and on that basis, denies those allegations.

153.    Paragraph 153 of the Verified Amended Complaint purports to characterize, summarize, or quote NMLS Consumer Access and the CrossCountry website; the contents of those materials speak for themselves and CrossCountry refers to them for a complete and accurate

portrayal of their contents.

154.    CrossCountry denies the allegations in Paragraph 154 of the Verified Amended Complaint.

155.    CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in the first, second, fifth, and last sentences of Paragraph 155 of the Verified Amended Complaint, and on that basis, denies those allegations. The third and fourth sentences of Paragraph 155 of the Verified Amended Complaint purport to characterize, summarize, or quote a LinkedIn profile and the NMLS Consumer Access; the contents of those materials speak for themselves and CrossCountry refers to them for a complete and accurate portrayal of their contents. CrossCountry denies all of the remaining allegations in Paragraph 155 of the Verified Amended Complaint.

156.    CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in the first, second, third, and last sentences of Paragraph 156 of the Verified Amended Complaint, and on that basis, denies those allegations.  The fourth and fifth sentences of Paragraph 156 of the Verified Amended Complaint purport to characterize, summarize, or quote a LinkedIn profile and the NMLS Consumer Access; the contents of those materials speak for themselves and CrossCountry refers to them for a complete and accurate portrayal of their contents. CrossCountry denies all of the remaining allegations in Paragraph 156 of the Verified Amended Complaint.

157.    CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in the first, second, fourth, fifth, six, and last sentences of Paragraph 157 of the Verified Amended Complaint, and on that basis, denies those allegations.  The third and seventh sentences of Paragraph 157 of the Verified Amended Complaint purport to characterize,

summarize, or quote a LinkedIn profile and the NMLS Consumer Access; the contents of those materials speak for themselves and CrossCountry refers to them for a complete and accurate portrayal of their contents. CrossCountry denies all of the remaining allegations in Paragraph 157 of the Verified Amended Complaint.

158.    CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 158 of the Verified Amended Complaint, and on that basis, denies those allegations.

159.    CrossCountry admits and avers that Mr. Nadler joined a CrossCountry branch in Brooklyn in March 2022. CrossCountry is without knowledge or information sufficient to form a belief as to the remaining allegations in Paragraph 159 of the Verified Amended Complaint, and on that basis, denies those allegations.

160.    CrossCountry admits and avers that Scott Bonora, Rafael Reyes, Barry Koven, Jarek Kwiatkowski, and Dan Kwiatkowski joined a CrossCountry branch in Brooklyn in March 2022. CrossCountry is without knowledge or information sufficient to form a belief as to the remaining allegations in Paragraph 160 of the Verified Amended Complaint, and on that basis, denies those allegations.

161.    CrossCountry admits and avers that Robert London joined a CrossCountry branch in Brooklyn in March 2022. CrossCountry is without knowledge or information sufficient to form a belief as to the remaining allegations in Paragraph 161 of the Verified Amended Complaint, and on that basis, denies those allegations.

162.    CrossCountry admits and avers that Anthony Ayala joined a CrossCountry branch in Brooklyn in March 2022. CrossCountry is without knowledge or information sufficient to form a belief as to the remaining allegations in Paragraph 162 of the Verified Amended Complaint, and

on that basis, denies those allegations.

163.     CrossCountry admits and avers that Henry Greenberg joined a CrossCountry branch in Cranford, New Jersey in April 2022.  CrossCountry is without knowledge or information sufficient to form a belief as to the remaining allegations in Paragraph 163 of the Verified Amended Complaint, and on that basis, denies those allegations.

164.     CrossCountry admits and avers that Erika Vignola, Keisha Antoine, Alexandra Gong, and Alesia Khan joined a CrossCountry branch in or around April 2022.  CrossCountry further admits and avers that Emilio Sosa joined a CrossCountry branch, and that Patricia Zielenski also joined a CrossCountry branch but thereafter left CrossCountry in May 2022. CrossCountry is without knowledge or information sufficient to form a belief as to the remaining allegations in Paragraph 164 of the Verified Amended Complaint, and on that basis, denies those allegations.

165.     CrossCountry admits and avers that Enrico Martino joined a CrossCountry branch in Brooklyn in April 2022.  CrossCountry is without knowledge or information sufficient to form a belief as to the remaining allegations in Paragraph 165 of the Verified Amended Complaint, and on that basis, denies those allegations.

166.     CrossCountry admits and avers that Robert LePlanto joined a CrossCountry branch in Brooklyn in April 2022.  CrossCountry is without knowledge or information sufficient to form a belief as to the remaining allegations in Paragraph 166 of the Verified Amended Complaint, and on that basis, denies those allegations.

167.     CrossCountry admits and avers that Yan Zheng joined a CrossCountry branch in Brooklyn in May 2022.  CrossCountry is without knowledge or information sufficient to form a belief as to the remaining allegations in Paragraph 167 of the Verified Amended Complaint, and on that basis, denies those allegations.

168.    CrossCountry admits and avers that David Ostrowsky joined a CrossCountry branch in Brooklyn in May 2022.  CrossCountry is without knowledge or information sufficient to form a belief as to the remaining allegations in Paragraph 168 of the Verified Amended Complaint, and on that basis, denies those allegations.

169.    CrossCountry admits and avers that Stuart Kolinsky joined a CrossCountry branch in Purchase, New York in May 2022.  CrossCountry is without knowledge or information sufficient to form a belief as to the remaining allegations in Paragraph 169 of the Verified Amended Complaint, and on that basis, denies those allegations.

170.    CrossCountry admits and avers that Faheem Hossain joined a CrossCountry branch in Brooklyn in May 2022.  CrossCountry is without knowledge or information sufficient to form a belief as to the remaining allegations in Paragraph 170 of the Verified Amended Complaint, and on that basis, denies those allegations.

171.    CrossCountry admits and avers that Ilya Vaysberg joined a CrossCountry branch in Brooklyn in May 2022.  CrossCountry is without knowledge or information sufficient to form a belief as to the remaining allegations in Paragraph 171 of the Verified Amended Complaint, and on that basis, denies those allegations.

172.    CrossCountry admits and avers that Katara Bush joined a CrossCountry branch in May 2022.  CrossCountry is without knowledge or information sufficient to form a belief as to the remaining allegations in Paragraph 172 of the Verified Amended Complaint, and on that basis, denies those allegations.

173.    CrossCountry denies the allegations in Paragraph 173 of the Verified Amended Complaint. Paragraph 173 of the Verified Amended Complaint also purports to characterize, summarize, or quote a court decision; the contents of that decision speaks for itself and

CrossCountry refers to it for a complete and accurate portrayal of its contents.

174.   CrossCountry denies the allegations in Paragraph 174 of the Verified Amended Complaint.

175.   CrossCountry denies the allegations in Paragraph 175 of the Verified Amended Complaint.

176.   CrossCountry denies the allegations in Paragraph 176 of the Verified Amended Complaint.

177.   CrossCountry denies the allegations in Paragraph 177 of the Verified Amended Complaint that pertain to CrossCountry.  CrossCountry is without knowledge or information sufficient to form a belief as to the remaining allegations in Paragraph 177 of the Verified Amended Complaint, and on that basis, denies those allegations.

178.   CrossCountry denies the allegations in Paragraph 178 of the Verified Amended Complaint. CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in footnote 5 of the Verified Amended Complaint, and on that basis, denies those allegations.

179.   CrossCountry denies the allegations in the first sentence and the last two sentences of Paragraph 179 of the Verified Amended Complaint.  The remaining allegations in Paragraph 179 of the Verified Amended Complaint purport to characterize, summarize, or quote unrelated pleadings, attachments, and certain court decisions; the contents of those materials speak for themselves and CrossCountry refers to them for a complete and accurate portrayal of their contents.

180.   CrossCountry denies the allegations in Paragraph 180 of the Verified Amended Complaint.

181.     CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in the second, third, and last sentences of Paragraph 181 of the Verified Amended Complaint, and on that basis, denies those allegations.   CrossCountry denies the remaining allegations in Paragraph 181 of the Verified Amended Complaint.

182.     CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in the first sentence of Paragraph 182 of the Verified Amended Complaint, and on that basis, denies those allegations.   Paragraph 182 of the Verified Amended Complaint further purports to characterize, summarize, or quote a court opinion; the contents of that court opinion speaks for itself and CrossCountry refers to it for a complete and accurate portrayal of its contents. CrossCountry denies all of the remaining allegations in Paragraph 182 of the Verified Amended Complaint that pertain to CrossCountry.

183.     CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 183 of the Verified Amended Complaint, and on that basis, denies those allegations.   CrossCountry denies all of the remaining allegations in Paragraph 183 of the Verified Amended Complaint that pertain to CrossCountry.

184.     CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 184 of the Verified Amended Complaint, and on that basis, denies those allegations.

185.     CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 185 of the Verified Amended Complaint, and on that basis, denies those allegations.

186.     CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 186 of the Verified Amended Complaint, and on that basis, denies

those allegations.

187.     CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 187 of the Verified Amended Complaint, and on that basis, denies those allegations.

188.     CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 188 of the Verified Amended Complaint, and on that basis, denies those allegations.  Paragraph 188 of the Verified Amended Complaint further purports to characterize, summarize, or quote certain emails; the contents of that written correspondence speaks for itself and CrossCountry refers to it for a complete and accurate portrayal of its contents.

189.     CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 189 of the Verified Amended Complaint, and on that basis, denies those allegations.  Paragraph 189 of the Verified Amended Complaint further purports to characterize, summarize, or quote certain written correspondence; the contents of that written correspondence speaks for itself and CrossCountry refers to it for a complete and accurate portrayal of its contents.

190.     CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 190 of the Verified Amended Complaint, and on that basis, denies those allegations.  Paragraph 190 of the Verified Amended Complaint further purports to characterize, summarize, or quote certain pipeline reports, emails, and notes; the contents of those materials speak for themselves and CrossCountry refers to them for a complete and accurate portrayal of their contents.

191.     CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 191 (including footnote 6) of the Verified Amended Complaint, and

on that basis, denies those allegations.

192.    CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 192 of the Verified Amended Complaint, and on that basis, denies those allegations.   Paragraph 192 of the Verified Amended Complaint further purports to characterize, summarize, or quote certain written communications; the contents of those materials speak for themselves and CrossCountry refers to them for a complete and accurate portrayal of their contents.

193.    CrossCountry denies the allegations in Paragraph 193 of the Verified Amended Complaint that pertain to CrossCountry.   Otherwise, CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 193 of the Verified Amended Complaint, and on that basis, denies those allegations.  Paragraph 193 of the Verified Amended Complaint also purports to characterize, summarize, or quote an email; the contents of that email speak for itself and CrossCountry refers to it for a complete and accurate portrayal of its contents.

194.    CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 194 of the Verified Amended Complaint, and on that basis, denies those allegations.

195.    CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 195 of the Verified Amended Complaint, and on that basis, denies those allegations.   Paragraph 195 of the Verified Amended Complaint further purports to characterize, summarize, or quote certain emails; the contents of those materials speak for themselves and CrossCountry refers to them for a complete and accurate portrayal of their contents.

196.     CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 196 of the Verified Amended Complaint, and on that basis, denies those allegations.   Paragraph 196 of the Verified Amended Complaint further purports to characterize, summarize, or quote certain emails; the contents of those materials speak for themselves and CrossCountry refers to them for a complete and accurate portrayal of their contents.

197.     CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 197 of the Verified Amended Complaint, and on that basis, denies those allegations.   Paragraph 197 of the Verified Amended Complaint further purports to characterize, summarize, or quote certain emails; the contents of those materials speak for themselves and CrossCountry refers to them for a complete and accurate portrayal of their contents.

198.     CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 198 of the Verified Amended Complaint, and on that basis, denies those allegations.

199.     CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 195 of the Verified Amended Complaint, and on that basis, denies those allegations.   Paragraph 195 of the Verified Amended Complaint further purports to characterize, summarize, or quote certain emails, documents, and folders; the contents of those materials speak for themselves and CrossCountry refers to them for a complete and accurate portrayal of their contents.

200.     CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 200 of the Verified Amended Complaint, and on that basis, denies

those allegations.

201.    CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 201 of the Verified Amended Complaint, and on that basis, denies those allegations.   Paragraph 201 of the Verified Amended Complaint further purports to characterize, summarize, or quote certain folders and files; the contents of those materials speak for themselves and CrossCountry refers to them for a complete and accurate portrayal of their contents.

202.    CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in the last clause of the first sentence of Paragraph 202 of the Verified Amended Complaint, and on that basis, denies those allegations.  CrossCountry denies all of the remaining allegations in Paragraph 202 of the Verified Amended Complaint.

203.    CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 203 of the Verified Amended Complaint, and on that basis, denies those allegations.   Paragraph 203 of the Verified Amended Complaint further purports to characterize, summarize, or quote certain emails and files; the contents of those materials speak for themselves and CrossCountry refers to them for a complete and accurate portrayal of their contents.

204.    CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 204 of the Verified Amended Complaint, and on that basis, denies those allegations.   Paragraph 204 of the Verified Amended Complaint further purports to characterize, summarize, or quote certain emails and files; the contents of those materials speak for themselves and CrossCountry refers to them for a complete and accurate portrayal of their contents.

205.     CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 205 of the Verified Amended Complaint, and on that basis, denies those allegations.   Paragraph 205 of the Verified Amended Complaint further purports to characterize, summarize, or quote a certain email; the contents of that email speak for itself and CrossCountry refers to it for a complete and accurate portrayal of their contents.

206.     CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 206 of the Verified Amended Complaint, and on that basis, denies those allegations.

207.     CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 207 of the Verified Amended Complaint, and on that basis, denies those allegations.   Paragraph 207 of the Verified Amended Complaint further purports to characterize, summarize, or quote certain folders and files; the contents of those materials speak for themselves and CrossCountry refers to them for a complete and accurate portrayal of their contents.

208.     CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 208 of the Verified Amended Complaint, and on that basis, denies those allegations.   Paragraph 208 of the Verified Amended Complaint further purports to characterize, summarize, or quote certain emails; the contents of those emails speak for themselves and CrossCountry refers to them for a complete and accurate portrayal of their contents.

209.     CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 209 of the Verified Amended Complaint, and on that basis, denies those allegations.   Paragraph 209 of the Verified Amended Complaint further purports to characterize, summarize, or quote certain folders and files; the contents of those materials speak

for themselves and CrossCountry refers to them for a complete and accurate portrayal of their contents.

210.    CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 210 of the Verified Amended Complaint, and on that basis, denies those allegations.

211.    CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 211 of the Verified Amended Complaint, and on that basis, denies those allegations.   Paragraph 211 of the Verified Amended Complaint further purports to characterize, summarize, or quote certain folders and emails; the contents of those materials speak for themselves and CrossCountry refers to them for a complete and accurate portrayal of their contents.

212.    CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 212 of the Verified Amended Complaint, and on that basis, denies those allegations.

213.    CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 213 of the Verified Amended Complaint, and on that basis, denies those allegations.

214.    CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 214 of the Verified Amended Complaint, and on that basis, denies those allegations.

215.    CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 215 of the Verified Amended Complaint, and on that basis, denies those allegations.

216.     CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 216 of the Verified Amended Complaint, and on that basis, denies those allegations.

217.     CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 217 of the Verified Amended Complaint, and on that basis, denies those allegations.

218.     CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 218 of the Verified Amended Complaint, and on that basis, denies those allegations.

219.     CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 219 of the Verified Amended Complaint, and on that basis, denies those allegations.   Paragraph 219 of the Verified Amended Complaint further purports to characterize, summarize, or quote certain documents, folders and emails; the contents of those materials speak for themselves and CrossCountry refers to them for a complete and accurate portrayal of their contents.

220.     CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 220 of the Verified Amended Complaint, and on that basis, denies those allegations.

221.     CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 221 of the Verified Amended Complaint, and on that basis, denies those allegations.

222.     CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 222 of the Verified Amended Complaint, and on that basis, denies

those allegations.  Paragraph 222 of the Verified Amended Complaint further purports to characterize, summarize, or quote certain emails; the contents of those materials speak for themselves and CrossCountry refers to them for a complete and accurate portrayal of their contents.

223.    CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 223 of the Verified Amended Complaint, and on that basis, denies those allegations.

224.    CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 224 of the Verified Amended Complaint, and on that basis, denies those allegations.

225.    CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 225 of the Verified Amended Complaint, and on that basis, denies those allegations.

226.    CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 226 of the Verified Amended Complaint, and on that basis, denies those allegations.

227.    CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 227 of the Verified Amended Complaint, and on that basis, denies those allegations.

228.    CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 228 of the Verified Amended Complaint, and on that basis, denies those allegations.  Paragraph 228 of the Verified Amended Complaint further purports to characterize, summarize, or quote certain text messages; the contents of those materials speak for

themselves and CrossCountry refers to them for a complete and accurate portrayal of their contents.

229.    CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 229 of the Verified Amended Complaint, and on that basis, denies those allegations.   Paragraph 229 of the Verified Amended Complaint further purports to characterize, summarize, or quote certain emails; the contents of those materials speak for themselves and CrossCountry refers to them for a complete and accurate portrayal of their contents.

230.    CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 230 of the Verified Amended Complaint, and on that basis, denies those allegations.

231.    CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 231 of the Verified Amended Complaint, and on that basis, denies those allegations.

232.    CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 232 of the Verified Amended Complaint, and on that basis, denies those allegations.

233.    CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 233 of the Verified Amended Complaint, and on that basis, denies those allegations.

234.    CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 234 of the Verified Amended Complaint, and on that basis, denies those allegations.

235.    CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 235 of the Verified Amended Complaint, and on that basis, denies those allegations.

236.    CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 236 of the Verified Amended Complaint, and on that basis, denies those allegations.

237.    CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 237 of the Verified Amended Complaint, and on that basis, denies those allegations.

238.    CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 238 of the Verified Amended Complaint, and on that basis, denies those allegations.

239.    CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 239 of the Verified Amended Complaint, and on that basis, denies those allegations.

240.    CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 240 of the Verified Amended Complaint, and on that basis, denies those allegations.

241.    CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 241 of the Verified Amended Complaint, and on that basis, denies those allegations.

242.    CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 242 of the Verified Amended Complaint, and on that basis, denies

those allegations.

243.    CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 243 of the Verified Amended Complaint, and on that basis, denies those allegations.

244.    CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 244 of the Verified Amended Complaint, and on that basis, denies those allegations.

245.    CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 245 of the Verified Amended Complaint, and on that basis, denies those allegations.

246.    CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 246 of the Verified Amended Complaint, and on that basis, denies those allegations.

247.    CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 247 of the Verified Amended Complaint, and on that basis, denies those allegations.

248.    CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 248 of the Verified Amended Complaint, and on that basis, denies those allegations.

249.    CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 249 of the Verified Amended Complaint, and on that basis, denies those allegations.

250.    CrossCountry is without knowledge or information sufficient to form a belief as to

the allegations in Paragraph 250 of the Verified Amended Complaint, and on that basis, denies those allegations.

251.    CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 251 of the Verified Amended Complaint, and on that basis, denies those allegations.

252.    CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 252 of the Verified Amended Complaint, and on that basis, denies those allegations.

253.    CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 253 of the Verified Amended Complaint, and on that basis, denies those allegations.

254.    CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 254 of the Verified Amended Complaint, and on that basis, denies those allegations.

255.    CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 255 of the Verified Amended Complaint, and on that basis, denies those allegations.

256.    CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 256 of the Verified Amended Complaint, and on that basis, denies those allegations.

257.    CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 257 of the Verified Amended Complaint, and on that basis, denies those allegations.

258.    CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 258 of the Verified Amended Complaint, and on that basis, denies those allegations.

259.    CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 259 of the Verified Amended Complaint, and on that basis, denies those allegations.

260.    CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 260 of the Verified Amended Complaint, and on that basis, denies those allegations.

261.    CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 261 of the Verified Amended Complaint, and on that basis, denies those allegations.

262.    CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 262 of the Verified Amended Complaint, and on that basis, denies those allegations.

263.    CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 263 of the Verified Amended Complaint, and on that basis, denies those allegations.

264.    CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 264 of the Verified Amended Complaint, and on that basis, denies those allegations.

265.    CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 265 of the Verified Amended Complaint, and on that basis, denies

those allegations.

266.    CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 266 of the Verified Amended Complaint, and on that basis, denies those allegations.

267.    CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 267 of the Verified Amended Complaint, and on that basis, denies those allegations.

268.    CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 268 of the Verified Amended Complaint, and on that basis, denies those allegations.

269.    CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 269 of the Verified Amended Complaint, and on that basis, denies those allegations.

270.    CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 270 of the Verified Amended Complaint, and on that basis, denies those allegations.

271.    CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 271 of the Verified Amended Complaint, and on that basis, denies those allegations.

272.    CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 272 of the Verified Amended Complaint, and on that basis, denies those allegations.

273.    CrossCountry is without knowledge or information sufficient to form a belief as to

the allegations in Paragraph 273 of the Verified Amended Complaint, and on that basis, denies those allegations.

274.     CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 274 of the Verified Amended Complaint, and on that basis, denies those allegations.

275.     CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 275 of the Verified Amended Complaint, and on that basis, denies those allegations.

276.     CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 276 of the Verified Amended Complaint, and on that basis, denies those allegations.

277.     CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 277 of the Verified Amended Complaint, and on that basis, denies those allegations.

278.     CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 278 of the Verified Amended Complaint, and on that basis, denies those allegations.

279.     CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 279 of the Verified Amended Complaint, and on that basis, denies those allegations.

280.     CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 280 of the Verified Amended Complaint, and on that basis, denies those allegations.

281.    CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 281 of the Verified Amended Complaint, and on that basis, denies those allegations.

282.    CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 282 of the Verified Amended Complaint, and on that basis, denies those allegations.

283.    CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 283 of the Verified Amended Complaint, and on that basis, denies those allegations.

284.    CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 284 of the Verified Amended Complaint, and on that basis, denies those allegations.

285.    CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 285 of the Verified Amended Complaint, and on that basis, denies those allegations.

286.    CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 286 of the Verified Amended Complaint, and on that basis, denies those allegations.

287.    CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 287 of the Verified Amended Complaint, and on that basis, denies those allegations.

288.    CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 288 of the Verified Amended Complaint, and on that basis, denies

those allegations.

289.    CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 289 of the Verified Amended Complaint, and on that basis, denies those allegations.

290.    CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 290 of the Verified Amended Complaint, and on that basis, denies those allegations.

291.    CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 291 of the Verified Amended Complaint, and on that basis, denies those allegations.

292.    CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 292 of the Verified Amended Complaint, and on that basis, denies those allegations.

293.    CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 293 of the Verified Amended Complaint, and on that basis, denies those allegations.

294.    CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 294 of the Verified Amended Complaint, and on that basis, denies those allegations.

295.    CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 295 of the Verified Amended Complaint, and on that basis, denies those allegations.

296.    CrossCountry is without knowledge or information sufficient to form a belief as to

the allegations in Paragraph 296 of the Verified Amended Complaint, and on that basis, denies those allegations.

297.    CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 297 of the Verified Amended Complaint, and on that basis, denies those allegations.

298.    CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 298 of the Verified Amended Complaint, and on that basis, denies those allegations.

299.    CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 299 of the Verified Amended Complaint, and on that basis, denies those allegations.

300.    CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 300 of the Verified Amended Complaint, and on that basis, denies those allegations.

301.    CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 301 of the Verified Amended Complaint, and on that basis, denies those allegations.

302.    CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 302 of the Verified Amended Complaint, and on that basis, denies those allegations.

303.    CrossCountry denies the allegations in the first sentence of Paragraph 303 of the Verified Amended Complaint. The remaining allegations of Paragraph 303 of the Verified Amended Complaint purports to characterize, summarize, or quote an order in a different

proceeding; the contents of that order speak for themselves and CrossCountry refers to them for a complete and accurate portrayal of their contents.

304.    Paragraph 304 of the Verified Amended Complaint purports to characterize, summarize, or quote the TRO order in this proceeding; the contents of the TRO order speak for themselves and CrossCountry refers to them for a complete and accurate portrayal of their contents.

305.    CrossCountry denies the allegations in the first sentence of Paragraph 305 of the Verified Amended Complaint.  The remaining allegations of Paragraph 305 of the Verified Amended Complaint purport to characterize, summarize, or quote pleadings in unrelated proceedings; the contents of those pleadings speak for themselves and CrossCountry refers to them for a complete and accurate portrayal of their contents.

306.    CrossCountry incorporates by reference all preceding paragraphs as though fully stated herein.

307.    Paragraph 307 of the Verified Amended Complaint states a legal conclusion to which a response is not required. To the extent a response is required, CrossCountry denies the allegations in Paragraph 307 of the Verified Amended Complaint.

308.    Paragraph 308 of the Verified Amended Complaint purports to quote the Defend Trade Secrets Act; the contents of the Defend Trade Secrets Act speaks for itself and CrossCountry refers to it for a complete and accurate portrayal of its contents.

309.    Paragraph 309 of the Verified Amended Complaint purports to quote the Defend Trade Secrets Act; the contents of the Defend Trade Secrets Act speaks for itself and CrossCountry refers to it for a complete and accurate portrayal of its contents.

310.    Paragraph 310 of the Verified Amended Complaint purports to quote the Defend

Trade Secrets Act; the contents of the Defend Trade Secrets Act speaks for itself and CrossCountry refers to it for a complete and accurate portrayal of its contents.

311.     CrossCountry denies the allegations in Paragraph 311 of the Verified Amended Complaint.

312.     CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 312 of the Verified Amended Complaint, and on that basis, denies those allegations.

313.     CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 313 of the Verified Amended Complaint, and on that basis, denies those allegations.

314.     CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in the first sentence of Paragraph 314 of the Verified Amended Complaint, and on that basis, denies those allegations. CrossCountry denies the remaining allegations of Paragraph 314 of the Verified Amended Complaint.

315.     CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 315 of the Verified Amended Complaint, and on that basis, denies those allegations.

316.     CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 316 of the Verified Amended Complaint, and on that basis, denies those allegations.  Paragraph 316 of the Verified Amended Complaint further purports to characterize or summarize the Agreements and a document referred to as loanDepot's "Employee Handbook and Information Security Policy"; the contents of those materials speak for themselves and CrossCountry refers to them for a complete and accurate portrayal of their contents.

317.    CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 317 of the Verified Amended Complaint, and on that basis, denies those allegations.

318.    CrossCountry denies the allegations in Paragraph 318 of the Verified Amended Complaint.

319.    CrossCountry denies the allegations in Paragraph 319 of the Verified Amended Complaint.

320.    CrossCountry denies the allegations in Paragraph 320 of the Verified Amended Complaint.

321.    Paragraph 321 of the Verified Amended Complaint states a legal conclusion to which a response is not required.  To the extent a response is required, CrossCountry denies the allegations in Paragraph 321 of the Verified Amended Complaint.

322.    CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 322 of the Verified Amended Complaint, and on that basis, denies those allegations.  Paragraph 322 of the Verified Amended Complaint further purports to characterize, summarize, or quote Agreements attached to the Verified Amended Complaint as Exhibits A through X; the contents of those documents speak for themselves and CrossCountry refers to them for a complete and accurate portrayal of their contents.

323.    CrossCountry denies the allegations in Paragraph 323 of the Verified Amended Complaint.

324.    CrossCountry incorporates by reference all preceding paragraphs as though fully stated herein.

325.    The allegations in Paragraph 325 of the Verified Amended Complaint relate to a

Count that is not asserted against CrossCountry, and therefore no response is required. To the extent any response is required, the allegations in Paragraph 325 of the Verified Amended Complaint also states a legal conclusion to which a response is not required.

326.    The allegations in Paragraph 326 of the Verified Amended Complaint relate to a Count that is not asserted against CrossCountry, and therefore no response is required.  To the extent any response is required, Paragraph 326 of the Verified Amended Complaint purports to characterize, summarize, or quote documents attached to the Verified Amended Complaint as Exhibits A through X; the contents of those documents speak for themselves and CrossCountry refers to them for a complete and accurate portrayal of their contents.

327.    The allegations in Paragraph 327 of the Verified Amended Complaint relate to a Count that is not asserted against CrossCountry, and therefore no response is required.  To the extent any response is required, Paragraph 327 of the Verified Amended Complaint purports to characterize, summarize, or quote documents attached to the Verified Amended Complaint as Exhibits A through X; the contents of those documents speak for themselves and CrossCountry refers to them for a complete and accurate portrayal of their contents.

328.    The allegations in Paragraph 328 of the Verified Amended Complaint relate to a Count that is not asserted against CrossCountry, and therefore no response is required.  To the extent any response is required, Paragraph 328 of the Verified Amended Complaint purports to characterize, summarize, or quote documents attached to the Verified Amended Complaint as Exhibits A through X; the contents of those documents speak for themselves and CrossCountry refers to them for a complete and accurate portrayal of their contents.

329.    The allegations in Paragraph 329 of the Verified Amended Complaint relate to a Count that is not asserted against CrossCountry, and therefore no response is required.  To the

extent any response is required, CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 329 of the Verified Amended Complaint, and on that basis, denies those allegations.

330.    The allegations in Paragraph 330 of the Verified Amended Complaint relate to a Count that is not asserted against CrossCountry, and therefore no response is required.  To the extent any response is required, CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 330 of the Verified Amended Complaint, and on that basis, denies those allegations.

331.    The allegations in Paragraph 331 of the Verified Amended Complaint relate to a Count that is not asserted against CrossCountry, and therefore no response is required.  To the extent any response is required, CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 331 of the Verified Amended Complaint, and on that basis, denies those allegations.

332.    The allegations in Paragraph 332 of the Verified Amended Complaint relate to a Count that is not asserted against CrossCountry, and therefore no response is required.  To the extent any response is required, CrossCountry denies the allegations of Paragraph 332 of the Verified Amended Complaint.

333.    The allegations in Paragraph 333 of the Verified Amended Complaint relate to a Count that is not asserted against CrossCountry, and therefore no response is required.  To the extent any response is required, CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 333 of the Verified Amended Complaint, and on that basis, denies those allegations.  Paragraph 333 of the Verified Amended Complaint further purports to characterize, summarize, or quote Agreements attached to the Verified Amended

Complaint as Exhibits A through X; the contents of those documents speak for themselves and CrossCountry refers to them for a complete and accurate portrayal of their contents.

334.    CrossCountry incorporates by reference all preceding paragraphs as though fully stated herein.

335.    The allegations of Paragraph 335 of the Verified Amended Complaint state a legal conclusion to which a response is not required.  To the extent any response is required, CrossCountry denies the allegations in Paragraph 335 of the Verified Amended Complaint.

336.    CrossCountry denies the allegations in Paragraph 336 of the Verified Amended Complaint.

337.    CrossCountry denies the allegations in Paragraph 337 of the Verified Amended Complaint.

338.    CrossCountry denies the allegations in Paragraph 338 of the Verified Amended Complaint.

339.    CrossCountry denies the allegations in Paragraph 339 of the Verified Amended Complaint.

340.    CrossCountry incorporates by reference all preceding paragraphs as though fully stated herein.

341.    The allegations of Paragraph 341 of the Verified Amended Complaint state a legal conclusion to which a response is not required.  To the extent any response is required, CrossCountry denies the allegations in Paragraph 341 of the Verified Amended Complaint.

342.    CrossCountry denies the allegations in Paragraph 342 of the Verified Amended Complaint.

343.    CrossCountry denies the allegations in Paragraph 343 of the Verified Amended

Complaint.

344.    CrossCountry denies the allegations in Paragraph 344 of the Verified Amended Complaint.

345.    CrossCountry denies the allegations in Paragraph 345 of the Verified Amended Complaint.

346.    CrossCountry denies the allegations in Paragraph 346 of the Verified Amended Complaint.

347.    CrossCountry denies the allegations in Paragraph 347 of the Verified Amended Complaint.

348.    CrossCountry denies the allegations in Paragraph 348 of the Verified Amended Complaint.

349.    CrossCountry incorporates by reference all preceding paragraphs as though fully stated herein.

350.    The allegations in Paragraph 350 of the Verified Amended Complaint relate to a Count that is not asserted against CrossCountry, and therefore no response is required.  To the extent any response is required, the allegations of Paragraph 350 of the Verified Amended Complaint also state a legal conclusion to which a response is not required; and CrossCountry otherwise denies the allegations in Paragraph 350 of the Verified Amended Complaint.

351.    The allegations in Paragraph 351 of the Verified Amended Complaint relate to a Count that is not asserted against CrossCountry, and therefore no response is required.  To the extent any response is required, CrossCountry denies the allegations in Paragraph 351 of the Verified Amended Complaint.

352.    The allegations in Paragraph 352 of the Verified Amended Complaint relate to a

Count that is not asserted against CrossCountry, and therefore no response is required.  To the extent any response is required, CrossCountry denies the allegations in Paragraph 352 of the Verified Amended Complaint.

353.    CrossCountry incorporates by reference all preceding paragraphs as though fully stated herein.

354.    CrossCountry denies the allegations in Paragraph 354 of the Verified Amended Complaint.

355.    CrossCountry denies the allegations in Paragraph 355 of the Verified Amended Complaint.

356.    CrossCountry denies the allegations in Paragraph 356 of the Verified Amended Complaint.

357.    CrossCountry denies the allegations in Paragraph 357 of the Verified Amended Complaint.

358.    CrossCountry denies the allegations in Paragraph 358 of the Verified Amended Complaint.

359.    CrossCountry incorporates by reference all preceding paragraphs as though fully stated herein.

360.    CrossCountry is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 360 of the Verified Amended Complaint, and on that basis, denies those allegations.

361.    CrossCountry denies the allegations in Paragraph 361 of the Verified Amended Complaint.

362.    CrossCountry denies the allegations in Paragraph 362 of the Verified Amended

Complaint.

363.    CrossCountry denies the allegations in Paragraph 363 of the Verified Amended Complaint.

364.    CrossCountry denies the allegations in Paragraph 364 of the Verified Amended Complaint.

365.    CrossCountry denies the allegations in Paragraph 365 of the Verified Amended Complaint.

366.    CrossCountry denies the allegations in Paragraph 366 of the Verified Amended Complaint.

367.    CrossCountry denies any and all allegations in Paragraphs 1 through 366 of the Verified Amended Complaint, to the extent that such allegations are not expressly admitted above. CrossCountry denies each "WHEREFORE" paragraph.   CrossCountry further denies that loanDepot is entitled to any of the relief requested in any of the "WHEREFORE" paragraphs, or to any other relief whatsoever.

## AFFIRMATIVE DEFENSES

1.    The Verified Amended Complaint, and each and every claim stated therein, fails to state a claim upon which relief can be granted.

2.    loanDepot's claims against CrossCountry are barred, in whole or in part, by laches, equitable estoppel, waiver, or other related equitable doctrines.

3.    loanDepot's claims against CrossCountry are barred, in whole or in part, by the doctrines of unclean hands and/or *in pari delicto*.

4.     loanDepot's claims against CrossCountry relating to alleged trade secrets are barred on the ground that the information on which loanDepot bases its claims does not constitute trade secrets.

5.     loanDepot's claims against CrossCountry relating to alleged confidential information are barred on the ground that the information on which loanDepot bases its claims is publicly available.

6.     loanDepot's claims against CrossCountry relating to alleged proprietary information are barred on the ground that the information on which loanDepot bases its claims was brought to loanDepot by the individual defendants.

7.     loanDepot's claims against CrossCountry relating to loanDepot's restrictive employment covenants are barred on the ground that those covenants are unreasonably overbroad and unenforceable.

8.     To the extent loanDepot's claims against CrossCountry are based on alleged contracts between it and its former employees, loanDepot's claims are barred, in whole or in part, because loanDepot breached its contracts.  For example, prior to any of the alleged misconduct by the individual defendants in this case, loanDepot materially breached its employment agreements with one or more of the individual defendants by depriving them of substantial compensation they had been owed.  Among other things, loanDepot routinely—and falsely—designated bona fide self-generated loans as company-generated loans in order to pay a lower commission to the originating individual defendant.  That constituted a material contract breach, as loanDepot's loan officers were entitled to a higher commission for self-generated loans than for company-generated loans.

9.      To the extent loanDepot's claims against CrossCountry are based on alleged contracts between it and its former employees, loanDepot's claims are barred, in whole or in part, because the contracts are invalid and unenforceable, in whole or in part.

10.     loanDepot's claims against CrossCountry are barred because CrossCountry at all times lacked the requisite knowledge and/or intent to sustain those claims.

11.     loanDepot's claims against CrossCountry are barred, in whole or in part, by its failure to mitigate damages.

12.     Any injury that loanDepot allegedly may have suffered is a result of loanDepot's actions and/or independent actions taken by third parties, and therefore CrossCountry is not responsible.

13.     loanDepot's tortious-interference claims against CrossCountry are barred, in whole or in part, because of CrossCountry's privilege or justification as a competitor.

14.     loanDepot's claims for punitive damages against CrossCountry are barred on the grounds that CrossCountry's actions were not fraudulent, malicious, oppressive, wanton, or reckless, and CrossCountry acted in good faith.

15.     CrossCountry hereby incorporates into these affirmative defenses the statements in Paragraphs 1 through 63 of CrossCountry's Counterclaims as though fully stated herein.

16.     CrossCountry reserves the right to request a more definite statement.  CrossCountry further reserves the right to raise any additional defenses, counterclaims, cross-claims, and third-party claims not asserted herein of which it becomes aware through discovery or other investigation and will amend or modify its Answer accordingly.

WHEREFORE, having fully answered the allegations and Counts of the Verified Amended Complaint, CrossCountry denies that it is liable for any of the claims in the Verified Amended

Complaint, requests that the Court grant loanDepot no relief as against CrossCountry, and further requests that the Court dismiss all claims against CrossCountry in the Verified Amended Complaint with prejudice and award CrossCountry its costs and fees.

## COUNTERCLAIMS

CrossCountry Mortgage, LLC ("CrossCountry"), by its undersigned attorneys, alleges for its Counterclaim against loanDepot.com, LLC ("loanDepot"), upon knowledge as to itself and its conduct and upon information and belief as to all matters, as follows:

## NATURE OF THE ACTION

1.      Reading loanDepot's Verified Amended Complaint in this action, one could be excused for believing (wrongly) that CrossCountry—a successful, well-respected, and highly regarded national mortgage lender that originated over $50 billion in mortgage loans last year— has some vendetta against loanDepot for no apparent reason, and was willing to resort to an unlawful scheme to obtain loanDepot's confidential information in order to divert loanDepot's borrowers.  None of that squares with reality.  The truth is that all CrossCountry has done in this case is recruit loan officers in a highly mobile and highly competitive labor market for such employees, and where those employees did not want to continue working at loanDepot.  As set forth herein, not only was loanDepot apparently a toxic work environment, but by the time the former loanDepot employees in New York decided to leave loanDepot for CrossCountry, loanDepot's management had driven loanDepot's business into a steep tailspin.  loanDepot's leadership had been engaged in rampant illegal conduct to inflate the company's value in advance of its February 2021 IPO, after which its stock price collapsed from over $30 per share to around $4 by February 2022 (and continued to fall, reaching just above $1.50 by the time loanDepot filed this action).  By February 2022, loanDepot's mismanagement also resulted in steep declines in revenue and profit.  For example, loanDepot reported that its net income for the fourth quarter of

2021 had declined by 92%, and then reported a loss of $91 million in the first quarter of 2022. Since then, loanDepot fired its CEO in April 2022, announced another massive loss in the second quarter of 2022, and further announced plans to lay off nearly 5,000 employees this year (over 42% of its workforce).

2.      In that context, the former loanDepot employees at issue in this action, who CrossCountry recruited and hired in the New York area, were not somehow "induced" to leave loanDepot by CrossCountry, but were *already* looking for the exits.  CrossCountry never asked any of those individuals to solicit any of their fellow loanDepot employees.  Nor did CrossCountry ever want or ask for any of them to take any of loanDepot's confidential information with them to CrossCountry.  To the contrary, upon their employment at CrossCountry, each of those former loanDepot employees was instructed by CrossCountry—in writing—that they may not bring to, disclose, or use in connection with their CrossCountry employment any confidential information from any prior employer or other person or entity.  Further, each and every one of those former loanDepot employees acknowledged to CrossCountry in writing that they had not brought and would not bring, disclose, or use any such confidential information in connection with their employment at CrossCountry.  Beyond that, CrossCountry did not want, and has not asked, any former loanDepot employee to divert any loanDepot borrower to CrossCountry.  After receiving correspondence from loanDepot's counsel about the New York departures in the spring of 2022, CrossCountry further instructed former loanDepot employees that they may not use any confidential information that may have been taken from loanDepot and must honor their obligations by loanDepot.

3.      In the teeth of this reality, there is not a single factual allegation in loanDepot's Verified Amended Complaint about *anything* that CrossCountry did (as opposed to allegations

solely about what the former loanDepot employees might have done) and that loanDepot uses to support its claims against CrossCountry.  loanDepot's allegations as to CrossCountry's actions are intentionally vague and conclusory.  This is because, if it did allege any specific actions taken by CrossCountry (as it had attempted in pending litigation between the parties in federal court in Chicago), loanDepot's only argument would be that CrossCountry somehow did something wrong by accepting customer contact information from incoming employees for marketing purposes— an argument loanDepot knows full well is frivolous.  In fact, loanDepot is well aware that customer contact information does not constitute confidential information, and certainly is not considered by the mortgage industry to be confidential.  loanDepot knows this because loanDepot *itself* asks incoming employees to send their customer contacts to loanDepot for marketing purposes.  This is not a matter that is subject to dispute, but can be seen in loanDepot's own "Marketing Get Started Checklist!," which loanDepot provides to incoming employees:






**YOU ARE HIRED!**  Please send all of the following items to mretail_marketing@loandepot.com
- Database – Past/Current Clients, B2B/Referral Contacts, Excel preferred

(Exhibit 1 attached hereto (red box for emphasis).)[1]  Likewise, for **years**—until loanDepot required its employees to enter into amended employment contracts relatively recently—loanDepot's employment agreements with its employees, including former loanDepot employees involved in this matter, defined "Confidential Information" in a manner that excluded lists of customer information, even if developed while employed by loanDepot.  Indeed, those historical agreements specifically provided that its employees "shall be entitled to retain" and use "at any point in the future" the "contact information" for any "customers or prospects with whom [the employee] has had direct contact in the past or which he/she develops during the course of his/her employment by [loanDepot]."  (Exhibit 2, pp. 1-2, attached hereto.)[2]  loanDepot appears to have taken that provision from the employment agreements used by Mortgage Master, Inc., which loanDepot acquired in 2014.  (See Exhibit 3, pp. 1-2, attached hereto.)[3]  Even after that acquisition, loanDepot left in place those Mortgage Master employment agreements for hundreds of its employees, including individual defendants Bonora, Kolinsky, Rausch, and Vignola (who were all former Mortgage Master employees), for a period of approximately four years.  As these facts show, and as will be established in this litigation, loanDepot's claims against CrossCountry are founded on the objectively frivolous assertion that basic customer contact information is somehow confidential and protected.  For loanDepot to make that assertion—while simultaneously omitting that

---

[1] loanDepot's "Marketing Get Started Checklist!" was attached as an exhibit to the Answer and Counterclaims filed by the individual defendants in the related action that loanDepot commenced against CrossCountry earlier this year in federal court in Chicago.

[2] Exhibit 2 is an exemplar employment agreement that loanDepot entered into with one of the individual defendants, Barry Koven, in 2018.

[3] Exhibit 3 is an exemplar employment that Mortgage Master, Inc.—loanDepot's predecessor—had entered into with one of the individual defendants, Stuart Kolinsky, in 2012.

loanDepot asks its incoming employees to provide customer contact information—is not only a flagrant misrepresentation to the Court, but abject hypocrisy.[4]

4.       Why then, one might naturally ask, would loanDepot sue CrossCountry?   The answer lies not in CrossCountry's recruiting of certain employees in New York in early 2022, but rather in a pattern of flagrantly illegal conduct and unfair competition that loanDepot has been engaged in since as early as 2020, orchestrated by its then Chairman and CEO Anthony Hsieh (who just a few months ago was forced to step down as CEO and hand over daily operations to a successor).   The real story is that loanDepot unfairly competed with CrossCountry and engaged in blatant and widespread violations of federal lending laws, in order to inflate its value in advance of its February 2021 initial public offering; then on the heels of that IPO, loanDepot sought out CrossCountry's help to save loanDepot's severely declining business, by proposing a merger with CrossCountry in late March 2021; and after CrossCountry spurned that advance, loanDepot retaliated through frivolous litigation and further misconduct towards CrossCountry, including conduct of which it has accused CrossCountry and much worse.   loanDepot's lawsuit against CrossCountry is founded not on merit, but on malice.   Its goal is not only to chill competition in the labor market, by causing CrossCountry to fear recruiting from loanDepot at the risk of buying a lawsuit, and by causing its own employees to fear leaving, but also to seek retribution from CrossCountry for spurning loanDepot's merger proposal in March 2021 and to distract from the fact that, after years of misconduct, fostering a toxic work environment, and misrepresenting itself to its investors, loanDepot's chickens are coming home to roost.   loanDepot's business is rapidly

---

[4] In its Verified Amended Complaint, loanDepot tries to suggest that all customer information is confidential by citing to Complaints in other cases that CrossCountry filed in order to protect its confidential and proprietary information. (Am. Compl. ¶ 305.)   As is clear from the face of those Complaints, however, that the customer information at issue was not basic contact information (*e.g.*, name, email address, phone number), but rather sensitive non-public customer data (*e.g.*, social security numbers).

failing, its stock price has collapsed, its most successful loan officers are anxious to leave while thousands of others are being laid off, and it is facing an avalanche of lawsuits for its fraud and mismanagement.

5.      In fact, loanDepot publicly revealed just one day before filing this lawsuit that it is in the process of laying off **4,800** of its 11,300 employees—over 42% of its workforce—by year's end.[5]  Astonishingly, at the same time that it is laying off employees by the thousands—the employees it no longer wants to keep—loanDepot is wrongfully trying to use litigation to stifle competition for those select employees that it most wants to keep (*i.e.*, productive loan officers in lucrative markets like New York), who, unsurprisingly, just happen to be the very employees who are the most mobile and have been looking for lifeboats.  loanDepot's effort to invoke the judicial process not only to maliciously harm CrossCountry but to chill it from lawfully recruiting loanDepot employees who are naturally anxious to find greener pastures is patent abuse.

6.      CrossCountry needs this Court's help to remedy loanDepot's rampant, unlawful, and tortious misconduct, not only in abusing the judicial process, but in targeting CrossCountry using malicious, unfair, and anticompetitive tactics.  Ironically, throughout 2022, loanDepot worked to induce several CrossCountry loan officers in Chicago and Pennsylvania to misappropriate CrossCountry's trade secrets and confidential customer data, and to breach their legal and contractual duties to CrossCountry.  loanDepot has also set out to harm CrossCountry and many of the former loanDepot employees in New York at issue in this case by fraudulently adverting that those CrossCountry employees, including Scott Bonora, Faheem Hossain, and many others, are still loanDepot loan officers, many months after those individuals left loanDepot and

---

[5] *See* loanDepot, Inc. SEC Form 8-K, filed July 12, 2022 (reporting that loanDepot is "rightsiz[ing] staffing levels from approximately 11,300 at year-end 2021 to approximately 6,500 by year-end 2022").

joined CrossCountry.  In doing so, loanDepot has violated federal and New York law by illegally passing off the services of those employees as loanDepot services rather than CrossCountry services, causing confusion among CrossCountry's customers and seeking to exploit CrossCountry employees in order to attract borrowers to close a mortgage loan at loanDepot rather than CrossCountry.

7.      Most importantly, loanDepot has sought to harm CrossCountry by filing this baseless lawsuit against CrossCountry and misusing this Court's judicial process, including by obtaining an improperly overbroad temporary restraining order, pursuing an improperly broad preliminary injunction, and improperly burdening CrossCountry with discovery regarding its use of basic customer contact information, all with an ulterior motive to retaliate against CrossCountry for spurning loanDepot's merger proposal, to harm CrossCountry's business, and to wrongfully chill competition for loan officers.

8.      In these Counterclaims, CrossCountry seeks damages and injunctive relief against loanDepot for abuse of process, unfair competition, and violations of the federal Lanham Act and New York's Deceptive Practices Act.

## PARTIES

9.      Counterclaim Plaintiff CrossCountry is a Delaware limited liability company with its principal place of business in Brecksville, Ohio.

10.     Counterclaim Defendant loanDepot is a Delaware limited liability company with its principal place of business in Orange County, California.

## JURISDICTION AND VENUE

11.     This Court has federal-question jurisdiction over this action under 28 U.S.C. § 1331 because this action in part arises under the Lanham Act (15 U.S.C. § 1051 et seq.).  This Court

also has subject-matter jurisdiction because CrossCountry's action includes compulsory counterclaims as well as claims under the federal Lanham Act.

12.     This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over the remaining counts in the Counterclaim because they form part of the same case or controversy as the Lanham Act claim and/or CrossCountry's compulsory counterclaims.

13.     By filing its Complaint, loanDepot has consented to the personal jurisdiction of this Court.

14.     Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims in this lawsuit occurred in this judicial district.

## **FACTUAL ALLEGATIONS**

**A.     loanDepot's Scheme to Artificially Inflate Its Value Through Unlawful Conduct**

15.     In mid-2020, loanDepot was desperate to boost its financial performance in advance of its planned IPO.  To do so, its then-CEO, Mr. Hsieh, directed it to embark on a widespread illegal scheme to harm consumers and competitors.  The scheme was exposed and set forth in detail in September 2021 by loanDepot's former Chief Operating Officer, Tamara Richards, who was pushed out of the company and denied compensation after she resisted and objected to Mr. Hsieh's illegal conduct.  *See* Complaint, *Richards v. LoanDepot et al.*, Case No. 30-2021-01222421-CU-WT-CJC (Cal. Super. Ct., Orange County); *see also* Stacy Cowley, *Mortgage Lender Cut Corners in Echo of 2008 Crisis, Ex-Executive Says*, N.Y. Times, Sept. 22, 2021, *available at* https://www.nytimes.com/2021/09/22/business/loandepot-lawsuit-Anthony-Hsieh.html.

16.     The scheme originated because of Mr. Hsieh's apparent belief that loanDepot was not closing enough loans quickly enough, a problem that would impact loanDepot's valuation (and

Mr. Hsieh's wallet) in the upcoming IPO.  At an executive meeting on or about August 20, 2020, Mr. Hsieh complained that loanDepot's underperformance in loan closings was due to an overcautious and conservative underwriting process.  He therefore set out to inflate loanDepot's value and financial performance by directing the company to illegally close loans without documentation or proper underwriting.

17.     Underwriting is a crucial part of the process for home mortgage lenders in closing mortgage loans.  The process involves verifying income, assets, debt, and property details to ensure that the individual qualifies for a particular mortgage loan.  Underwriting also includes an investigation into credit history, appraisals, and reviewing other financial information such as debt-to-income ratios and verifying down payment amounts can be paid.

18.     Under the federal Dodd-Frank Act, mortgage lenders are required by law to complete a full underwriting process of each loan.  *See* 15 U.S.C. § 1639(a).  Under Dodd-Frank, a creditor such as loanDepot must make a reasonable and good faith determination based on verified and documented information that the consumer has the reasonable ability to repay the loan.  *Id.*  That determination must include consideration of a consumer's credit history, current income, and other financial information regarding the consumer.  *Id.*  The purpose of the Dodd-Frank Act was to protect consumers from taking out mortgages that are beyond their means to repay the loan.  Underwriting therefore ensures that that consumers are protected from taking out loans beyond their means.  This was a fundamental proposition arising from the 2008 housing and financial crisis.

19.     Despite the law and the lessons learned from that widespread crisis that harmed thousands of people, loanDepot's greed, and the dollar signs that Mr. Hsieh wanted to see out of

its IPO, led it to begin making loans without proper underwriting, and at times, no underwriting at all.

20.     According to Ms. Richards, on or about August 26, 2020 Mr. Hsieh directed loanDepot that "we must immediately close loans regardless of documentation!"

21.     Then in late October 2020, Mr. Hsieh again reiterated his directive to close loans without credit reports or documentation.   According to Ms. Richards, he even directed that loanDepot stop underwriting mortgage loans altogether, demanding that loanDepot "close all loans . . . close without credit reports . . . close without documentation . . . close all loans!"  Further, he stated that "we are setting records every month and have grown staffing and capacity, but it's not enough!  Trust our borrowers and close loans without documents!  I already paid taxes on these loans and the loans are already shown as revenue."

22.     To further this scheme, Mr. Hsieh also directed loanDepot executives to incentivize sales staff to close no-document loans by handing out $100 bills to overperforming sales associates.

23.     During this same time, Mr. Hsieh continued to order that executive staff should instruct their sales team to close no-document loans.  For example, he ordered that 200 processors should each close 100 loans per month, without documentation, to clear a perceived backlog.

24.     According to Ms. Richards, at an executive meeting on or about November 16, 2020, Mr. Hsieh gave a new directive, which loanDepot referred to as "Project Alpha," under which loanDepot identified over 8,000 loans to be closed without documentation.  loanDepot identified certain employees as individuals who would "process" these loans and would have "super authority."

25.     Selectively processing loans is a violation of federal law, including the Equal Credit Opportunity Act and the Fair Housing Act.

26.     Ms. Richards also described that, as part of Project Alpha, Mr. Hsieh directed loanDepot's Chief Credit Officer to ignore the thousands of loans that Mr. Hsieh had directed be processed, and not audit any of those loans.

27.     Mr. Hsieh and loanDepot's other top executives thereafter completed loanDepot's IPO in February 2021, transforming it into a public company and cashing in on the inflated valuation that Mr. Hsieh had generated through the improper underwriting of mortgage loans.

28.     At the time of loanDepot's IPO on February 11, 2021, its stock was priced at $14 per share.  Within a few days, on the back of loanDepot's inflated financial performance, its stock price rose to over $31.  As of last week, however—after loanDepot's illegal conduct came to light and after several quarters of severely declining performance—its stock had fallen to just around $1.50.  loanDepot is also currently facing a host of investor lawsuits that seek to hold the company accountable for its fraudulent conduct.  *See In re Loandepot, Inc. Stockholder Derivative Litigation*, Case No. 2:21-cv-08173-JLS-JDE (C.D. Cal.); *Lako v. Loandepot, Inc.*, Case No. 8:21-cv-01449-JLS-JDE (C.D. Cal.); *Skinner v. Hsieh et al.*, Case No. 2:22-cv-02087-JLS-JDE (C.D. Cal.); *Doban v. loanDepot, Inc. et al.*, Case No. 8:21-cv-01513-JLS-JDE (C.D. Cal.); *Johnson v. Hsieh et al.*, Case No. 8:22-cv-00757-JLS-JDE (C.D. Cal.); *In re LoanDepot, Inc. Derivative Litigation*, Case No. 1:22-cv-00320-CFC (D. Del.); *Porter v. Hsieh et al.*, Case No. 1:22-cv-00388-CFC (D. Del.).   The court overseeing the resulting securities-fraud lawsuit against loanDepot and Mr. Hsieh just recently denied their motion to dismiss.

**B.     loanDepot's March 2021 Proposal to Merge With CrossCountry**

29.     All the while that loanDepot was unlawfully inflating its financial performance through thousands of no-document loans, Mr. Hsieh and loanDepot's other executives knew that the company would not be able to sustain its ruse in the face of significant internal strife, serious operational problems, and a market heading towards higher inflation and higher mortgage rates. Therefore, as soon as its IPO closed in mid-February 2021, Mr. Hsieh and loanDepot desperately began looking for a white knight to save it from collapse.  They turned to CrossCountry.

30.     CrossCountry is a top nationwide retail mortgage lender, with more than 6,000 employees and licensed to originate mortgage loans in all 50 states.  Founded in 2003 by CEO Ronald J. Leonhardt, Jr., CrossCountry is one of the nation's fastest growing retail mortgage lenders, originating over $50 billion in mortgage loans in 2021.  And given CrossCountry's proven track record of success that has weathered a variety of market conditions (including the 2008 financial crisis and Great Recession), Mr. Hsieh knew that merging with CrossCountry could be the solution for the problem he had created at loanDepot.

31.     In mid-March 2021—just weeks after loanDepot's IPO—Ms. Hsieh had loanDepot's Chief Strategy Officer, Richard Calle, reach out to CrossCountry's CEO, Mr. Leonhardt, to set up a video Zoom call.  The Zoom call ultimately occurred on or about March 26, 2021, and was attended by loanDepot's highest executive officers—Mr. Hsieh, Mr. Calle, and loanDepot's CFO Patrick Flanagan—as well as Mr. Leonhardt.  During the call, Mr. Hsieh tried to sell Mr. Leonhardt on a proposal to merge loanDepot and CrossCountry.  In sum and substance, Mr. Hsieh told Mr. Leonhardt that a combined loanDepot and CrossCountry would be a behemoth that could be the dominant player in the mortgage industry.  And to sweeten the offer, Mr. Hsieh proposed that Mr. Leonhardt be the one to run the combined company.

32.     For his part, Mr. Leonhardt was not interested in a merger with loanDepot, and rejected Mr. Hsieh's proposal before any further details could be discussed.

33.     Mr. Hsieh evidently did not take CrossCountry's rejection well.  Left to face alone the consequences of his illegal scheme to fraudulently pump up loanDepot's value, and with no white knight to save loanDepot's declining business, Mr. Hsieh and loanDepot looked for any opportunity to retaliate against CrossCountry.

34.     One such opportunity arose just two months later, in May 2021, after CrossCountry hired seven loan officers who had fled loanDepot in California.  loanDepot sued CrossCountry and all seven loan officers in the Superior Court of San Diego, California (Case No. 37-2021-00022044-CU-BT-CTL), making allegations similar to those in this case.  During failed settlement negotiations in that case, loanDepot's General Counsel made clear to CrossCountry in November 2021 that he considers CrossCountry "an adversary to focus on."

35.     As further time has passed and loanDepot's business has continued to decline, more and more of loanDepot's most productive loan officers have been looking for the exits.  And it has not helped that loanDepot has by all accounts engaged in other unlawful practices regarding compensation of its loan officers, which are the subject of separate litigation brought against loanDepot by former loan officers in California in September 2021.  And, as noted, loanDepot has also begun laying off *thousands* of employees in order to mitigate its steep business declines and losses.  It is no surprise, therefore, that CrossCountry had additional opportunities to hire loanDepot employees.  It is by no means improper, let alone illegal, to recruit for loan officers in that highly competitive labor market.

36.     Nonetheless, CrossCountry's continued recruitment of loanDepot employees, on top of CrossCountry's rejection of loanDepot's merger proposal, has left loanDepot bitter, spurned, and anxious to find any possible way to harm CrossCountry.

**C.      loanDepot's Unlawful and Tortious Efforts to Harm, and Retaliate Against, CrossCountry Using CrossCountry Loan Officers**

37.     loanDepot found such a way when it recently hired a slew of CrossCountry loan officers, including Christopher Vondra, Kirstie Holmes, Chad Ulmer, and Randall Parks. loanDepot, with full knowledge of those individuals' legal and contractual obligations to CrossCountry as to confidentiality and non-solicitation of customers, induced and conspired with those employees, and potentially others, to steal CrossCountry's protected information and divert CrossCountry's customers.   Ironically, given loanDepot's allegations in its lawsuit against CrossCountry, loanDepot appears to have engaged in the very conduct of which it wrongly accuses CrossCountry—underscoring loanDepot's abuse of process and unclean hands.

38.     For example, Mr. Vondra left CrossCountry in late March 2022, and immediately began working for loanDepot.  An employee at CrossCountry named Meghan Grider, the Regional Operations Manager for a Chicago branch, was tipped off that Mr. Vondra likely stole twenty-one (21) separate customer files, including non-public confidential customer data.  After investigating the matter, CrossCountry was able to confirm that Mr. Vondra stole at least three separate loan files that belong to CrossCountry, for customers K.S., A.S., and J.F.[6]  CrossCountry discovered that after Mr. Vondra left CrossCountry and joined loanDepot, loanDepot conducted credit inquiries for those three borrowers, for whom Mr. Vondra had been processing a mortgage loan while at CrossCountry.  The only way that loanDepot could have conducted such credit inquiries

---

[6] For privacy reasons, CrossCountry is referring to these customers only by the initials of their first and last names.

was by using wrongfully obtained non-public customer data, such as social security numbers, that had been wrongfully misappropriated from CrossCountry.

39.      Ms. Holmes left CrossCountry in February 2022, and immediately began working for loanDepot.  Upon investigating Ms. Holmes's departure, CrossCountry discovered that, before leaving CrossCountry, Ms. Holmes forwarded multiple customer spreadsheets, lead sheets, and follow-up lists to her personal email address on or about February 12, 2022 and February 16, 2022. Among the documents she stole were spreadsheets titled "Follow Ups.xlsx," "305090 1 year list.xlsx," "Copy of Lead Tracker Jan 2022 -1.xls, "Copy of Lead Tracker Jan 2022 -2.xls," and "Copy of Lead Tracker Feb 2022.xls."  They contain non-public customer data for over fifty CrossCountry customers she had worked with, including the loan amount, loan type, and interest rate for each customer's CrossCountry loan, as well as the names of nearly fifty "leads" she obtained from CrossCountry—*i.e.*, borrowers interested in a mortgage loan—including C.A., A.B., M.B., S.B., W.B., L.C., R.C., T.C., D.D., P.D., C.F., J.F., D.G., J.G., C.H., D.H., M.H., V.J., J.K., K.K., L.L., M.L., J.M., S.M., B.N., C.P. J.P., N.P., T.P., V.Pa., V.Pe., K.R., M.R., A.S., B.S., F.S., L.S., F.T., M.V., Y.V., A.W., G.W., K.W., and R.W.  loanDepot has used that misappropriated information to divert and wrongfully process mortgage loans for CrossCountry customers.

40.      Mr. Ulmer left CrossCountry in late April 2022, and immediately became employed by loanDepot.  Upon investigating Mr. Ulmer's departure, CrossCountry discovered that, in the days immediately prior to his resignation from CrossCountry, he sent to himself, from his CrossCountry email address, approximately twenty-five emails.  He sent those emails not only to his personal gmail.com email account, but also his new loanDepot.com email account.  They included emails with CrossCountry customer leads that Mr. Ulmer sent to himself, such as A.C.,

D.L., and L.M.  They also included email correspondence that Mr. Ulmer had with borrowers and potential borrowers who he was working with while at CrossCountry, so that he could divert those customers to loanDepot, including E.B., S.B., M.F., A.H., P.K., A.M., J.M., M.M-J., N.M., M.N., V.M., D.P., R.Q., D.R., G.S., E.V., K.W., and M.W.  Some of those emails contained the borrowers' non-public information, such as credit scores.  He also sent himself underwriting reports that CrossCountry conducted on potential customers, which included credit scores and income information.  And he emailed himself a spreadsheet titled "Copy of Complete Chad's Pipeline Report.xlsx," containing the names of the CrossCountry borrowers in his pipeline, including the loan amount and loan type for each borrower.  Ironically, given loanDepot's allegations in its Verified Amended Complaint, Mr. Ulmer also emailed to himself spreadsheets with the contact information for over 1,500 customers and referral sources, in spreadsheets titled "New Chad Ulmer Database.csv," "New Chad Ulmer Database (pt2).csv," "Chad Ulmer Database (contacts).xlsx," and "Chad Ulmer Database (contacts) 17 Sep.xlsx."

41.    The evidence shows that Mr. Ulmer had also begun working for loanDepot long before he actually resigned from CrossCountry in late April 2022.  For example, on February 23, 2022, Mr. Ulmer wrote an email to loanDepot's Business Development Director, Steve Rennie, at the email address srennie@loandepot.com, which forwarded information about a customer (N.M.) who was asking CrossCountry for a cash-out refinancing mortgage loan.  Mr. Ulmer specifically asked loanDepot to provide him a proposed interest rate for that customer:

> Yo!  Can you get me a rate from you all on this by chance?
>
> 60% or less high fico – low dti – high reserves cash out refinance.
>
> Primary and NOO price.  Conforming at $647,000 and best price at $650k (our jumbo priced better with 35% dti and 24 months reserves)
>
> Appreciate.

Remarkably, Mr. Rennie responded about an hour later, offering proposed loan terms and interest rates for various types of mortgage loans.  And Mr. Ulmer then replied that he would get back to loanDepot.

42.     Mr. Ulmer also solicited his sales assistant, Manrique Pena, to leave CrossCountry and join loanDepot.  Mr. Pena then did in fact join loanDepot with Mr. Ulmer in late April 2022, but not before emailing himself—to both his personal gmail.com email and his loanDepot.com email account—documents regarding CrossCountry borrowers, including CrossCountry pre-approval letters and underwriting reports that contained non-public information such as credit scores and borrower income.

43.     Again, loanDepot's purpose in doing all of this was to intentionally harm CrossCountry, and is all probative of its malice towards CrossCountry, its unclean hands, its ulterior motive in pursuing this litigation against CrossCountry, and its abuse of this Court's judicial process.

**D.     loanDepot's Wrongful Use of the Names and Likenesses of CrossCountry Employees**

44.     loanDepot has also directed its misconduct at loan officers who recently left loanDepot for CrossCountry, in retaliation for their decision to leave and in order to wrongfully divert business from CrossCountry.  Specifically, loanDepot has deployed a scheme to illegally generate business using the names and likenesses of multiple former loanDepot employees who recently joined CrossCountry in the New York area and who are directly at issue in loanDepot's claims in this lawsuit.  loanDepot's scheme targeted Scott Bonora, Faheem Hossain, and several other former loanDepot loan officers in Brooklyn who resigned from loanDepot to join CrossCountry.  loanDepot engaged in that misconduct toward CrossCountry and those individuals

in order to gain a business advantage by falsely portraying those individuals as loanDepot employees many months after they had left.

45.     Scott Bonora and Faheem Hossain each worked at loanDepot as a loan officer in Brooklyn, until they resigned in March and May 2022, respectively.  They each later became a loan officer at CrossCountry, also in Brooklyn.  Nonetheless, long after they had left loanDepot and had begun working at CrossCountry, loanDepot sent out marketing emails from each of Mr. Bonora's and Mr. Hossain's loanDepot email address directly to potential borrowers.  For example, on or about May 16, 2022, loanDepot sent out a blast marketing email to all of Mr. Bonora's contacts, using Mr. Bonora's name, likeness, and loanDepot email address, which deliberately gave the false impression that Mr. Bonora was still employed at loanDepot in an effort to market loanDepot's products.  That same day, Mr. Bonora's counsel sent a letter to loanDepot's counsel demanding that loanDepot cease and desist from sending out emails falsely portraying Mr. Bonora and other members of his branch in Brooklyn as loanDepot employees.  loanDepot persisted anyway.

46.     A few months later, on or about July 3, 2022, loanDepot sent out another blast marketing email, this time from the loanDepot email address of Mr. Hossain.  That email, which loanDepot sent to all of Mr. Hossain's contacts in loanDepot's system, bore the subject line "Cue the Fireworks!," and wished Mr. Hossain's contacts a Happy Fourth of July.  That email included Mr. Hossain's name and likeness, and falsely portrayed him as a current loanDepot loan officer in order to market loanDepot's products.

47.     These false emails were not merely promotional, but included a link for the recipient to click, which would take them to a loanDepot website at which they could begin an application for a loanDepot mortgage loan.  loanDepot's goal was to misleadingly use the name and likeness of its former employees, wrongly exploiting the commercial value of those former

employees, to divert business from their new employer. It was falsely passing off the services of Mr. Bonora and Mr. Hossain as the services of loanDepot rather than services of CrossCountry.

48. What is more, loanDepot's emails were knowingly and intentionally false, and loanDepot had no legitimate reason for sending them. By the time loanDepot sent those false emails, loanDepot had obviously known for months that Mr. Bonora and Mr. Hossain no longer worked for loanDepot and had joined CrossCountry. Indeed, loanDepot had already sent them cease-and-desist letters and threatened to sue them. Worse yet, loanDepot sent out its false email regarding Mr. Hossain in July 2022, months after receiving a cease-and-desist letter from Mr. Bonora's counsel about the false and misleading emails that loanDepot had sent in May 2022 falsely using the names and likenesses of Mr. Bonora and other former loanDepot employees in CrossCountry's Brooklyn branch.

49. Based on loanDepot's conduct to date, CrossCountry believes that loanDepot used the same types of false emails to target many other former loanDepot employees in New York. The full extent of that misconduct—including how many other new CrossCountry employees were targeted—is information that is exclusively within loanDepot's possession.

50. What is clear is that loanDepot's false use of Mr. Bonora's and Mr. Hossain's identities were not isolated violations. loanDepot had already been caught sending the same type of false emails in March 2022, targeting former loanDepot employees who had joined CrossCountry in Chicago. The only rational explanation for loanDepot's persistent course of false and misleading conduct, notwithstanding multiple warnings, is that loanDepot was knowingly targeting former loanDepot employees who had joined CrossCountry. loanDepot had long crossed the line from any plausible error into outright deliberate illegality.

51.     In any event, loanDepot's false emails intentionally confused consumers regarding the products and services of CrossCountry, and were used by loanDepot to attract borrowers to close a mortgage loan with loanDepot when those borrowers otherwise would have closed a loan with CrossCountry.

**E.     loanDepot's Abuse of Process in New York to Harm CrossCountry**

52.     As discussed, loanDepot initiated this lawsuit against CrossCountry, and has misused this Court's judicial process, with the ulterior motive and purpose to injure CrossCountry's business and to harass and embarrass CrossCountry, in retribution for CrossCountry's rejection of loanDepot's merger proposal in March 2021, to chill the labor market, to improperly cause CrossCountry to refrain from lawfully recruiting from loanDepot, and to cause loanDepot's own loan officers to refrain from leaving loanDepot.  (On information and belief, loanDepot's former CEO Mr. Hsieh, even went so far as threaten, during an internal, nationwide call with loanDepot's branch managers in late 2021/early 2022, that loanDepot would sue whoever might resign from loanDepot.)

53.     loanDepot has continued to abuse the judicial process of this Court.  For one thing, loanDepot has obtained an improperly broad TRO in this action that prohibits CrossCountry from using basic customer contact information taken from loanDepot (ECF No. 91), even though the evidence in this case will make clear that such information is not a protected trade secret, and loanDepot did not treat such information as a trade secret.  loanDepot's wrongful use of this Court's process to obtain an improperly broad TRO has, among other things, prevented CrossCountry from using lawfully acquired customer contact information to generate business for itself and has wrongfully chilled CrossCountry from lawfully recruiting and hiring employees from loanDepot in the highly competitive labor environment in the mortgage industry, thereby depriving

CrossCountry of revenue-generating employees.  In doing so, loanDepot has improperly used this Court's process to unlawfully interfere with CrossCountry's person and property.

54.     loanDepot also improperly sought, on September 29, 2022, to have the TRO in this case converted into a preliminary injunction (*see* ECF No. 99), in blatant disregard of CrossCountry's rights under Fed. R. Civ. P. 65 and in a thinly-veiled effort to escape the very expedited discovery that loanDepot invited and that will establish the utter lack of merit in loanDepot's improper efforts to restrain the use of basic customer contact information.  And loanDepot is now improperly seeking a preliminary injunction that is even broader than the TRO, forcing CrossCountry into unwarranted expedited discovery.  loanDepot's post-filing conduct is patently abusive.  Beyond the resulting injuries to CrossCountry's business, loanDepot's improper use of this Court's process has caused, and will cause, CrossCountry to incur substantial legal expenses.

55.     loanDepot's claims against CrossCountry, and requests for overly broad temporary and preliminary injunctive relief, are founded entirely on conclusory allegations in an attempt to avoid the facts, of which loanDepot was well aware long before bringing this lawsuit.  loanDepot knows full well that the foundation for its conclusory allegations—that basic customer contact information is somehow a protected trade secret—is frivolous.  As noted, loanDepot does exactly the same thing.  Upon hiring loan officers from other employers, it sends them a marketing "Checklist" that explicitly instructs the incoming loan officers to send loanDepot an excel spreadsheet "Database" of "Past/Current Clients" and "B2B/Referral Contacts."  (*See* Exhibit 1 hereto.)

56.     Shockingly, given the allegations in loanDepot's Verified Amended Complaint, it has also been revealed that loanDepot had agreements with its employees—including Barry Koven

and other individual defendants in this action—in effect for at least some period of their employment that defined "Confidential Information" in a manner that specifically excludes customers' identities and contact lists, and affirmatively acknowledges their right to retain their customer contact information after they leave loanDepot:

> 3.    <u>Confidential Information.</u>  Employee agrees that all non-public information related to Employer's business or Employer's customers, brokers, or loan investor contacts and sources, including but not limited to the Employer's business methods, product pricing, financial information, ***identity and lists of customers (other than those brought to Employer by Employee, or developed by Employee while employed)*** and brokers, loans, loan files and contents of same, that Employee learns of, is given access to, or develops, while employed by Employer (collectively, "Confidential Information") is and shall remain the without time limit the sole and exclusive property of Employer . . ..
>
> ***Neither this Section 3 nor anything else in this Agreement shall prevent the Employee from contacting, at any point in the future, customers or prospects with whom he/she has had direct contact in the past or which he/she develops during the course of his/her employment by Employer.  In addition, the Employee shall be entitled to retain contact information about such customers or prospects in hard copy and/or electronic form***.

(<u>Exhibit 2</u> hereto, pp. 1-2 (emphasis added).)

57.    An identical provision had been included in the employment agreements that Mortgage Master, Inc., entered into with a number of individual defendants, including Bonora, Kolinsky, Rausch, and Vignola, all of whom had been Mortgage Master employees.  (*See* <u>Exhibit 3</u> hereto, pp. 1-2.)  Those individual defendants became loanDepot employees when loanDepot acquired Mortgage Master in 2014.  Yet loanDepot left the Mortgage Master employment agreements in place for them—and hundreds of other former Mortgage Master employees—for a period of approximately four years after the acquisition.

58.     Some of these revelations have forced loanDepot's own counsel to admit that customers' names, phone numbers, and email addresses constitute "standard public information." Specifically, at a hearing on August 3, 2022 in the related Chicago action brought by loanDepot, loanDepot's counsel conceded that basic customer contact information possessed by an employee when he or she resigns is not a confidential trade secret:

> [LOANDEPOT'S COUNSEL]:  . . . LoanDepot is not claiming that **standard public information** that CrossCountry and other competitors in the industry might get from any individual person is a trade secret.  And this case –
>
> THE COURT:  What is that information?  I'm not sure what it is.
>
> MR. LONG:  Sure.  So, a loan originator might come in for employment and, you know, in a standard case, it could be from any given employer.  **They might have basic contacts or prospects that they believe that they have for whom they want – to whom they want to sell loans to.  So, it could be a name and a phone number, for instance, or an e-mail address**.

(*loanDepot.com, LLC v. Schneider, et al.*, No. 22-C-1874 (N.D. Ill.) Hr'g Tr. 5:17-6:3 (ECF No. 78) (emphasis added).)   loanDepot's counsel further conceded that loanDepot, like other employers in the mortgage industry, expect new employees to retain and use their customer contact information from their former employers when they are hired by loanDepot:

> [LOANDEPOT'S COUNSEL]:  . . . So, in terms of your question, though, **it is true, and there's no disagreement, that in the mortgage industry**, just like in the insurance industry or other sales-related roles, **of course new employers do want their originators to have contacts in the industry, to have referral sources, to have, you know, potentially customer relationships or information or people that they can call on** to make, you know, the employer's investment in them worthwhile.  But that is not -- **and that is the kind of information that loanDepot and others are looking for**; potentially CrossCountry, too.

(*Id*. at 17:14-23 (emphasis added).)

59.     Since that hearing, loanDepot has desperately tried to backtrack from its backtrack. It now insists that, when it asks incoming employees to provide loanDepot with customer databases, it is acting lawfully because it simultaneously obtains a written acknowledgement from the incoming employee stating, among other things:

1.     The data I am providing was lawfully obtained.

2.     If I have a prior contractual relationship with my former employer, the Company expects that I uphold those obligations.

3.     ***The data that is being uploaded is limited to public information only, which includes the customer's name, address and contact information (phone number and/or e-mail address).***  Non-public information will not be uploaded.

. . .

5.     The data I'm providing was not purchased through any third party but was all obtained organically.

(*loanDepot.com, LLC v. Schneider, et al.*, No. 22-C-1874 (N.D. Ill.) Status Report at 2 (ECF No. 90) (emphasis added).)

60.     In making that point, however, all loanDepot has done is underscore the outrageously frivolous nature of its claim that basic customer contact information constitutes a confidential protected trade secret.  For one thing, the written acknowledgment that loanDepot requires its incoming employees to sign confirms beyond doubt that a "customer's name, address and contact information (phone number and/or e-mail address)" constitutes "public information only."  Yet in this lawsuit, loanDepot has persisted in advocating, and obtained injunctive relief from this Court based on, the knowingly false premise that such information constitutes a protected trade secret.  (*See* ECF. No. 91.)

61.     For another thing, loanDepot conveniently ignores that incoming CrossCountry employees, including the individual defendants in this action, likewise signed written acknowledgements to CrossCountry that confirmed that they had not taken, did not possess, and would not use, any confidential information taken from their prior employer.  Indeed, the written acknowledgement that CrossCountry requires of its incoming employees is far more emphatic than loanDepot's in protecting the confidential information of former employers.  It states:

> ***I understand and acknowledge that it is the policy of CrossCountry Mortgage, LLC ("CrossCountry Mortgage") to respect the proprietary and confidential information ("Confidential Information") belonging to third parties***.  The term Confidential Information includes without limitation, non-public personal information of customers and prospective customers whether in a loan origination system, customer relationship management database (CRM) or any other electronic application, form or media.

> Therefore, in addition to the terms of my employment agreement with CrossCountry Mortgage and as a condition of employment with the CrossCountry Mortgage, I hereby represent and agree as follows:

> 1.     I am not subject to any agreement of any kind with any prior employer or other person or entity relating in any way to my right or my ability to be employed by and/or to perform services for the CrossCountry Mortgage.

> 2.     ***CrossCountry Mortgage has instructed me and is instructing me by the terms of this acknowledgement not to bring to, disclose to or use in connection with my employment or potential employment with the CrossCountry Mortgage any Confidential Information from any prior employer or other person or entity***.

> 3.     ***I have not brought to, disclosed to or used in connection with my employment or potential employment with the CrossCountry Mortgage any Confidential Information from any prior employer or other person or entity***.

> 4.     ***I will not bring to, disclose to or use in connection with my employment with the CrossCountry Mortgage any***

> ***Confidential Information from any prior employer or other
> person or entity***.

(CrossCountry's Confidential Information Acknowledgement, attached hereto as <u>Exhibit 4</u> (emphasis added).)

62.     All of this confirms that loanDepot does not reasonably believe that basic customer contact information is a confidential trade secret, and that loanDepot's conclusory claims against CrossCountry are objectively baseless.

63.     loanDepot knows that it is frivolous for it to seek trade-secret protection for basic customer contact information.  Yet loanDepot's Verified Amended Complaint nonetheless bases its claims against CrossCountry, and its requests for overly broad injunctive relief, on the premise that such information is a trade secret.  And all the while, loanDepot and its lawyers omitted, and failed to disclose, that loanDepot itself asks its incoming loan officers to disclose their contact lists to loanDepot and had long carved out basic customer contact information from its own definition of "Confidential Information."

64.     As a result, the additional process that loanDepot has used in this proceeding, including an overly broad TRO, an overly broad request for a preliminary injunction, and overly broad discovery, amounts to abuse of process.

65.     Further, loanDepot's conduct in the Chicago case—while the subject of a separate and independent counterclaim for abuse of process in that matter under Illinois law—illustrates loanDepot's intent to use the court system to abusively harass CrossCountry.  In the Chicago case, loanDepot obtained an improperly broad TRO much like that of the one in this matter.  Then, when moving for a preliminary injunction in that matter, loanDepot requested an even broader injunction to impose a nationwide hiring freeze barring CrossCountry from recruiting or hiring any loanDepot employees.  The Chicago court, however, rejected that effort, finding that a nationwide hiring

freeze was "overbroad" and "bears almost no connection to loanDepot's specific claims in this specific case." What is more, loanDepot's claimed need for a nationwide hiring freeze was just as hypocritical as loanDepot's claims in this case. loanDepot claimed that such extraordinary relief was necessary because CrossCountry was trying to recruit entire "teams" of loanDepot employees to join CrossCountry. Yet at this very moment, loanDepot itself is publicly trying to recruit and hire whole teams to join loanDepot. For example, loanDepot has been advertising for several weeks now that it is "looking to *selectively acquire strong teams or firms* that align with our strategy . . . ," and directed "[l]eaders" of teams "to reach out to Jeff Walsh [loanDepot's Executive Vice President] directly." Indeed, loanDepot has offered explicit advice to recruits on how to quit and recruit their respective team to loanDepot. In any event, loanDepot's audacity in improperly asking for a nationwide hiring freeze underscores loanDepot's wrongful intent to use the courts— including this Court—to harm CrossCountry's business. It has been loanDepot's *modus operandi* to abuse the court system to interfere with CrossCountry lawful efforts to compete with loanDepot.

66.    CrossCountry needs this Court's help to relieve it from loanDepot's pattern of misconduct.

## CAUSES OF ACTION

### COUNT ONE
### ABUSE OF PROCESS

67.    CrossCountry incorporates by reference each of the allegations contained in the foregoing paragraphs 1-66 as if fully stated herein.

68.    As alleged herein, each and every element of an abuse-of-process claim under New York law is satisfied here: "(1) regularly issued process, either civil or criminal, (2) an intent to do harm without excuse or justification, and (3) use of the process in a perverted manner to obtain a collateral objective." *Curiano v. Suozzi*, 469 N.E.2d 1324, 1326 (N.Y. 1984) (citing *Bd. of Ed. v.*

*Farmingdale Classroom Teachers Assn.*, 343 N.E.2d 278, 282–83 (N.Y. 1975)).  CrossCountry likewise satisfies the requirement that "[a] party advancing an abuse of process claim must also prove actual or special damages."  *Roelcke v. Zip Aviation, LLC*, 571 F. Supp. 3d 214, 233 (S.D.N.Y. 2021).

      i.    <u>Regularly Issued Process</u>

69.    The first element is amply satisfied through loanDepot's improper use of an overly broad temporary restraining order, overly broad request for a preliminary injunction, overly broad and abusive discovery.  It is well settled that a temporary restraining order is "process" sufficient to satisfy the first element because a temporary restraining order, by its very nature, requires the compelled performance or forbearance of some prescribed act.  *See Roelcke v. Zip Aviation, LLC*, 571 F. Supp. 3d 214, 233–34 (S.D.N.Y. 2021) (finding issuance of restraining order sufficient process for an abuse-of-process claim); *Dixon v. Roy*, 873 N.Y.2d 233 (Table) (N.Y. Sup. Ct. 2008) (holding that "the temporary restraining order constituted a regularly issued process which compelled the forbearance of a prescribed act, satisfying the first element to establish an abuse of process"); *see also Farmingdale*, 343 N.E.2d at 282–83 (defining "process," for purposes of the first element of an abuse-of-process claim, as the "compelling the performance or forebearance of some prescribed act").  Likewise, New York courts have recognized that "depositions, subpoenas, and other tools of the discovery process" can "form the basis of an action for abuse of process." *Manhattan*, 816 Fed. App'x at 515 (citing *Roelcke v. Zip Aviation, LLC*, No. 15-CV-6284 (DAB), 2019 U.S. Dist. LEXIS 4257, *13 (S.D.N.Y. Jan. 8, 2019)); *see also Ginsberg v. Ginsberg*, 443 N.Y.S.2d 439, 439 (2d Dep't 1981) (reversing dismissal of abuse of process counterclaim because the use of the "subpoena power" to "harass defendant and exhaust her resources" was sufficient for abuse of process counterclaim).

70.     The satisfaction of this first element is not a close question here.  As alleged, loanDepot has misused, and seeks to misuse, this Court's legal process—including an improperly overbroad temporary restraining order, improperly broad request for preliminary injunctive relief, overly broad expedited discovery, and other tools of the discovery process to stop CrossCountry from using lawfully acquired property—such as basic customer contact information—to generate business and revenue, and to prevent CrossCountry from legally recruiting and competing in the mortgage industry for revenue-generating employees.

ii.     <u>loanDepot's Intent to Do Harm Without Excuse or Justification</u>

71.     As to the second element of CrossCountry's abuse-of-process claim—loanDepot's intent to do harm without excuse or justification—that element is even more patently satisfied here, as the well-pleaded facts demonstrate loanDepot's "intent to harass and to injure." *Farmingdale*, 343 N.E.2d at 283.

72.     loanDepot's animosity towards CrossCountry, and its wrongful intent to harass and injure CrossCountry, is palpable.  After CrossCountry spurned loanDepot's merger proposal in March 2021, loanDepot set out to find any opportunity to sue CrossCountry; unlawfully targeted CrossCountry's employees to misappropriate CrossCountry's confidential information and divert CrossCountry business; declared CrossCountry to be an "adversary to focus on"; threatened to sue every loan officer who might leave; used the Chicago litigation to improperly seek a nationwide hiring freeze against CrossCountry; and has used this Court's process in this lawsuit to harm CrossCountry's business, improperly bar CrossCountry from using lawfully acquired basic customer contact information (even though loanDepot knows full well that such information is not a confidential trade secret, for years never treated such information as secret, and to this day regularly asks incoming loan officers to provide loanDepot with basic customer contact

information taken from those loan officers' prior employers), and prevent CrossCountry from competing for loan officers.

73.     The source of loanDepot's wrongful intent is apparent.  As alleged, loanDepot artificially inflated its financial performance in 2020 and 2021, in advance of its February 2021 IPO, using a variety of unlawful conduct, including by implementing a scheme to illegally close thousands of no-document mortgage loans, and by concealing that conduct to drive up its IPO price.  Then, on the heels of its IPO, loanDepot sought a savior by proposing to CrossCountry in March 2021 that it merge with loanDepot, with CrossCountry's CEO, Mr. Leonhardt, running the combined company.  CrossCountry's rejection of loanDepot's merger proposal left loanDepot to face the consequences of its illegality alone, which has already resulted in a mound of shareholder litigation.  And ever since CrossCountry's rejection, loanDepot has embarked on a malicious scheme to seek retribution.  loanDepot's claims against CrossCountry in this lawsuit and its improper use of this Court's process to harm CrossCountry's business are part and parcel of that scheme.

74.     Further, loanDepot's intent to injure CrossCountry is without excuse or justification.  Using this Court's process to stop CrossCountry from using lawfully acquired contact information to generate business and properly compete with loanDepot is not excusable or justifiable.  Nor is it excusable or justifiable for loanDepot to have used this Court's process to stop CrossCountry from lawfully recruiting employees, especially at a time when loanDepot has been laying off employees by the thousands.  Further, loanDepot does not allege a single factual allegation on which its claims against CrossCountry are premised.  loanDepot can only allege vague, conclusory allegations against CrossCountry that it misappropriated loanDepot's "confidential information or trade secrets," because it knows full well any actual facts will show

that CrossCountry never asked incoming loan officers from loanDepot to send CrossCountry any confidential information or trade secrets.

75.   Not only are loanDepot's claims against CrossCountry baseless, but so too are loanDepot's arguments for a TRO.  The evidence will show that loanDepot does not treat basic customer contact information as a trade secret.  For example, loanDepot's own employment agreements that were in place for years with loan officers—including many of the Individual Defendants—excluded basic customer contact information from the definition of "Confidential Information," and permitted those employees to use and retain that information, including after they were to leave loanDepot.  (*See* Exhibits 2 and 3 hereto.)  As another example, loanDepot has admitted in a hearing in Chicago that basic customer contact information is publicly available (*supra* ¶ 58), and loanDepot's own internal documents confirm that loanDepot considers basic customer contact information (*e.g.*, name, address, phone number, email address) to be "public information" (*supra* ¶ 59).  What is more, loanDepot's own onboarding documents show that loanDepot asks new employees to provide loanDepot with customer databases from their previous employers, in exactly the same way that loanDepot accuses CrossCountry.  (*See* Exhibit 1 hereto.) Courts around the country refuse to allow a plaintiff to challenge the same conduct that the plaintiff itself engages in.  *See, e.g.*, *Stokely-Van Camp, Inc. v. Coca-Cola Co.*, 646 F. Supp. 2d 510, 533 (S.D.N.Y. 2009) (applying unclean hands because "[c]ourts in this Circuit and elsewhere have routinely found that a plaintiff's misconduct relates to the subject matter of its claims where, as here, the plaintiff has engaged in the same kind of behavior that it challenges"); *Nikkal Industries, Ltd. v. Salton, Inc.*, 735 F. Supp. 1227, 1239 (S.D.N.Y. 1990) (denying preliminary injunction "[s]ince [the plaintiff] appears to have engaged in the very same conduct it has challenged, the court would have been hard pressed to grant it any equitable relief, even if the conduct of [the

defendant] had violated the Lanham Act"); *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Callahan*, 265 F. Supp. 2d 440 (D. Vt. 2003) (because "Merrill Lynch has admitted to engaging regularly in the same kind of behavior it seeks to enjoin, [the solicitation of client contact lists from new hires], the Court will not use its equitable powers to enjoin such behavior"); *Salomon v. Smith Barney v. Vockel*, 137 F. Supp. 2d 599 (E.D. Pa. 2000) (denying relief to plaintiff where plaintiff sued alleging that departed employee stole confidential customer lists when he departed, but plaintiff engaged in exactly the same type of behavior when hiring departed employee in the first place, reaping the benefits of the employees previous employer); *Morgan Stanley DW, Inc. v. Frisby*, 163 F. Supp. 2d 1371 (N.D. Ga. 2001) (denying preliminary injunction and holding that "Morgan Stanley is estopped from seeking a restraining order against competitive conduct which it admits to engaging in").  Notwithstanding all of this, loanDepot has wrongfully pushed for a TRO and preliminary injunction that prevents CrossCountry from using basic customer contact information.

76.     There can be no question that loanDepot's conduct, after filing this action, amounts to "intent to cause harm without excuse or justification" under New York law.

iii.     <u>loanDepot's Use of Process In a Perverted Manner to Obtain a Collateral Objective</u>

77.     The third element—loanDepot's use of the process in a perverted manner to obtain a collateral objective—is also present here.   That element is satisfied where "process is manipulated to achieve some collateral advantage, whether it be denominated extortion, blackmail or retribution." *Farmingdale*, 343 N.E.2d at 283.  Likewise, that element is satisfied where a party uses process to cause economic harm, reputational damage, or harassment, *Roelcke*, 2019 U.S. Dist. LEXIS 4257, at *16, or "to inflict substantial damage upon [CrossCountry]'s business,"

*Marwood Mech., Inc. v. Davis & Warshow, Inc.*, 377 N.Y.S.2d 547, 548 (2d Dep't 1975).  All of that exists here.

78.     As alleged, loanDepot is perverting the Court's process—including an improperly overbroad TRO and request for preliminary injunctive relief, expedited discovery, and other tools of the discovery process—to pursue an ulterior motive.  loanDepot seeks retribution from CrossCountry for spurning loanDepot's March 2021 merger proposal, to improperly prevent CrossCountry from using lawfully acquired contact information to compete with loanDepot for revenue-generating business, to improperly prevent CrossCountry from lawfully recruiting and hiring loanDepot's loan officers, and to improperly chill loanDepot's loan officer from any desire to leave loanDepot and join CrossCountry.

79.     For example, in 2022, loanDepot planned to, and did, terminate over 42% of its workforce.  A direct and natural consequence of such action is that employees who were not terminated wanted to seek other options for employment during loanDepot's rapid decline.  Yet loanDepot has sought to use the legal process to prevent its employees from making independent choices regarding their employment, to strike fear in any loanDepot employee who might dare to leave for CrossCountry, and to prevent CrossCountry from lawfully recruiting and hiring from loanDepot.

80.     As another example, when CrossCountry onboarded the Individual Defendants in 2022, it accepted from them basic customer contact information regarding their prior customer contacts, for marketing purposes.  That is no different from loanDepot, which regularly asks its incoming employees to send loanDepot their "Database" of "Past/Current Clients."  (*See* Exhibit 1 hereto.)  And just like loanDepot, those Individual Defendants certified to CrossCountry that they were not bringing to CrossCountry any confidential information from their prior employer.

Nonetheless, loanDepot used its overbroad TRO for the collateral objective of stopping CrossCountry from lawfully using properly acquired customer contact information, in order to harm CrossCountry's business, impede CrossCountry's lawful competition for business, and obtain retribution against CrossCountry form rejecting loanDepot's 2021 merger proposal and hiring loanDepot employees.

81.      The chilling of the marketplace and hampering CrossCountry's lawful competition is a collateral objective separate and apart from the Court's process itself, which plainly satisfies the third element of abuse of process under New York law.

iv.      <u>Actual or Special Damages</u>

82.      CrossCountry has also sustained actual or special damages as a result of loanDepot's abuse of this Court's process, which has unlawfully interfered in CrossCountry's person and property.

83.      For one thing, CrossCountry has incurred substantial legal expenses—many hundreds of thousands of dollars—litigating against loanDepot's improperly broad request for a TRO, improperly broad request for a preliminary injunction, and improperly broad discovery. New York law is well established that "[t]hese expenses can constitute damages for an abuse of process claim." *Roelcke v. Zip Aviation, LLC*, 571 F. Supp. 3d 214, 234 (S.D.N.Y. 2021) (rejecting "the plaintiff['s] conten[tion] that the defendants cannot prove actual or special damages" for purposes of their abuse-of-process counterclaim, because the defendants' declarations "declared that the defendants incurred substantial legal expenses litigating the proceedings initiated by the plaintiff," and "[t]hese expenses can constitute damages for an abuse of process claim"); *accord Parkin v. Cornell Univ., Inc.*, 78 N.Y.2d 523, 530 (N.Y. 1991) ("We also conclude that the Appellate Division erred in dismissing plaintiffs' cause of action for abuse of process.  We note

first our disagreement with that court's conclusion that plaintiffs failed to plead and prove actual or special damages.  To the contrary, both plaintiffs testified that they had incurred legal expenses in connection with their defense of the criminal charges brought against them.").

84.     Even beyond wrongfully causing CrossCountry to incur substantial legal expenses, loanDepot's abuse of process has inflicted other business injuries on CrossCountry.  For example, loanDepot's wrongful conduct has prevented CrossCountry from using lawfully acquired customer contact information to generate business and revenue from those customers.   Likewise, loanDepot's abuse of process has wrongfully chilled CrossCountry from lawfully recruiting and hiring employees from loanDepot in the highly competitive labor environment in the mortgage industry, depriving CrossCountry of revenue-generating employees.

85.     loanDepot's rampant abuse of this Court's process cries out for relief.

## COUNT TWO
## FALSE ASSOCIATION UNDER
## LANHAM ACT (15 U.S.C. § 1125(A)(1)(A))

86.     CrossCountry incorporates by reference each of the allegations contained in the foregoing paragraphs 1-85 as if fully stated herein.

87.     As stated above, loanDepot falsely and misleadingly used the name and likeness of CrossCountry employees, including Scott Bonora, Faheem Hossain, and others, in false advertisements sent to potential customers in May and July 2022.

88.     These employees of CrossCountry were no longer affiliated with loanDepot. Despite knowing this, loanDepot knowingly and intentionally used the name and likeness of these CrossCountry employees in advertisements sent *en masse* to potential consumers in interstate commerce.   In doing so, loanDepot falsely advertised that those employees still worked for

loanDepot rather than CrossCountry, and wrongly passed off the products and services of CrossCountry as products and services of loanDepot.

89.     loanDepot's false email advertisements used the names and likeness of CrossCountry employees for a commercial advertisement for loanDepot's products and services, including by using the name and contact information of CrossCountry employees.  Those false emails even provided a link for potential customers to begin a mortgage loan application with loanDepot.  loanDepot sent those false advertisements to mislead consumers into believing that the former employees were still employed with loanDepot so that consumers would apply for and close mortgage loans with loanDepot.  As a result of loanDepot's actions in falsely associating CrossCountry's employees with loanDepot, loanDepot has confused consumers as to who CrossCountry's employees are affiliated with.

90.     CrossCountry has suffered damages as a result of loanDepot's intentionally fraudulent and misleading conduct, because CrossCountry has lost revenue and profits from consumers who applied for and closed mortgage loans through loanDepot wrongly believing that Mr. Bonora, Mr. Hossain, and others were working for loanDepot rather than CrossCountry.  As loanDepot itself alleges, these loan officers and their reputations and customer relationships have independent commercial value.  (*See, e.g.*, Verified Am. Compl. ¶¶ 3, 49, 58-65.)  That is exactly why loanDepot used those loan officers' names and likenesses in its false advertising:  to obtain business from mortgage borrowers who were deceived into believing that, by clicking on the link in loanDepot's false advertisements, their mortgage loan would be handled by Mr. Bonora, Mr. Hossain, or one of the other former loanDepot employees.  Those mortgage loans otherwise would have been closed by CrossCountry, where those employees were actually working.  Moreover,

loanDepot has unjustly enriched itself through its false and misleading conduct, to CrossCountry's detriment.

91.     This conduct and activity by loanDepot constitutes false association in violation of the Lanham Act, 15 U.S.C. § 1125(A)(1)(A).

**COUNT THREE**
**FALSE ADVERTISEMENT UNDER**
**LANHAM ACT (15 U.S.C. § 1125(A)(1)(B))**

92.     CrossCountry incorporates by reference each of the allegations contained in the foregoing paragraphs 1-91 as if fully stated herein.

93.     As stated above, loanDepot used the name and likeness of CrossCountry employees, including Scott Bonora, Faheem Hossain, and others, in false advertisements sent to potential customers in May and July 2022.

94.     These employees of CrossCountry were no longer affiliated with loanDepot. Despite knowing this, loanDepot knowingly and intentionally used the name and likeness of these CrossCountry employees in advertisements sent *en masse* to potential consumers in interstate commerce.  In doing so, loanDepot falsely advertised that those employees still worked for loanDepot rather than CrossCountry, and wrongly passed off the products and services of CrossCountry as products and services of loanDepot.

95.     loanDepot's false email advertisements used the names and likeness of CrossCountry employees for a commercial advertisement for its products and services, including the name and contact information of CrossCountry employees.  Those false emails even provided a link for potential customers to begin a mortgage loan application with loanDepot.  loanDepot sent those false advertisements to mislead consumers into believing that the former employees were still employed with loanDepot so that consumers would use loanDepot for their mortgage

loan.  Accordingly, loanDepot misrepresented the nature and quality of the services it sought to provide.

96.     loanDepot's false advertisements had, and has, the tendency to deceive consumers into believing that Mr. Bonora, Mr. Hossain, and others were loan officers at loanDepot, even though they were actually employed by CrossCountry.  loanDepot sent those false advertisements specifically to the customer and referral-source contacts that had been maintained at loanDepot by each of the former loanDepot employees to whom loanDepot falsely attributed the email blasts, such as Mr. Bonora and Mr. Hossain.  loanDepot knew that the identity of Mr. Bonora's and Mr. Hossain's employer was material to those contacts, as it was important to the decision by customers to apply for a loan or by referral sources to refer a borrower.  Indeed, loanDepot's specific purpose in sending those false advertisements was to use Mr. Bonora's and Mr. Hossain's names and likeness to influence a consumer to apply for a loan at loanDepot, or for a referral source to refer a borrower to apply for a loan at loanDepot.

97.     As a result, CrossCountry has suffered damages from loanDepot's intentionally fraudulent and misleading conduct because CrossCountry lost revenue and profits from consumers who applied for and closed mortgage loans with loanDepot wrongly believing that the former loanDepot employees such as Mr. Bonora and Hossain were still working there rather than CrossCountry.  As loanDepot itself alleges, these loan officers and their reputations and customer relationships have independent commercial value.  (*See, e.g.*, Verified Am. Compl. ¶¶ 3, 49, 58-65.)  That is exactly why loanDepot used those loan officers' names and likenesses in its false advertising:  to obtain business from mortgage borrowers who were deceived into believing that, by clicking on the link in loanDepot's false advertisements, their mortgage loan would be handled by Mr. Bonora, Mr. Hossain, or one of the other former loanDepot employees.  Those mortgages

otherwise would have been closed by CrossCountry, where those employees were actually working.  Moreover, loanDepot has unjustly enriched itself through its false and misleading conduct, to CrossCountry's detriment.

98.    This conduct and activity by loanDepot constitutes false advertisement in violation of the Lanham Act, 15 U.S.C. § 1125(A)(1)(B).

**COUNT FOUR**
**UNFAIR COMPETITION**

99.    CrossCountry incorporates by reference each of the allegations contained in the foregoing paragraphs 1-98 as if fully stated herein.

100.   As stated above, loanDepot willfully misused the name and likeness of CrossCountry employees, including Scott Bonora, Faheem Hossain, and others based in New York, in false advertisements sent to potential customers in May and July 2022.

101.   As of the date each of those advertisements was sent, those CrossCountry employees were no longer affiliated with loanDepot, as they had terminated their employment months earlier.  Despite being well aware of this, loanDepot knowingly, intentionally, and falsely used the names and likenesses of these CrossCountry employees in advertisements sent *en masse* to potential consumers in interstate commerce, including in New York.  In doing so, loanDepot falsely advertised that those employees still worked for loanDepot rather than CrossCountry, and wrongly passed off the products and services of CrossCountry as products and services of loanDepot.

102.   These deceptive and false advertisements by loanDepot caused a likelihood of confusion or misunderstanding as to the affiliation or connection of CrossCountry employees, and as to CrossCountry's services.

103.   CrossCountry has suffered damages as a result of loanDepot's intentionally fraudulent and misleading conduct because CrossCountry lost revenue and profits from consumers who applied for and closed mortgage loans through loanDepot, wrongly believing that CrossCountry's employees were working at loanDepot rather than CrossCountry.  As loanDepot itself alleges, these loan officers and their reputations and customer relationships have independent commercial value.  (*See, e.g.*, Verified Am. Compl. ¶¶ 3, 49, 58-65.)  That is exactly why loanDepot used those loan officers' names and likenesses in its false advertising:  to obtain business from mortgage borrowers who were deceived into believing that, by clicking on the link in loanDepot's false advertisements, their mortgage loan would be handled by Mr. Bonora, Mr. Hossain, or one of the other former loanDepot employees.  Those mortgages otherwise would have been closed by CrossCountry, where those employees were actually working.  Moreover, loanDepot has unjustly enriched itself through its false and misleading conduct, to CrossCountry's detriment.

104.   loanDepot's conduct of falsely using the names and likenesses of CrossCountry employees is ongoing—indeed, has persisted despite multiple cease-and-desist letters in May and July 2022—and has caused, and will cause, future harm to CrossCountry's and consumers.

105.   This conduct and activity by loanDepot constitutes unfair competition under New York common law.

**COUNT FIVE**
**DECEPTIVE PRACTICES ACT (N.Y. GEN. BUS. LAW § 349)**
**REGARDING FALSE ADVERTISEMENT AND ASSOCIATION**

106.   CrossCountry incorporates by reference each of the allegations contained in the foregoing paragraphs 1-105 as if fully stated herein.

107.    As stated above, loanDepot willfully misused the name and likeness of CrossCountry employees, including Scott Bonora, Faheem Hossain, and others based in New York, in false advertisements sent to potential customers in May and July 2022.

108.    As of the date each of those advertisements was sent, those CrossCountry employees were no longer affiliated with loanDepot, as they had terminated their employment months earlier.  Despite being well aware of this, loanDepot knowingly, intentionally, and falsely used the names and likenesses of these CrossCountry employees in advertisements sent *en masse* to potential consumers in interstate commerce, including in New York.  In doing so, loanDepot falsely advertised that those employees still worked for loanDepot rather than CrossCountry, and wrongly passed off the products and services of CrossCountry as products and services of loanDepot.

109.    The deceptive and false advertisement by loanDepot caused a likelihood of confusion or misunderstanding as to affiliation or connection of CrossCountry employees, and as to CrossCountry's services.  loanDepot's actions also constituted an unfair method of competition.

110.    CrossCountry has suffered damages as a result of loanDepot's intentionally fraudulent and misleading conduct because CrossCountry lost revenue and profits from consumers who applied for and closed mortgage loans through loanDepot, wrongly believing that CrossCountry's employees were working at loanDepot rather than CrossCountry.  As loanDepot itself alleges, these loan officers and their reputations and customer relationships have independent commercial value.  (*See, e.g.*, Verified Am. Compl. ¶¶ 3, 49, 58-65.)  That is exactly why loanDepot used those loan officers' names and likenesses in its false advertising:  to obtain business from mortgage borrowers who were deceived into believing that, by clicking on the link in loanDepot's false advertisements, their mortgage loan would be handled by Mr. Bonora, Mr.

Hossain, or one of the other former loanDepot employees. Those mortgages otherwise would have been closed by CrossCountry, where those employees were actually working. Moreover, loanDepot has unjustly enriched itself through its false and misleading conduct, to CrossCountry's detriment.

111.    loanDepot's conduct by using the names and likenesses of CrossCountry employees is ongoing—indeed, has persisted despite multiple cease-and-desist letters in May and July 2022—and has caused, and will cause, future harm to CrossCountry's and consumers.

112.    CrossCountry's requested relief would serve the interests of consumers generally by preventing future harm under this scheme and rectify previous wrongdoings by loanDepot.

113.    This conduct and activity by loanDepot constitutes deceptive acts and practices in violation of New York's Deceptive Practices Act, N.Y. Gen. Bus. Law § 349.

## PRAYER FOR RELIEF

WHEREFORE, as to all Counts, defendant and counterclaimant CrossCountry respectfully requests that the Court enter judgment in its favor and award the following relief against loanDepot:

   (a)    Actual and compensatory damages from loanDepot, including CrossCountry's lost profits, attorneys' fees, and expenses and costs of pursuing this matter;

   (b)    Injunctive relief prohibiting loanDepot from continuing to falsely use the names and likenesses of CrossCountry's employees in New York;

   (c)    Double, treble, and/or punitive damages, as the Court deems appropriate;

   (d)    Pre- and post-judgment interest; and

   (e)    Such further relief as the Court deems just and proper.

## JURY DEMAND

Defendant CrossCountry asserts its Seventh Amendment right to trial by jury on all issues so triable.

Dated: February 21, 2023                    Respectfully submitted,

                                            s/ *Michael A. Platt*
                                            Jennifer L. Del Medico
                                            JONES DAY
                                            250 Vesey Street
                                            New York, New York 10281
                                            Telephone: (212) 326-3939
                                            Facsimile: (212) 755-7306
                                            jdelmedico@jonesday.com

                                            Michael A. Platt (admitted *pro hac vice*)
                                            JONES DAY
                                            North Point
                                            901 Lakeside Avenue
                                            Cleveland, Ohio 44114
                                            Telephone: (216) 586-7221
                                            Facsimile: (216) 579-0212
                                            maplatt@jonesday.com

                                            Brent D. Knight (admitted *pro hac vice*)
                                            JONES DAY
                                            110 N. Wacker Drive
                                            Suite 4800
                                            Chicago, Illinois 60606
                                            Telephone: (312) 782-3939
                                            Facsimile: (312) 782-8585
                                            bdknight@jonesday.com

                                            Enrique A. Lemus (admitted *pro hac vice*)
                                            JONES DAY
                                            2727 North Harwood Street
                                            Dallas, Texas 75201
                                            Telephone: (214) 969-4877
                                            Facsimile: (214) 969-5100
                                            elemus@jonesday.com

                                            *Attorneys for Defendant CrossCountry*
                                            *Mortgage, LLC*

## <u>CERTIFICATE OF SERVICE</u>

The foregoing document was served on counsel of record by undersigned counsel on February 21, 2023 by electronic mail through the Court's CM/ECF system.

_/s/ Michael A. Platt_
Michael A. Platt