IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| loanDepot.com, LLC, | |
|              Plaintiff, | |
|       v. | Case No. 1:22-cv-05971-LGS |
| CROSSCOUNTRY MORTGAGE, LLC, STANISLAV ALESHIN, KEISHA ANTOINE, ANTHONY AYALA, SCOTT BONORA, FAHEEM HOSSAIN, STUART KOLINSKY, BARRY KOVEN, DANIEL KWIATKOWSKI, JAROSLAW KWIATKOWSKI, YUSHENG LIU, ROBERT LONDON, ENRICO MARTINO, DANIEL MEIDAN, SCOTT NADLER, GIOVANNI NARVAEZ, DAVID OSTROWSKY, EMELINE RAMOS, ROBERT RAUSH, RAFAEL REYES, MICHAEL SECOR, LLEWELLYN TEJADA, ILYA VAYSBERG, ERIKA VIGNOLA, and YAN ZHENG, | **ECF Case** |
|            Defendants. | |

**OPPOSITION TO LOANDEPOT'S MOTION TO DISMISS
<u>CROSSCOUNTY MORTGAGE, LLC'S ABUSE-OF-PROCESS COUNTERCLAIM</u>**

# **TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ........................................................................................ 1

FACTUAL ALLEGATIONS .......................................................................................... 1

LEGAL STANDARD .................................................................................................. 3

CROSSCOUNTRY HAS SUFFICIENTLY PLEADED ALL OF THE
ELEMENTS OF AN ABUSE-OF-PROCESS CLAIM ....................................................... 3

     I.     CrossCountry Pleads loanDepot's Use of Regularly Issued Legal
          Process ................................................................................................ 4

     II.    CrossCountry Pleads Intent to Do Harm Without Excuse or
          Justification ......................................................................................... 7

     III.   CrossCountry Pleads That loanDepot Used Process In a Perverted
          Manner to Obtain a Collateral Objective ............................................ 8

CONCLUSION ......................................................................................................... 10

## <u>TABLE OF AUTHORITIES</u>

Page(s)

**CASES**

*Arista Records LLC v. Doe 3,*
   604 F.3d 110 (2d Cir. 2010) ........................................................................ 3

*Backer v. Cooperatieve Rabobank U.A.,*
   338 F. Supp. 3d 222 (S.D.N.Y. 2018) ......................................................... 4

*Bd. of Educ. v. Farmingdale Classroom Teachers Assn.,*
   343 N.E.2d 278 (N.Y. 1975) ............................................................... *passim*

*Beauty USA, Inc. v. Chin Hong Luo,*
   No. 11-cv-5349 (LAK), 2011 WL 4952658 (S.D.N.Y. Oct. 13, 2011) ........ 9

*Beezhold v. Allegiance Healthcare Corp.,*
   No. 99-cv-0299 (WHP), 2000 WL 1092886 (S.D.N.Y. Aug. 4, 2000) ........ 9

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007) ...................................................................................... 3

*Bright View Trading Co. v. Park,*
   No. 03-cv-2330 (HB), 2004 WL 2071976 (S.D.N.Y. Sept. 16, 2004) ........ 4

*Butler v. Ratner,*
   210 A.D.2d 691 (N.Y. App. Div. 1994) ...................................................... 9

*Cohen v. G&M Realty, L.P.,*
   No. 13-cv-05612 (FBRLM), 2017 WL 1208416 (E.D.N.Y. Mar. 31, 2007) ............... 9

*Cook v. Sheldon,*
   41 F.3d 73 (2d Cir. 1994) ............................................................................. 4

*Curiano v. Suozzi,*
   469 N.E.2d 1324 (N.Y. 1984) ...................................................................... 4

*Dixon v. Roy,*
   873 N.Y.S.2d 233 (Table) (N.Y. Sup. Ct. 2008) ........................................ 4

*El Greco Leather Prod. Co., Inc. v. Shoe World, Inc.,*
   623 F. Supp. 1038 (E.D.N.Y. 1985) ........................................................ 4, 5

*Galper v. JP Morgan Chase Bank, N.A.,*
   802 F.3d 437 (2d Cir. 2015) ......................................................................... 3

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Goldberg v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,*
    No. 97-cv-8779 (RPP), 1998 WL 321446 (S.D.N.Y. June 18, 1998) ........................... 6

*Hoffman v. Town of Southampton,*
    893 F. Supp. 2d 438 (E.D.N.Y. 2012) ................................................................ 8

*Hornstein v. Wolf,*
    67 N.Y.2d 721 (1986) ................................................................................. 6

*In re Celsius Network, LLC,*
    No. 22-10964 (MG), 2022 WL 17541051 (Bankr. S.D.N.Y. Dec. 8, 2022) .................. 5

*In re Mirena IUD Prod. Liability Litig.,*
    29 F. Supp. 3d 345 (S.D.N.Y. 2014) ................................................................ 5

*In re New York Methodist Hosp.,*
    885 N.Y.S.2d 392 (N.Y. Sup. Ct. 2009) ........................................................... 5

*Klass v. Frazer,* 290
    F. Supp. 2d 425 (S.D.N.Y. 2003) ................................................................... 9

*Marwood Mech., Inc. v. Davis & Warshow, Inc.,*
    50 A.D.2d 900 (N.Y. Sup. Ct. 1975) ................................................................ 8

*Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC,*
    595 F.3d 86 (2d Cir. 2010) ....................................................................... 1, 3

*Pagliarulo v. Pagliarulo,*
    30 A.D.2d 840 (N.Y. App. Div. 1968) .............................................................. 6

*Paul v. Fargo,*
    84 A.D. 9 (N.Y. App. Div. 1903) ................................................................... 6

*Roelcke v. Zip Aviation, LLC,*
    571 F. Supp. 3d 214 (S.D.N.Y. 2021) ........................................................... 4, 9

*Roelcke v. Zip Aviation, LLC,*
    No. 15-cv-6284 (DAB), 2019 WL 10856680 (S.D.N.Y. Jan. 8, 2019) ...................... 8, 9

*Savino v. City of New York,*
    331 F.3d 63 (2d Cir. 2003) ......................................................................... 6

## <u>TABLE OF AUTHORITIES</u>
(continued)

Page(s)

*Schulman v. Anderson Russell Kill & Olick, P.C.*,
  458 N.Y.S.2d 448 (N.Y. Sup. Ct. 1982) ........................................................................ 9

*Starr v. Sony BMG Music Ent.*,
  592 F.3d 314 (2d Cir. 2010) ........................................................................................ 3

**RULES**

Fed. R. Civ. P. 12 ............................................................................................................. 3

**TREATISES**

86 N.Y. Jur. 2d Process and Papers (2023) ...................................................................... 6

## PRELIMINARY STATEMENT

loanDepot.com, LLC's motion to dismiss CrossCountry Mortgage, LLC's abuse-of-process counterclaim fails because CrossCountry's detailed, fact-intensive pleading unquestionably alleges a plausible set of facts sufficient to show a right to relief. CrossCountry alleges that loanDepot sought and obtained an overbroad TRO against CrossCountry that prohibited the use of basic customer contact information while knowing that such information is not, and cannot be, a trade secret and that loanDepot itself did not treat such information as confidential. loanDepot then sought to use this Court's process—the TRO—for an improper purpose: to unlawfully restrict CrossCountry's ability to compete with loanDepot for customers and employees. Those allegations squarely satisfy the pleading standards for an abuse-of-process claim. Accordingly, the Court should deny loanDepot's motion to dismiss CrossCountry's counterclaim for abuse of process.

## FACTUAL ALLEGATIONS

CrossCountry's amended Counterclaims describe in detail the bases for its abuse-of-process counterclaim, which is rooted in loanDepot's scheme to improperly compete in the retail mortgage loan industry and target CrossCountry. In 2020, when loanDepot's leadership decided to take the company public, then-CEO Anthony Hsieh directed and oversaw an unlawful scheme to inflate the IPO price by closing loans without the legally-required underwriting in order to amass more sales. (Countercl. at ¶¶ 1, 4, 15–26.) The scheme worked. loanDepot's IPO price on February 11, 2021 was $14 per share, and it quickly rose to $31. (*Id.* at ¶ 28.) But knowing that its artificially inflated performance could not be sustained, loanDepot sought out a white knight to save it. (*Id.* at ¶ 29.) In March 2021, Hsieh and other top loanDepot executives met via conference call with Ronald Leonhardt, Jr., CrossCountry's CEO, to propose a merger of the companies. (*Id.* at ¶ 31.) Leonhardt rejected the proposal. (*Id.* at ¶ 32.) Spurned and confronted with the consequences of its illegal scheme, Hsieh and loanDepot began looking for opportunities to retaliate. (*Id.* at ¶ 33.) To wit, just

two months later, after CrossCountry hired seven loanDepot loan officers in California in May 2021,

loanDepot immediately sued. (*Id.* at ¶ 34.) During failed settlement negotiations in November 2021,

loanDepot's General Counsel called CrossCountry "an adversary to focus on." (*Id.*) As evidence of

loanDepot's unlawful actions continued to come to light in the fall of 2021, it began laying off

thousands of employees, and many loanDepot employees sought refuge at CrossCountry. (*Id.* at

¶ 35.) In response, loanDepot initiated a wave of litigation and threatened litigation against

CrossCountry, including this action, in an effort to harass CrossCountry, discourage it from lawfully

recruiting loanDepot employees, and intimidate its employees from seeking better employment

opportunities elsewhere. (*Id.* at ¶ 52.) loanDepot abused the process of this Court by, among other

things, seeking an overbroad TRO to restrain CrossCountry and its new employees from accessing

and using basic customer contact information. (*Id.* at ¶ 53.) But at all times loanDepot knew that

such information was not a trade secret, and thus not a proper basis for a TRO, as evidenced by

several key facts that loanDepot knowingly omitted from its pleading and its TRO application:

- loanDepot requests the exact same basic customer contact information when it hires new loan officers, as shown by the checklist titled "Marketing Get Started Checklist!" it sends to new hires, in which it asks for a "Database" of "Past/Current Client[s], B2B/Referral Contacts, Excel preferred" (*id.* at ¶ 55, Exhibit 1);
- loanDepot entered into employment agreements, including with many of the Individual Defendants in this case, that for years allowed those employees to retain and use basic customer contact information when they left loanDepot for other jobs (*id.* at ¶¶ 56–57);
- loanDepot's own counsel has admitted in another case that basic customer contact information is not a trade secret (*id.* at ¶¶ 58–59); and
- loanDepot requests as a prophylactic measure written acknowledgements from new hires stating that basic customer contact information is "public information" (*id.* at ¶ 60).

In light of these facts, among others pleaded in the Counterclaims, CrossCountry has alleged that

loanDepot's use of this Court's process to seek an overbroad TRO prohibiting the use of basic

customer information sought a collateral objective—unfairly restraining competition from

CrossCountry. (*Id.* at ¶ 77–81.) This improper objective is further illustrated by the statement from

loanDepot's own former CEO on a nationwide conference call with branch managers in late

2021/early 2022 that he would sue any loanDepot employee who decided to resign. (*Id.* at ¶ 52.) This lawsuit and the subsequent abuse of process is loanDepot making good on that promise.

## LEGAL STANDARD

When considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court "is required to accept as true the facts alleged in the complaint, consider those facts in the light most favorable to the plaintiff, and determine whether the complaint sets forth a plausible basis for relief." *Galper v. JP Morgan Chase Bank, N.A.*, 802 F.3d 437, 443–44 (2d Cir. 2015) (citations omitted). Under that standard, "[a] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Starr v. Sony BMG Music Ent.*, 592 F.3d 314, 322 (2d Cir. 2010) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). Thus, to survive a motion to dismiss, a complaint need only "allege a plausible set of facts sufficient 'to raise a right to relief above the speculative level.'" *Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86, 91 (2d Cir. 2010); *see also Arista Records LLC v. Doe 3*, 604 F.3d 110, 120–21 (2d Cir. 2010) (rejecting contention that a pleader is required to plead "specific evidence or extra facts beyond what is needed to make the claim plausible"). Further, allegations "upon information and belief" satisfy the plausibility standard when "facts are peculiarly within the possession and control of the defendant." *Arista Records*, 604 F.3d at 120.

## CROSSCOUNTRY HAS SUFFICIENTLY PLEADED ALL OF THE ELEMENTS OF AN ABUSE-OF-PROCESS CLAIM

Abuse of process is "the misuse or perversion of regularly issued legal process for a purpose not justified by the nature of the process." *Bd. of Educ. v. Farmingdale Classroom Teachers Assn.*, 343 N.E.2d 278, 282–83 (N.Y. 1975). In New York, a claim of "abuse of process has three essential elements: (1) regularly issued process, either civil or criminal, (2) an intent to do harm without excuse or justification, and (3) use of the process in a perverted manner to obtain a collateral objective." *Bright View Trading Co. v. Park*, No. 03-cv-2330 (HB), 2004 WL 2071976, *6 (S.D.N.Y.

3

Sept. 16, 2004) (quoting *Curiano v. Suozzi*, 469 N.E.2d 1324, 1326 (N.Y. 1984)). CrossCountry

pleaded each element with ample factual support rising above the speculative level.

## I.     CrossCountry Pleads loanDepot's Use of Regularly Issued Legal Process.

There can be no question that CrossCountry has pleaded loanDepot's use of process.

"Process" is "a direction or demand that the person to whom it is directed shall perform or refrain

from the doing of some described act." *Backer v. Cooperatieve Rabobank U.A.*, 338 F. Supp. 3d 222,

232 (S.D.N.Y. 2018) (citation omitted); *see also Cook v. Sheldon*, 41 F.3d 73, 80 (2d Cir. 1994) (citation

omitted) ("legal process means that a court issued the process, and the plaintiff will be penalized if

he violates it"). CrossCountry sufficiently pleaded this element by alleging that loanDepot obtained

an improperly broad TRO that prohibits CrossCountry from using basic customer contact

information that certain loan officers developed before and during their employment at loanDepot.

In its Motion, loanDepot concedes that the "TRO constitutes 'process' issued by this

Court," but argues—without citing a single authority—that the first element still is not met because

the TRO is not an "unlawful interference with one's person or property." (MTD at 6.) This same

argument has been routinely rejected by courts that have consistently held that TROs and other

injunctive relief constitute "process" for an abuse of process claim. *See Roelcke v. Zip Aviation, LLC*,

571 F. Supp. 3d 214, 233–34 (S.D.N.Y. 2021) (finding a protective order to be "process," and citing

to cases finding TROs to be "process"); *Dixon v. Roy*, 873 N.Y.S.2d 233 (Table) (N.Y. Sup. Ct. 2008)

(finding that issuance of a TRO satisfies the first element of an abuse of process claim); *El Greco

Leather Prod. Co., Inc. v. Shoe World, Inc.*, 623 F. Supp. 1038, 1045 (E.D.N.Y. 1985) (holding that

"wrongfully obtaining a temporary restraining order by misleading" the court sufficiently "alleged

the first two elements" of an abuse of process claim). Indeed, the definition of "process" is almost

exactly the same as the definition of injunctive relief. *Compare Backer*, 338 F. Supp. 3d at 232 (process

is a "direction or demand that the person to whom it is directed shall perform or refrain from the

doing of some described act"), *with In re New York Methodist Hosp.*, 885 N.Y.S.2d 392, 396 (N.Y. Sup. Ct. 2009) ("An injunction is a directive of the court requiring a person to refrain from certain behavior or in the case of mandatory injunctions demanding that a person perform certain acts") (citation omitted)). Thus, CrossCountry sufficiently pleaded interference with its "person or property" by alleging loanDepot sought and obtained a TRO so broad in scope that it also restrained CrossCountry from using basic customer contact information that is not, and cannot be, loanDepot trade secrets or confidential information. (Countercl. ¶ 70.)

loanDepot's attempt to distinguish *Roelcke*, cited at paragraphs 68–69, 77 of CrossCountry's Counterclaims, is pure sophistry. loanDepot argues *Roelcke* is inapposite because the legal process at issue in that case affirmatively prohibited the defendant from being in physical proximity to, or communicating with, the plaintiff, and ordered the surrender of the defendant's firearms. (MTD at p. 7.) But this case involves a TRO that affirmatively prohibits CrossCountry and its employees from accessing basic customer contact information that they developed and were told by loanDepot belonged to them, and that CrossCountry asked those employees to upload to its Customer Relationship Management database. By its terms, the TRO restrains and interferes with CrossCountry's use of *property* that it lawfully acquired—*i.e.*, its employees' basic customer contact information.[1] This is more than sufficient to constitute process. *El Greco*, 623 F. Supp. at 1045 (TRO sufficient for "process" because it compelled party to discontinue sale of product).

Lastly, loanDepot's argument that the Court's issuance of a TRO creates a presumption of

---

[1] loanDepot insists that such information was not CrossCountry's property because that information "indisputedly [sic] belonged to loanDepot . . . which loanDepot vigorously contends CrossCountry unlawfully required." (MTD at p. 7.) But that is a factual dispute at the heart of this case. The motion-to-dismiss standard does not allow loanDepot to insert its own facts (which CrossCountry disputes) into the counterclaims. *In re Mirena IUD Prod. Liability Litig.*, 29 F. Supp. 3d 345, 350 (S.D.N.Y. 2014) ("If matters outside the pleadings are presented in a motion to dismiss, those matters must [] be excluded . . . ."); *In re Celsius Network, LLC*, No. 22-10964 (MG), 2022 WL 17541051 (S.D.N.Y. Bank. Dec. 8, 2022) (holding that a defendant's argument in a motion to dismiss that relied on facts outside the complaint was "clearly impermissible" especially since they "directly contradict" allegations in the complaint). Instead, this Court must accept CrossCountry's factual allegations as true and CrossCountry has alleged that this basic customer contact information does not belong to loanDepot.

"probable cause" that somehow negates CrossCountry's pleading improperly conflates an abuse-of-process claim with a malicious-prosecution claim. "[A]buse of process is distinguished from malicious prosecution . . . in that want of probable cause is not an essential element." *Paul v. Fargo*, 84 A.D. 9, 15 (N.Y. App. Div. 1903); *see* 86 N.Y. Jur. 2d Process and Papers § 161 ("In an action for malicious prosecution, it is part of the cause of action that there was no probable cause for the prosecution while in an action for abuse of process, it is not necessary to allege or prove lack of probable cause.") (collecting cases). All of loanDepot's cases on this point involve discussions of malicious prosecution, not abuse of process, and are therefore inapposite. *See Hornstein v. Wolf*, 67 N.Y.2d 721 (1986) ("*[t]he cause of action for malicious prosecution* is defective because of the failure specifically to plead facts sufficient to overcome the presumption of probable cause for the prior temporary restraining orders") (emphasis added); *Goldberg v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. 97-cv-8779 (RPP), 1998 WL 321446, *7 (S.D.N.Y. June 18, 1998) ("The granting of the TRO creates a presumption of probable cause. Probable cause is an absolute protection *against an action for malicious prosecution*.") (emphasis added). Where courts have discussed probable cause in the context of an abuse-of-process claim, it has either been in conjunction with a malicious prosecution claim or there is other context grounded in criminal law (*e.g.,* in connection with abuse of process arising from criminal investigations under § 1983 claims). *See Savino v. City of New York*, 331 F. 3d 63, 77 (2d Cir. 2003) ("Malicious abuse of criminal process also supports liability under §1983"). Thus, a "presumption of probable cause" is irrelevant here and it would do nothing to negate the claim. *See Pagliarulo v. Pagliarulo*, 30 A.D.2d 840, 841 (N.Y. App. Div. 1968) ("It is irrelevant whether reasonable grounds existed for the use of the process"). In any event, CrossCountry pled in extensive detail that the TRO was granted under false pretenses, since loanDepot misrepresented its own treatment of customer contact information as a trade secret and it was issued before any discovery on the issue was conducted. (Countercl. ¶¶ 53–62.)

6

## II.     CrossCountry Pleads Intent to Do Harm Without Excuse or Justification.

The second element of an abuse-of-process claim requires that loanDepot was "motivated by an intent to harass and to injure." *Farmingdale*, 343 N.E.2d at 283. loanDepot does not dispute that CrossCountry pleaded this element, conceding that "CrossCountry pontificates at length about loanDepot's 'animosity' toward CrossCountry." (MTD at 8.) But CrossCountry has done far more than "pontificate"; it has pleaded specific and detailed factual allegations about loanDepot's intent to harm CrossCountry as a result of CrossCountry's rejection of loanDepot's merger proposal, including extensive factual context showing the importance of that merger proposal to loanDepot, Hsieh's personal involvement in the illegal conduct that created the need for loanDepot's merger proposal, more than enough factual matter to reasonably infer that CrossCountry's spurning of that proposal gave rise to deep animosity by Hsieh and loanDepot towards CrossCountry, and factual allegations that loanDepot indeed sought to discourage CrossCountry from lawfully recruiting loanDepot employees and to intimidate loanDepot's own employees from seeking employment at CrossCountry. (Countercl. ¶¶ 15–36, 52, 71–75.) CrossCountry also factually alleged loanDepot's:

- retaliatory targeting of CrossCountry employees to misappropriate information and divert customers (*id.* ¶¶ 37, 39–40, 72);
- declaration that CrossCountry was an "adversary to focus on" (*id.* ¶¶ 34, 72);
- threat to sue every loan officer that leaves to prevent even further decline of the company (*id.* ¶¶ 48, 52, 72); and
- request in the Chicago Action of a preliminary injunction that includes a nationwide hiring freeze (*id.* ¶¶ 65, 72).

To the extent that loanDepot has a response to any of this, it is to argue that malicious motive alone does not give rise to a claim for abuse of process. (MTD at p. 8.) But that is a mere truism. Courts that note that "malicious motive" *alone* is not sufficient to state an abuse of process claim state that because the ***third element*** requires more than a motive; namely, an improper purpose. That is, malicious motive is relevant to the second element, while improper purpose is relevant to the third. *Hoffman v. Town of Southampton*, 893 F. Supp. 2d 438, 448 (E.D.N.Y. 2012)

7

(distinguishing second element of "malicious motive" with third element of "improper purpose").

Here, there is no dispute that CrossCountry has adequately pleaded the second element.

## III.   CrossCountry Pleads That loanDepot Used Process In a Perverted Manner to Obtain a Collateral Objective.

The final element of an abuse-of-process claim requires that the "defendant must be seeking some collateral advantage or corresponding detriment to the plaintiff which is outside the legitimate ends of the process." *Farmingdale*, 343 N.E.2d at 283. While abuse of process will not lie when process is used for its intended purpose, "[w]here process is manipulated to achieve some collateral advantage, whether it be denominated extortion, blackmail or retribution, the tort of abuse of process will be available to the injured party." *Id.* at 283. A collateral objective includes any purpose other than the legitimate ends of the process. *See, e.g.*, *Roelcke v. Zip Aviation, LLC*, No. 15-cv-6284 (DAB), 2019 WL 10856680, *6 (S.D.N.Y. Jan. 8, 2019) (finding economic harm, damage to reputation, and harassment could be collateral objectives for abuse-of-process claim); *Marwood Mech., Inc. v. Davis & Warshow, Inc.*, 50 A.D.2d 900, 900 (N.Y. Sup. Ct. 1975) (goal to damage the plaintiff's business constitutes a collateral objective).

Here, CrossCountry has alleged that, through misrepresentation and omission of key details, loanDepot obtained an overbroad TRO with the collateral objective to improperly prevent CrossCountry from using lawfully acquired customer contact information to compete with loanDepot for revenue-generating business and to intimidate loanDepot's employees from joining CrossCountry. (Countercl. ¶¶ 3–7, 53–65, 78–80.) A jury would be justified in finding based on these allegations that loanDepot's true purpose in seeking the TRO was not the protection of its "trade secrets," but to prevent CrossCountry from competing fairly in the mortgage loan industry. That collateral objective to cause economic harm to CrossCountry is more than sufficient at the pleading stage. *See Roelcke*, 2019 WL 10856680, at *6 (denying motion to dismiss because "Defendants have plausibly alleged that Plaintiff's collateral objectives were to cause economic harm"); *Roelcke*, 571 F.

8

Supp. 3d at 234 (denying summary judgment because "[i]f a jury credits [defendant's] version of events and discredits plaintiff's, then a jury may also reasonably conclude that the plaintiff had no legitimate justification to seek the orders of protection"); *see also Farmingdale*, 343 N.E.2d at 283 (abuse-of-process claim was sufficiently pleaded where allegations stated that the purpose of issued subpoenas was to inflict economic harm); *Schulman v. Anderson Russell Kill & Olick, P.C.*, 458 N.Y.S.2d 448, 455 (N.Y. Sup. Ct. 1982) (denying summary judgment because a jury could find that defendant used discovery process to obtain a client list in order to contact clients and harm plaintiff's business even though the list was obtained through a discovery order). This is especially true where, as here, loanDepot's collateral objective in seeking an overbroad TRO is "peculiarly within the possession and control of [loanDepot]." *Arista Records*, 604 F.3d at 120.

loanDepot cites a slew of cases to assert that the TRO was used for its intended purpose. All of those cases, however, involve situations where the party asserting abuse of process merely alleged that the process was used for its intended purpose and failed to allege some other collateral purpose. *See Cohen v. G&M Realty, L.P.*, No. 13-cv-05612 (FBRLM), 2017 WL 1208416, *4 (E.D.N.Y. Mar. 31, 2007) (denying abuse of process claim where improper purpose was alleged to be the preservation of artwork and the TRO and preliminary injunction sought the preservation of the artwork); *Klass v. Frazer*, 290 F. Supp. 2d 425, 427 (S.D.N.Y. 2003) (dismissing abuse of process claim because there was "no allegation of any improper usage of the process to obtain a collateral objective after it was issued"); *Beezhold v. Allegiance Healthcare Corp.*, No. 99-cv-0299 (WHP), 2000 WL 1092886, *4 (S.D.N.Y. Aug. 4, 2000) (dismissing abuse of process claim where the alleged collateral objective was nothing "other than obtaining testimony and documents"); *Beauty USA, Inc. v. Chin Hong Luo*, No. 11-cv-5349 (LAK), 2011 WL 4952658, *1 (S.D.N.Y. Oct. 13, 2011) (dismissing abuse of process claim based only on the filing of a complaint); *Butler v. Ratner*, 210 A.D.2d 691, 691 (N.Y. App. Div. 1994) (dismissing abuse process claim because process at issue sought to restrain party

from certain conduct which was also the collateral purpose alleged). Here, by contrast, CrossCountry plainly alleges that the TRO was *not* used for its intended purpose. Rather, loanDepot's purpose in seeking the overbroad TRO was to prevent CrossCountry from lawfully competing for business and to chill loanDepot's employees from joining CrossCountry—not to protect supposed trade secrets as loanDepot claims—and the issuance of the TRO in fact has prevented "CrossCountry from using lawfully acquired customer contact information to generate business and revenue from those customers," and "wrongfully chilled CrossCountry from lawfully recruiting and hiring employees from loanDepot in the highly competitive labor environment in the mortgage industry, depriving CrossCountry of revenue-generating employees." (Countercl. ¶¶ 53, 78–81, 84.)[2]

*Farmingdale* is on point. In that case, the defendant teacher's union issued 87 subpoenas requiring teachers to appear at the first day of a hearing over a teacher's strike. 343 N.E.2d at 280. The school district alleged abuse of process, arguing the tactic had the same effect as a teacher's strike. *Id.* The New York Court of Appeals denied the union's motion to dismiss, finding that "an allegation that defendants subpoenaed 87 persons with full knowledge that they all could not and would not testify and that this was done maliciously with the intent to injure and to harass plaintiff spells out an abuse of process." *Id.* at 283. Similarly here, CrossCountry has alleged that loanDepot used this Court's process to harm CrossCountry by seeking and obtaining an overbroad TRO to prohibit CrossCountry from using basic customer contact information that loanDepot knows is not a trade secret and to chill CrossCountry's recruitment efforts by threatening loanDepot's employees that they will be sued and prevented from using their contact lists if they join a competitor.

## <u>CONCLUSION</u>

For these reasons, dismissal of the abuse of process claims should be denied.

---

[2] It is also axiomatic that, at the pleading stage, loanDepot cannot obtain a dismissal by nakedly asserting in its brief that "any processes issued were used for their intended purpose." (Mot. at 9.)

Dated: April 11, 2023                    Respectfully submitted,

                                         /s/ *Michael A. Platt*
                                         Jennifer L. Del Medico
                                         JONES DAY
                                         250 Vesey Street
                                         New York, New York 10281
                                         Telephone: (212) 326-3939
                                         Facsimile: (212) 755-7306
                                         jdelmedico@jonesday.com

                                         Michael A. Platt (admitted *pro hac vice*)
                                         JONES DAY
                                         North Point
                                         901 Lakeside Avenue
                                         Cleveland, Ohio 44114
                                         Telephone: (216) 586-7221
                                         Facsimile: (216) 579-0212
                                         maplatt@jonesday.com

                                         Brent D. Knight (admitted *pro hac vice*)
                                         JONES DAY
                                         110 N. Wacker Drive
                                         Suite 4800
                                         Chicago, Illinois 60606
                                         Telephone: (312) 782-3939
                                         Facsimile: (312) 782-8585
                                         bdknight@jonesday.com

                                         Enrique A. Lemus (admitted *pro hac vice*)
                                         JONES DAY
                                         2727 North Harwood Street
                                         Dallas, Texas 75201
                                         Telephone: (214) 969-4877
                                         Facsimile: (214) 969-5100
                                         elemus@jonesday.com

                                         George P. Rae-Grant (admitted *pro hac vice*)
                                         JONES DAY
                                         100 High Street, 21st Fl.
                                         Boston, MA 02110-1781
                                         Telephone: (617) 449-6930
                                         Facsimile: (617) 449-6999
                                         graegrant@jonesday.com

                                         *Attorneys for Defendant CrossCountry Mortgage, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 11, 2023, I caused a copy of the foregoing to be filed with the Clerk of the Court through the CM/ECF system, which will provide notice of the filing to all counsel of record.

*/s/ Michael A. Platt*
Michael A. Platt

*One of the Attorneys for Defendant CrossCountry Mortgage, LLC*