UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LOANDEPOT.COM, LLC,<br><br>                             Plaintiff,<br><br>-against-<br><br>CROSSCOUNTRY MORTGAGE, LLC, et al.,<br><br>                             Defendants. | 22-cv-5971 (AS)<br><br>MEMORANDUM OPINION<br>AND ORDER |

ARUN SUBRAMANIAN, United States District Judge:

Plaintiff loanDepot.com, LLC, has sued two dozen former employees and CrossCountry Mortgage, LLC (CCM). Dkt. 179. CCM and some of the former-employee defendants brought counterclaims against loanDepot. Dkts. 207–13. loanDepot moves to compel arbitration as to the counterclaims brought by Scott Bonora, Emeline Ramos, Ilya Vaysberg, Anthony Ayala, and Faheem Hossain (the Individual Defendants). Dkt. 394. For the reasons below, loanDepot's motion is GRANTED.

## BACKGROUND

### I. Factual Background

loanDepot is a mortgage lender. Am. Compl. ¶ 2, Dkt. 179. Its chief competitor is CCM. *Id.* loanDepot claims that CCM "improperly poached" 32 loanDepot employees, including employees who took loanDepot's trade secrets and proprietary customer information with them. *Id.* loanDepot claims that CCM is "actively using this information to capture loanDepot business and customer relationships." *Id.* Among the "poached" employees are the former-employee defendants, who all voluntarily resigned from loanDepot between February and May 2022 to work for CCM. ¶¶ 19–43.

The Individual Defendants signed arbitration agreements while employed at loanDepot. Dkts. 402-1 to -5. The agreements all state that the employee must arbitrate any "Claims" against loanDepot. *Id.* The agreements define "Claims" as "all past, present, [and] future claims, including any currently pending litigation" against loanDepot for, among other things, "fraud," "misrepresentation," "breach of contract/covenant," "wage and hour claims," and violations of "any federal, state or other government constitution, statute, ordinance or regulation." *Id.*

The agreements also incorporate by reference the JAMS Employment Arbitration Rules & Procedures. *Id.* Those rules state that "[j]urisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought, and who are proper Parties to the Arbitration, shall be submitted to and ruled

on by the Arbitrator." JAMS Emp. Arb. R. 11(b). The rules further state that "[a]ny recourse by a Party to a court for interim or provisional relief shall not be deemed incompatible with the agreement to arbitrate or a waiver of the right to arbitrate." JAMS Emp. Arb. R. 24(e).

## II. Procedural History

In July 2022, loanDepot sued CCM for monetary damages and injunctive relief under the federal Defend Trade Secrets Act and state common law. Dkt. 1. loanDepot also sought injunctive relief against eleven former loanDepot employees, including Bonora and Ramos. *Id.* On October 3, 2022, Ramos brought counterclaims against loanDepot for unpaid overtime wages under New York Labor Law and for breach of contract. Dkt. 109. Bonora brought counterclaims under the Lanham Act and New York deceptive-practices law. Dkt. 111. On October 24, 2022, loanDepot requested a pre-motion conference so that it could move to compel arbitration as to these counterclaims. Dkt. 119.

loanDepot also filed an amended complaint, which added as defendants additional former loanDepot employees—namely, Vaysberg, Ayala, and Hossain. Dkt. 118. Claims against the Individual Defendants were again limited to injunctive relief. On December 27, 2022, the Individual Defendants filed answers to the amended complaint and counterclaims against loanDepot. Dkts. 207–13. Ramos again brought claims for unpaid overtime wages and breach of contract. Dkt. 212. Ayala, Bonora, Hossain, and Vaysberg brought Lanham Act and deceptive practices claims. These claims relate to marketing emails loanDepot sent to customers from Ayala, Bonora, Hossain, and Vaysberg's former loanDepot email addresses after they had left loanDepot and joint CCM. *See* Dkts. 208–11. On January 13, 2023, loanDepot filed a pre-motion letter regarding its anticipated motion to dismiss the counterclaims filed by CCM, Ramos, and a former-employee defendant who never signed an arbitration agreement. Dkt. 215. In the pre-motion letter, loanDepot indicated that it intended to move to compel arbitration of the counterclaims filed by the Individual Defendants. *Id.* at 2 n.2.

loanDepot moved for a preliminary injunction on February 21, 2023. Dkt. 241. In addition, after a pre-motion conference, loanDepot filed a motion to compel arbitration on March 14, 2023. Dkts. 225, 294. The preliminary injunction was granted on June 8, 2023. Dkt. 374. However, the motion to compel arbitration was denied without prejudice and the case was stayed so the parties could engage in mediation. Dkt. 379. The September 2023 mediation failed to resolve this case and loanDepot renewed its motion. Dkt. 390, 394. On September 12, 2023, this case was reassigned to me. Dkt. 391.

## LEGAL STANDARD

Section 4 of the Federal Arbitration Act empowers a party to an arbitration agreement to petition a district court "for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. "The party seeking to compel arbitration bears an initial burden of demonstrating that an agreement to arbitrate was made." *Zachman v. Hudson Valley*

*Fed. Credit Union*, 49 F.4th 95, 101–02 (2d Cir. 2022). "This burden does not require the moving party to show that the agreement would be enforceable—only that an agreement to arbitrate existed." *Id.* at 102. "Once the existence of an agreement to arbitrate is established, the burden shifts to the party seeking to avoid arbitration to 'show[ ] the agreement to be inapplicable or invalid.'" *Id.* (quoting *Harrington v. Atl. Sounding Co.*, 602 F.3d 113, 124 (2d Cir. 2010)).

"[T]he federal policy in favor of arbitration requires that 'any doubts concerning the scope of arbitrable issues' be resolved in favor of arbitration." *Shaw Grp. Inc. v. Triplefine Int'l Corp.*, 322 F.3d 115, 120 (2d Cir. 2003) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983)). But this policy favoring arbitration "does not authorize federal courts to invent special, arbitration-preferring procedural rules." *Morgan v. Sundance, Inc.*, 596 U.S. 411, 418 (2022). Instead, "a court must hold a party to its arbitration contract just as the court would to any other kind." *Id.*

## DISCUSSION

loanDepot seeks to compel arbitration of the counterclaims brought by the Individual Defendants. loanDepot has satisfied its initial burden of showing the existence of an arbitration agreement with each of the five defendants, by attaching the signed agreements to its motion. *See* Dkts. 402-1 to -5. The Individual Defendants say that loanDepot waived its right to arbitrate. They also argue that the arbitration agreements do not cover Ayala, Bonora, Hossain, and Vaysberg's counterclaims or are otherwise invalid with respect to those claims. The Court disagrees and grants loanDepot's motion to compel.

### I. Waiver

The Individual Defendants argue that by litigating in this Court, loanDepot has waived its right to arbitrate their counterclaims. loanDepot notes that it sought only preliminary injunctive relief as to these defendants in this Court and has always indicated that it would pursue final relief with an arbitrator. Dkt. 395 at 8–9. loanDepot argues that its agreements with the Individual Defendants permitted loanDepot to pursue interim injunctive relief in court, so nothing loanDepot has done can be deemed a waiver of its right to pursue arbitration with respect to their counterclaims. *See Benihana, Inc. v. Benihana of Tokyo, LLC*, 784 F.3d 887, 894–95 (2d Cir. 2015) ("Where the parties have agreed to arbitrate a dispute, a district court has jurisdiction to issue a preliminary injunction to preserve the status quo pending arbitration."); JAMS Emp. Arb. R. 24(e) ("Any recourse by a Party to a court for interim or provisional relief shall not be deemed incompatible with the agreement to arbitrate or a waiver of the right to arbitrate.").

The Individual Defendants respond that the parties have engaged in "significant regular discovery" and loanDepot has continued "pursuing discovery against the Individual Defendants" even though "the preliminary injunction has already been entered." Dkt. 403 at 4–5. They also argue that they "have produced more than 5,500 documents (approximately 18,000 pages),"

3

"produced ten individuals for deposition," and devoted over 1,900 attorney hours litigating this case. *Id.* at 7–8.

The Supreme Court recently overruled part of the Second Circuit's test for analyzing waiver of an arbitration agreement. *See Morgan*, 596 U.S. at 418. Since that decision, some courts in this circuit evaluate arbitration waiver as a standard contractual waiver issue. *See, e.g.*, *Deng v. Frequency Elecs. Inc.*, 2022 WL 16923999, at *6 (E.D.N.Y. Nov. 14, 2022). Others consider two factors: "(1) the time elapsed from when litigation was commenced until the request for arbitration; and (2) the amount of litigation to date, including motion practice and discovery." *Poletti v. Pepsi-Cola Bottling Co. of N.Y., Inc.*, 2023 WL 5769498, at *4 (S.D.N.Y. Sept. 6, 2023) (citation omitted). Still others take a combined approach. *See, e.g.*, *Flores v. Nat'l Football League*, 2023 WL 2301575, at *8 (S.D.N.Y. Mar. 1, 2023). Regardless of the standard, the Court finds that loanDepot has not waived its right to enforce the arbitration agreement.

First, loanDepot has promptly and repeatedly sought to enforce the arbitration agreement. Ramos and Bonora first asserted counterclaims on October 3, 2022, Dkts. 109, 111, and loanDepot requested a pre-motion conference so that it could move to compel arbitration as to these counterclaims on October 24, 2022, Dkt. 119. After loanDepot amended its complaint, the remaining Individual Defendants filed their counterclaims on December 27, 2022. *See* Dkts. 208–12. On January 13, 2023, loanDepot filed a pre-motion letter regarding its anticipated motion to dismiss the counterclaims filed by CCM, Ramos, and a former employee defendant who never signed an arbitration agreement. Dkt. 215. In the pre-motion letter, loanDepot indicated that it intended to move to compel arbitration of the counterclaims filed by the Individual Defendants. *Id.* at 2 n.2. A pre-motion conference was held before Judge Schofield, who ordered that loanDepot file a motion to compel no later than March 14, 2023. Dkt. 225. loanDepot complied with this deadline. Dkt. 294. Soon after the motion was fully briefed, it was denied without prejudice and the case was stayed so the parties could engage in mediation. Dkt. 379. The September 2023 mediation failed to resolve this case and loanDepot renewed its motion less than one month later. Dkt. 390, 394. So even though the case has been pending for over a year, loanDepot immediately and repeatedly requested arbitration. *See Poletti*, 2023 WL 5769498, at *4 (finding that a one-year delay did not constitute waiver and collecting similar cases).

Second, although it seems like there has been considerable discovery in this case, it is not clear how much of that discovery is related to claims subject to the arbitration agreement. As loanDepot argues, it was permitted to pursue preliminary injunctive relief in federal court, despite the arbitration agreement. *See Benihana, Inc.*, 784 F.3d at 894–95. And the preliminary injunction has consumed most of this litigation—the preliminary injunction motion was not fully briefed until May 2023, two weeks before the case was stayed for a global mediation until September 2023. *See* Dkts. 358, 379. The only discovery that the Individual Defendants specifically identify as occurring after the preliminary injunction issued is based on loanDepot's statement in a status letter to the Court that it "has four noticed depositions remaining yet to be taken." Dkt. 403 at 5

(quoting Dkt. 392 at 3). But in the same status letter, loanDepot stated that it had previously "filed a motion to compel arbitration of the counterclaims brought by certain Individual Defendants" and "intend[ed] to renew" that motion. Dkt. 392 at 3. In any event, this isolated statement about pending depositions does not indicate who the deponents are or the topic of the depositions. In addition, three of the former-employee defendants who received loanDepot's document requests are not subject to arbitration agreements. *See* Dkt. 395 at 2 n.1. On this record, it is not apparent that substantial discovery has been conducted that relates exclusively to claims subject to arbitration. *Lawrence v. NYC Med. Prac., P.C.*, 2023 WL 4706126, at *16 (S.D.N.Y. July 21, 2023) (finding that "amount of litigation to date . . . weighs against a finding of waiver" despite plaintiffs argument that "there has been a significant amount of motion practice" because most of the discovery was related to class certification and "additional motion practice or discovery that occurred after class certification . . . largely reflected the Court's schedule in delaying Defendants' motion to compel arbitration").

Finally, none of loanDepot's actions demonstrate "a clear manifestation of an intent . . . to relinquish [a] known right." *Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J.*, 448 F.3d 573, 585 (2d Cir. 2006) (citation omitted). To the contrary, as the litigation history of this case makes clear, the Individual Defendants have been on notice of loanDepot's intent to move to compel arbitration from nearly the moment the counterclaims were filed. In addition, the JAMS Employment Arbitration Rules & Procedures incorporated into the arbitration agreements note that "[a]ny recourse by a Party to a court for interim or provisional relief shall not be deemed incompatible with the agreement to arbitrate or a waiver of the right to arbitrate." JAMS Emp. Arb. R. 24(e). So loanDepot's behavior has been consistent with a desire to arbitrate certain claims.[1]

The Individual Defendants therefore have not met their burden of showing waiver, either under the two-factor waiver test or contractual waiver principles.

## II.   Enforceability

The Individual Defendants also argue that the arbitration agreements do not govern Ayala, Bonora, Hossain, and Vaysberg's counterclaims, which concern post-employment events. Dkt. 403 at 9. And if the Court finds that the arbitration agreements do cover the counterclaims, then the Individual Defendants say that the agreements are "invalid and unenforceable" because "[n]o employee would willingly agree" to such a broad arbitration agreement "unless forced to do so." *Id.* at 9–10.

---

[1] The Individual Defendants also point to the deposition testimony of loanDepot's 30(b)(6) witness, who testified that loanDepot wanted to "recover damages" against the Individual Defendants. Dkt. 411-1 at 5. His testimony does not clearly demonstrate an intent to waive arbitration. Indeed, loanDepot's complaint sought only injunctive relief against the Individual Defendants, so arbitration would be *required* to recover damages.

The Individual Defendants, however, fail to mention that the arbitration agreements incorporate JAMS Employment Arbitration Rules & Procedures. *See* Dkts. 402-1 to -5. And the JAMS Rules delegate "arbitrability disputes" regarding the "scope of the agreement" to the arbitrator. *See* JAMS Emp. Arb. R. 11(b). In light of this delegation, it is for the arbitrator—not for this Court—to decide whether the disputed counterclaims fall within the scope of the agreements. *See Contec Corp. v. Remote Sol. Co.*, 398 F.3d 205, 208 (2d Cir. 2005) ("We have held that when, as here, parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator.").

The Individual Defendants' unconscionability argument similarly fails because the question of the validity of the agreement has also been delegated to the arbitrator. *See* JAMS Emp. Arb. R. 11(b). And since the Individual Defendants do not challenge the validity of the delegation specifically, the Court is required to "leav[e] any challenge to the validity of the Agreement as a whole for the arbitrator." *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 72 (2010).

In any event, *Revitch v. DIRECTV, LLC*, 977 F.3d 713 (9th Cir. 2020)—the only case the Individual Defendants cite in support of their unconscionability argument—is inapposite. In *Revitch*, the Ninth Circuit found that an arbitration agreement between the plaintiff and AT&T did not cover claims against AT&T's affiliate, DIRECTV. *Id.* at 718. Even though the arbitration agreement covered AT&T's affiliates, DIRECTV was not an affiliate at the time the agreement was signed, and the agreement did not explicitly state that it covered future affiliates. *Id.* Here, by contrast, the Individual Defendants do not put forward any argument (nor can they) that they are being forced to arbitrate claims against a corporate entity that was unidentified at the time the agreement was signed or that their present claims somehow fall outside the clear text of the arbitration agreements. Of course, the Individual Defendants are free to present to the arbitrator any argument for unenforceability of the arbitration agreements that they may have.

6

## CONCLUSION

loanDepot's motion to compel arbitration is GRANTED. The parties are directed to submit a joint letter within one week of an arbitration decision. In addition, the Individual Defendants' motion to file a sur-reply is GRANTED; the Court considered the arguments raised in Dkt. 411-1 before this decision.

The Clerk of Court is directed to terminate Dkts. 394 and 411.

SO ORDERED.

Dated: November 13, 2023
New York, New York

ARUN SUBRAMANIAN
United States District Judge