UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LOANDEPOT.COM, LCC,<br><br>       Plaintiff,<br><br>   -against-<br><br>CROSSCOUNTRY MORTGAGE, LLC et al.,<br><br>       Defendants. | 22-cv-5971 (AS)<br><br>MEMORANDUM OPINION<br>AND ORDER |

ARUN SUBRAMANIAN, United States District Judge:

## BACKGROUND

  loanDepot is a mortgage lender. Dkt. 179 ¶ 2. loanDepot claims that CrossCountry Mortgage, LLC (CCM), its chief competitor, "improperly poached" 32 loanDepot employees, including Stuart Kolinsky. ¶¶ 2, 25. In July 2022, loanDepot sued CCM, Kolinsky, and various other former employees. Dkt. 1. loanDepot later filed an amended complaint. Dkt. 179. CCM brought counterclaims against loanDepot for abuse of process and for violations of the Lanham Act and related state laws. Dkt. 237. Kolinsky brought counterclaims against loanDepot for breach of contract and breach of the implied covenant of good faith and fair dealing. Dkt. 238. loanDepot moves to dismiss those counterclaims. For the reasons explained below, loanDepot's motion is GRANTED in part and DENIED in part.

## LEGAL STANDARD

  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted). In deciding a motion to dismiss, well-pleaded factual allegations are accepted as true, and all reasonable inferences are drawn in the non-movant's favor. *Cornelio v. Connecticut*, 32 F.4th 160, 168 (2d Cir. 2022). While detailed factual allegations are not necessary, "a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

## DISCUSSION

  **I. CCM's Counterclaims**

    A. <u>Abuse of Process</u>

  First, loanDepot moves to dismiss CCM's abuse of process counterclaim. To state a claim for abuse of process, a party must allege that the alleged tortfeasor "(1) employs regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without

excuse of justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process." *Hernandez v. United States*, 939 F.3d 191, 204 (2d Cir. 2019) (quoting *Savino v. City of New York*, 331 F.3d 63, 76 (2d Cir. 2003)).

According to CCM, loanDepot lied to obtain a TRO by falsely claiming that its customer data is a trade secret or confidential. Dkt. 237 ¶ 53.[1] CCM claims that this was done as part of a "malicious scheme to seek retribution" because CCM rejected loanDepot's 2021 merger proposal. ¶ 73. And it claims that the TRO was meant to prevent CCM from "lawfully recruiting and hiring loanDepot's loan officers," and "to improperly chill loanDepot's loan officer[s] from any desire to leave loanDepot and join CrossCountry." ¶ 78.

Even accepting as true CCM's allegations that loanDepot obtained the TRO through false allegations and did so to harm CCM's business, CCM's abuse of process claim fails. "'[T]he falsity of the allegations [used to obtain a court order] and defendant's malicious motive in making them do not, of themselves, give rise to a cause of action for abuse of process' where 'the process was both issued and used for its intended purpose.'" *Silver v. Kuehbeck*, 217 F. App'x 18, 21 (2d Cir. 2007) (quoting *Butler v. Ratner*, 619 N.Y.S.2d 871, 873 (3d Dep't 1994) (dismissing ex-wife's abuse of process claim where false allegations of abuse and harassment were used to obtain protective order for the "ulterior and illegitimate" purpose of frustrating ex-husband's lawful activities)).

Here, the TRO was "employed for the very purpose of [its] filing," *i.e.*, to temporarily enjoin CCM's use of customer information. *Id.* That the TRO had other effects, such as hindering CCM's ability to lawfully recruit loanDepot's employees or causing CCM to incur legal expenses, is not enough to sustain a claim for abuse of process. Those collateral effects are foreseeable when a TRO or other interim relief is granted by a court. And CCM has not alleged any improper use of the TRO. *See Silver*, 217 F. App'x at 21 (citing *Hauser v. Bartow*, 273 N.Y. 370, 374 (1937) ("If one resorts to legal process to have another declared incompetent, and uses it for that purpose, he does not commit the wrong, though he may be guilty of another wrong, no matter what his motives, hopes or expectations may be. But if he makes use of that process, not for the purpose of attaining its proper end, but to extort money, or to coerce action, that is a perversion of process.")).

Accordingly, the Court finds that CCM's abuse of process claim fails. loanDepot identified this deficiency in CCM's pleadings as early as January 2023. *See* Dkt. 215 at 1 ("[A]lleging retribution . . . is insufficient to state a claim."). And CCM was already given an opportunity to withdraw or replead this counterclaim. *See* Dkt. 225. Given CCM's failure to cure, the abuse of process claim is dismissed with prejudice. *See MSP Recovery Claims, Series LLC v. Hereford Ins. Co.*, 66 F.4th 77, 90 (2d Cir. 2023).

---

[1] While CCM's counterclaims allude to other forms of process—namely preliminary injunction briefing and expedited discovery, *see* Dkt. 237 ¶ 78—CCM's briefing only discusses the TRO, *see* Dkt. 406 at 4–5.

B. <u>Lanham Act and State Law Claims</u>

CCM also brings claims for false association and false advertisement under the Lanham Act, unfair competition under New York common law, and unfair business practices under the New York Deceptive Practices Act. These claims are all based on allegations that loanDepot sent blast marketing emails advertising loanDepot's services from the loanDepot email addresses of former employees after those employees had begun working for CCM. Dkt. 237 ¶¶ 44–46.

At the outset, loanDepot claims that CCM does not have statutory standing to bring either Lanham Act claim. In *Lexmark International, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014), the Supreme Court held that a plaintiff seeking to bring a claim under the Lanham Act must show: (1) that her "injury fall[s] within the 'zone of interests' protected by the Lanham Act, and (2) proximate causation." *Souza v. Exotic Island Enterprises, Inc.*, 68 F.4th 99, 118 (2d Cir. 2023). "To satisfy the first requirement, a plaintiff must demonstrate injury specifically to a 'commercial interest in reputation or sales.'" *Id*. (quoting *Lexmark*, 572 U.S. at 131–32). CCM has met this requirement, alleging that it "suffered damages" in the form of "lost revenue and profits from consumers who applied for and closed mortgage loans through loanDepot wrongly believing that Mr. Bonora, Mr. Hossain, and others were working for loanDepot rather than CrossCountry." Dkt. 237 ¶ 90. loanDepot claims that CCM's allegations are "conclusory" and based on "an unsustainable assumption." Dkt. 399 at 11. But at the motion to dismiss stage, the Court is satisfied that CCM has met its pleading obligation, even without specifically identifying borrowers by name. If CCM is unable to prove these allegations with evidence after discovery, loanDepot can renew its arguments at summary judgment.

> i. *CCM has adequately pled a claim for false association and unfair competition.*

loanDepot further argues that CCM fails to state a claim for false association. The Lanham Act "prohibits any misrepresentation, in interstate commerce, likely to cause confusion about the source or the manufacturer of a product." *Carell v. Shubert Org., Inc.*, 104 F. Supp. 2d 236, 259 (S.D.N.Y. 2000) (citing 15 U.S.C. § 1125(a)(1)(A)). CCM claims that loanDepot violated the Lanham Act by using "the name and likeness of CrossCountry employees, including Scott Bonora, Faheem Hossain, and others, in false advertisements sent to potential customers in May and July 2022," which "wrongly passed off the products and services of CrossCountry as products and services of loanDepot." Dkt. 237 ¶¶ 87–88. CCM claims that loanDepot "confused consumers as to who CrossCountry's employees are affiliated with" and consumers "applied for and closed mortgage loans through loanDepot wrongly believing that Mr. Bonora, Mr. Hossain, and others were working for loanDepot rather than CrossCountry." ¶¶ 89–90.

loanDepot claims that this false association claim should be dismissed because CCM's name and reputation were never invoked in the disputed emails and the names of the former employees were not invoked in any material way. Dkt. 399 at 12. These arguments fail.

First, there is no requirement that CCM's name or reputation be invoked for it to have a false association claim. The Lanham Act "forbids not only 'passing off,' in which A promotes A's

3

products under B's name, but also 'reverse passing off,' in which A promotes B's products under A's name." *Carell*, 104 F. Supp. 2d at 259 (citing *Waldman Publ'g Corp. v. Landoll, Inc.*, 43 F.3d 775, 780 (2d Cir. 1994)). CCM has pled a "reverse passing off" violation by alleging that loanDepot "was falsely passing off the services of Mr. Bonora and Mr. Hossain as the services of loanDepot rather than services of CrossCountry." *See* Dkt. 237 ¶ 47.

loanDepot's materiality argument similarly fails. According to loanDepot, "CrossCountry nowhere alleges *facts* supporting that the alleged use of an Individual Defendant's name in any Automated Email was material in *any consumer* choosing to close a loan." Dkt. 399 at 12. But CCM alleges that "loanDepot knew that the identity of Mr. Bonora's and Mr. Hossain's employer was material to those contacts, as it was important to the decision by customers to apply for a loan or by referral sources to refer a borrower" and that loanDepot was attempting to "influence a consumer to apply for a loan at loanDepot, or for a referral source to refer a borrower to apply for a loan at loanDepot." Dkt. 237 ¶ 96. CCM also says that loanDepot used the employees' email addresses to "obtain business from mortgage borrowers who were deceived into believing that, by clicking on the link in loanDepot's false advertisements, their mortgage loan would be handled by Mr. Bonora, Mr. Hossain, or one of the other former loanDepot employees" and that, if not for the emails, the mortgages "would have been closed by CrossCountry." ¶ 97.

loanDepot's reliance on *Rubris, Inc. v. Ankura Consulting Grp., LLC*, 2021 WL 7210782 (D.D.C. Mar. 26, 2021), is unpersuasive. There, an employer did not promptly remove the name of a former employee from its website after his departure. The website advertised a product and said the former employee could be contacted to "learn more [about] it." *Id*. at *5. The Court dismissed the former employee's false association claim because the employee failed to allege "a commercial interest in his name that could be damaged" and because "nothing about the advertisement itself gives rise to a plausible inference that [the employee's] name holds commercial value." *Id.* at *6. But there, the false association claim was brought by the former employee, and so the employee himself had to demonstrate a commercial injury, which he could not do. Here, the false association claim is brought by CCM, not Bonora or Hossain. So the question is not whether Bonora or Hossain were damaged by the false association, but whether CCM was. And CCM has pled that it lost customers based on the use of its employees' identities in these emails. Dkt. 237 ¶¶ 89–90.

At this stage, the Court is satisfied that CCM has stated a claim for false association. Again, if CCM's allegations turn out to be unsupported by the evidence, loanDepot may reprise its arguments at summary judgment. *Cf. Reed Const. Data Inc. v. McGraw-Hill Companies, Inc.*, 638 F. App'x 43, 45–46 (2d Cir. 2016) (affirming summary judgment on Lanham Act claim when "[d]iscovery revealed only one customer who arguably relied upon [defendant's] advertising in deciding between" the defendant and plaintiff).

The Court also permits CCM's unfair competition claim to move forward because the "elements of a federal trademark-infringement claim and a New York unfair competition claim are almost indistinguishable, except that New York requires an additional element of bad faith." *Kid Car NY, LLC v. Kidmoto Techs. LLC*, 518 F. Supp. 3d 740, 753 (S.D.N.Y. 2021) (quoting *Chanel,*

4

*Inc. v. Richardson*, 2018 WL 6097865, at *2 (S.D.N.Y. Nov. 20, 2018)); *see also Josie Maran Cosms., LLC v. Shefa Grp. LLC*, 624 F. Supp. 3d 281, 292 (E.D.N.Y. 2022) ("Courts in this circuit have consistently held that to establish a claim for common law unfair competition, the plaintiff must state a Lanham Act claim coupled with a showing of bad faith or intent." (cleaned up)). As explained, CCM has adequately alleged a Lanham Act violation. And CCM has alleged various facts that could support a finding of bad faith. For example, CCM alleges that loanDepot continued to send the emails months after the loan officers left CCM and after CCM sent cease-and-desist letters, and that loanDepot sent similar emails from the accounts of other loanDepot employees who also left to join CCM. Dkt. 207 ¶¶ 48–50.

> ii. *CCM has not adequately pled a claim for false advertising.*

loanDepot next argues that CCM fails to state a claim for false advertising. "[T]o constitute 'commercial advertising or promotion' under the Lanham Act, a statement must be: (1) commercial speech, (2) made for the purpose of influencing consumers to buy defendant's goods or services, and (3) although representations less formal than those made as part of a classic advertising campaign may suffice, they must be disseminated sufficiently to the relevant purchasing public." *Gmurzynska v. Hutton*, 355 F.3d 206, 210 (2d Cir. 2004) (cleaned up). CCM claims that the disputed emails constitute false advertising under the Lanham Act because they were "sent *en masse* to potential consumers" with the objective of "mislead[ing] consumers into believing that the former employees were still employed with loanDepot so that consumers would use loanDepot for their mortgage loan." Dkt. 237 ¶¶ 94–95.

loanDepot claims that CCM has not alleged any commercial advertising or promotion because "there is no allegation of advertisement to the general public" and "[m]aking allegedly false statements to a finite number of identifiable individuals does not constitute 'advertisement or promotion' for Lanham Act purposes." Dkt. 399 at 14. Here, the Court agrees. "[T]he touchstone of whether a defendant's actions may be considered 'commercial advertising or promotion' under the Lanham Act is that the contested representations are part of an organized campaign to penetrate the relevant market." *Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*, 314 F.3d 48, 57 (2d Cir. 2002). "Proof of widespread dissemination within the relevant industry is a normal concomitant of meeting this requirement." *Id.* While the emails at issue may very well constitute an organized campaign, CCM's allegations that the emails were sent to "all of Mr. Bonora's contacts" or "all of Mr. Hossain's contacts" are insufficient. Dkt. 237 ¶¶ 45–46. These allegations provide no information about the size of the market or the number of customers to receive the allegedly false advertising. *See, e.g.*, *Burton v. Label, LLC*, 344 F. Supp. 3d 680, 702 (S.D.N.Y. 2018) (dismissing false advertising claims because plaintiff "makes no attempt to define the relevant market" and does not specify how many of the 750 clients were told the false information). CCM has not identified any cases in which a court upheld a false advertising claim with no information about how widely the communications were disseminated. CCM's false advertising claim is therefore dismissed without prejudice.

> iii. *CCM has adequately pled a claim under the New York Deceptive Practices Act*

loanDepot moves to dismiss CCM's counterclaim under the New York Deceptive Practices Act, N.Y. Gen. Bus. L. § 349. "To make out a prima facie case under Section 349, a plaintiff must demonstrate that (1) the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result." *Maurizio v. Goldsmith*, 230 F.3d 518, 521 (2d Cir. 2000). First, citing its arguments for dismissal of CCM's Lanham Act claims, loanDepot states that CCM has not alleged materiality or injury. The Court rejects these arguments for the reasons stated above.

loanDepot also argues that CCM fails to demonstrate that the deceptive acts were directed at consumers. *See* Dkt. 399 at 17. But "corporate competitors . . . have standing to bring a claim under" section 349 "so long as some harm to the public at large is at issue." *Securitron Magnalock Corp. v. Schnabolk*, 65 F.3d 256, 264 (2d Cir. 1995) (citation omitted). While "the gravamen of the complaint must be consumer injury or harm to the public interest," *id.* (citation omitted), this does not require danger to the public health or safety, as loanDepot argues. For example, in *N. State Autobahn, Inc. v. Progressive Ins. Grp. Co.*, 102 A.D.3d 5 (2d Dep't 2012), the New York Appellate Division considered § 349 claims brought by companies against a group of competitors. The plaintiffs alleged that the defendants had provided customers false information about their services and plaintiffs' services. *Id.* at 9. The court found that plaintiffs had stated a prima facie claim under § 349—even though they did not "identify specific consumers who suffered pecuniary harm as a result of the allegedly deceptive conduct"—because "customers were misled into taking their vehicles from the plaintiffs to competing repair shops" and plaintiffs alleged "direct business loss of customers." *Id.* at 14, 17. Here, CCM alleges that consumers were deceived and deprived of their free choice, and as a result, CCM "lost revenue and profits from consumers who applied for and closed mortgage loans through loanDepot, wrongly believing that CrossCountry's employees were working at loanDepot rather than CrossCountry." Dk. 237 ¶ 110. The Court finds CCM's allegations sufficient at the pleadings stage.

## II. Kolinsky's Counterclaims

Kolinsky asserts counterclaims against loanDepot for breach of contract and breach of the implied covenant of good faith and fair dealing. *See* Dkt. 238. Kolinsky alleges that he entered into a "valid and enforceable Employment Agreement" with loanDepot during his employment at the company. ¶ 13. Kolinsky claims that loanDepot breached the express terms of the contract or the implied covenant in two ways. First, "[p]ursuant to the terms of his Employment Agreement with loanDepot, Kolinsky was entitled to receive sales incentives on loans he provided services for that closed within 30 days of his departure from loanDepot." ¶ 3. Kolinsky claims that he did not receive payment for at least one loan because "loanDepot intentionally pushed back the closing date" so that it "would fall outside of the 30-day window of Kolinsky's resignation." ¶ 4. Second, Kolinsky alleges that loanDepot breached the Employment Agreement by "unilaterally deciding

to deduct the cost of paying a loan processor from Kolinsky's rightful compensation under the Employment Agreement." ¶ 6.

loanDepot moves to dismiss both counterclaims. For the following reasons, loanDepot's motion is granted in part and denied in part.

### A. Sales Incentive Payments

To the extent that Kolinsky's breach of contract claim is for non-payment of sales incentives, it is dismissed. Kolinsky's contract only entitles him to payment of sales incentives for loans up to 30 days after his termination. *See* Dkt. 223 at 10. As Kolinsky concedes, the closing dates for the loans at issue fell outside of the 30-day period. Dkt. 238 ¶ 3. So Kolinsky has not identified the breach of any contractual provision. *See Wolff v. Rare Medium, Inc.*, 210 F. Supp. 2d 490, 494 (S.D.N.Y. 2002) ("[A] plaintiff must identify the specific provision of the contract that was breached as a result of the acts at issue."), *aff'd*, 65 F. App'x 736 (2d Cir. 2003); *Auerbach v. Wells Fargo Home Mortg., Inc.*, 2012 WL 1720620 (S.D.N.Y. May 16, 2012) (granting summary judgment on breach of contract claims when the contract "unambiguously and unconditionally states that employees are not entitled to commissions on loans that fund more than 30 days after that employee's termination" and so the claim failed with respect to loans funded after that date even if the "delays in the funding of various loans were 'exorbitant' and 'intentional'").

Nevertheless, Kolinsky has sufficiently alleged a breach of the implied covenant of good faith and fair dealing. New York law implies a covenant of good faith and fair dealing in all contracts. *See Sec. Plans, Inc. v. CUNA Mut. Ins. Soc.*, 769 F.3d 807, 817 (2d Cir. 2014). "Pursuant to this principle, neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Id.* (citation omitted). Under the contract Kolinsky was entitled to payment of sales incentives for loans within 30 days after his termination. *See* Dkt. 223 at 10. And Kolinsky claims that he was deprived of this right because "loanDepot acted in bad faith by intentionally pushing back the closing date of at least one such loan beyond the 30-day window of Kolinsky's resignation, for the sole purpose of depriving Kolinsky of sales incentives." Dkt. 238 ¶ 37. Kolinsky has therefore stated a claim for breach of the implied covenant.

loanDepot claims "the implied covenant cannot nullify the Plan's grant of sole discretion in the Company to award incentive payments after Kolinsky's employment termination, or the requirement that the loan must fund within 30 days, regardless of any alleged 'bad faith' in delaying the closing of the subject loan." Dkt. 399 at 22. But the contract does not give loanDepot the "sole discretion" to award these payments. Instead, loanDepot could only withhold payment if "another employee of the Company will have to perform significant work to ensure that any loans for which the application was taken by the LC are funded, that necessary procedures are followed, and that other conditions regarding the loan are satisfied." Dkt. 233 at 10. At the pleading stage, the Court is unable to determine whether loanDepot was acting within its limited discretion. Moreover, loanDepot cannot rely on the contractual condition that the "loan funds within that 30-

day period" as a basis for dismissal because Kolinsky specifically alleges that loanDepot acted in bad faith in preventing this condition. *See* Dkt. 238 ¶ 37; *see also* Restatement (Second) of Contracts § 245 (1981) ("Where a duty of one party is subject to the occurrence of a condition, the additional duty of good faith and fair dealing … may require some cooperation on his part, either by refraining from conduct that will prevent or hinder the occurrence of that condition or by taking affirmative steps to cause its occurrence.").

loanDepot also argues that Kolinsky's implied covenant claim is duplicative of his breach of contract claim. That argument fails because Kolinsky's breach of contract claim has been dismissed to the extent that it relies on non-payment of sales incentives.

### B. Deduction to Payments

loanDepot next argues that Kolinsky's claims should be dismissed to the extent that they concern improper deductions from his compensation, because Kolinsky "fails to identify the provision of his 'Employment Agreement' that loanDepot allegedly breached when it made those alleged deductions." Dkt. 399 at 23. But the employment contract sets out Kolinsky's payment structure in detail and does not provide for any deductions for a loan processor. *See* Dkt. 223 at 7–11. And loanDepot itself argues that the Court should consider the employment contract. Dkt. 399 at 19 n.5. So any deductions that contravene the payment structure outlined in the contract would constitute a breach of the contract.

loanDepot cites *Giugliano v. FS2 Cap. Partners, LLC*, 2015 WL 5124796 (E.D.N.Y. Sept. 1, 2015). But there, the Court dismissed the plaintiff's breach of contract claim because he did not allege "which provision of the Agreement he contends governs the proper method of calculating his commissions" or how defendant "allegedly failed to properly calculate his commissions." *Id.* at *11. Here, the method for calculating Kolinsky's payment structure is stated on the face of the contract, Dkt. 223 at 7–11, and Kolinsky alleges that the improper calculation was based unauthorized deductions, Dkt. 238 ¶ 26. Kolinsky has therefore adequately alleged a breach of contract based on deductions to Kolinsky's payments.

Kolinsky's implied covenant claim concerning the improper deductions fails, however. "New York law … does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same facts, is also pled." *Harris v. Provident Life & Acc. Ins. Co.*, 310 F.3d 73, 81 (2d Cir. 2002). Kolinsky argues that the implied covenant claim is pled in the alternative. "But an implied-covenant claim is not a valid alternative theory of recovery when it is based on the exact same allegations as a breach-of-contract claim, as it is here." *EFG Bank AG, Cayman Branch v. AXA Equitable Life Ins. Co.*, 309 F. Supp. 3d 89, 94–95 (S.D.N.Y. 2018) (quoting *Alaska Elec. Pension Fund v. Bank of Am. Corp.*, 175 F.Supp.3d 44, 64 (S.D.N.Y. 2016)); *see also* Dkt. 238 ¶ 26 (alleging that "loanDepot further acted in bad faith and breached Kolinsky's Employment Agreement by paying Kolinsky less than his contractually agreed to compensation"). The Court therefore dismisses Kolinsky's implied covenant claim to the extent that it is based on loanDepot's alleged deductions.

Kolinsky has not requested leave to amend, and, in any event, the Court finds that amendment would be futile because Kolinsky seeks to bring claims that are duplicative or foreclosed by the clear language of the contract. *See Nungesser v. Columbia Univ.*, 169 F. Supp. 3d 353, 373 (S.D.N.Y. 2016) ("Where a plaintiff has alleged such redundant claims and is granted leave to replead his breach of contract claim, courts have recognized that leave to amend the claim for breach of the covenant of fair dealing would be futile."); *Thompson v. Mun. Credit Union*, 2022 WL 2717303, at *9 (S.D.N.Y. July 13, 2022) ("When the plain language of a contract unambiguously forecloses a plaintiff's claim, a district court may determine that re-pleading would be futile.").

## CONCLUSION

loanDepot's motion to dismiss is granted in part and denied in part as stated above. If CCM wishes to amend its false advertising counterclaim, it may do so no later than **January 12, 2024**.

The Clerk of Court is directed to terminate the motion at Dkt. 398 and to remove the stay designation from the docket.

SO ORDERED.

Dated: December 29, 2023
       New York, New York

                                                _____
                                                ARUN SUBRAMANIAN
                                                United States District Judge