

**Littler Mendelson, P.C.**
900 Third Avenue
New York, NY  10022.3298


Miguel Lopez
212.471.4482 direct
212.583.9600 main
malopez@littler.com

March 11, 2024


**VIA ECF**

Hon. Sarah L. Cave
Daniel Patrick Moynihan Courthouse
United States Courthouse
500 Pearl Street, Room 1670
New York, NY 10007

Re:   loanDepot.com, LLC v. CrossCountry Mortgage, LLC, et al., No. 1:22-cv-05971
      Request for a Pre-Motion Discovery Conference

Dear Judge Cave:

Pursuant to Local Rule 37.2 and Rule II.C.2 of Your Honor's Individual Practices, loanDepot.com, LLC ("loanDepot") respectfully submits this request for a pre-motion discovery conference to address issues concerning CrossCountry Mortgage, LLC's ("CCM") deficient discovery responses. On February 29, 2024, the parties conferred regarding deficiencies raised by written letter. The parties continue to confer as to certain issues. This letter addresses the discovery items ripe for the Court's consideration.

**Communications concerning the recruitment of the Departed NY Employees[1]:** We ask that Your Honor compel CCM to collect and produce responsive documents located in the relevant CCM custodians' text messages, personal email and other cloud-based accounts. These documents relate to several document requests, including Regular Discovery Requests Nos. 1, 2, and 3, and Request No. 1 of loanDepot's Third Set of Requests. *See* **Ex. 1**. To date, CCM has not produced any text message communications among CCM employees about its recruitment and hiring of the Departed NY Employees, or between CCM employees and the Departed NY Employees. As to the former category, CCM's production is the ***only means*** of obtaining this highly relevant evidence. And, as to the latter category, some of these communications were produced by Departed NY Employees, but CCM has its own obligation to produce these responsive documents as well (including, critically, any that may have been deleted from the Departed NY Employees' devices, but still remain on CCM employee devices).

---

[1] Stanislav Aleshin, Keisha Antoine, Anthony Ayala, Scott Bonora, Faheem Hossain, Stuart Kolinsky, Barry Koven, Daniel Kwiatkowski, Jaroslaw Kwiatkowski, Yusheng Liu, Robert London, Enrico Martino, Daniel Meidan, Scott Nadler, Giovanni Narvaez, David Ostrowsky, Emeline Ramos, Robert Raush, Rafael Reyes, Michael Secor, Llewellyn Tejada, Ilya Vaysberg, Erika Vignola, and Yan Zheng.

littler.com

Hon. Sarah L. Cave
March 11, 2024
Page 2

That the text messages may have been sent from personal devices does not absolve CCM of its responsibility to collect all relevant communications in its employees' custody and control. This is especially true where, as here, those employees used their personal devices for business purposes (as evidenced by their text message communications with the Departed NY Employees). In *Guild Mortgage Company LLC v. CrossCountry Mortgage LLC*, 37-2022-00051488-CU-BT-CTL, a case involving similar conduct by CCM, the court even compelled production of responsive documents from the personal email account and phone of Ron Leonhardt, CCM's CEO. *See* **Ex. 2**, Jan. 24, 2024 Minute Order at 3 ("Leonhardt's personal emails and text messages are property subject to these discovery requests").

There is no questions that "employers have control over their employees and can be required to produce documents in their employees' possession." *Chevron Corp. v. Salazar*, 275 F.R.D. 437, 448 (S.D.N.Y. 2011) (collecting cases). Production is required if an employer has "access and the practical ability" to obtain the documents. *See Sunlight Fin. LLC v. Hinkle*, 2022 WL 17487686, at *8 (S.D.N.Y. Dec. 7, 2022) (ordering defendant to search and produce contents of employee's hard drive). An employer has the practical ability to obtain documents from a witness's personal account or phone if the employer has previously obtained a declaration from the witness in the litigation or produced him for deposition. *See Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Tr. Co.*, 2016 WL 5408171, at *7 (S.D.N.Y. Sept. 27, 2016). Here, there is no justification for not compelling the production of responsive documents from at least Mr. Lieberman's, Mr. Mellay's, and Mr. Reid's personal accounts and phones. Given the evidence that CCM employees used their phones to send messages relating to the recruitment of loanDepot employees, CCM has "an obligation to take affirmative steps to preserve evidence of those . . . work-related text messages." *Shim-Larkin v. City of New York*, 2019 WL 5198792, at *10 (S.D.N.Y. Sept. 16, 2019).

Indeed, certain deposition testimony suggests that CCM has not undertaken to collect its employees' text messages at all, depriving loanDepot of this critical evidence regarding CCM's recruitment and hiring of the Departed NY Employees. *See* **Ex. 3**, (Mellay) at 32:24-33:4. At least one CCM employee – Justin Lieberman – also used a personal email address for business purposes. *See* **Ex. 4**, Scott Bonora Dep. Tr. at 18:8-19:2 (identifying Justin Lieberman as the owner of personal email address used on significant recruiting email communication). As with the text messages, CCM has an obligation to collect personal email used by its employees to recruit the Departed NY Employees.

CCM's refusal to produce this basic, relevant, and responsive discovery is non-sensical. Indeed, here, CCM took the position that it was entitled to the personal emails and text messages from non-party **loanDepot** employees who are not implicated by any of the claims or defenses in this case, were **not** involved in this group departure, and who are **not even located in New York** (e.g., Messrs. Holmes and Vondra)—yet, it refuses to produce text messages and personal emails from **its own employees** who played a **central and critical role** in the recruitment, solicitation, and hiring of the Departed NY Employees who are **directly at issue here**. CCM's contradictory position should not be countenanced. CCM should also be ordered to produce information concerning whether any responsive personal text messages or personal email communications concerning the recruitment and hiring of the Departed NY Employees have been deleted since the commencement of this action.

Hon. Sarah L. Cave
March 11, 2024
Page 3

**Ron Leonhardt's Deposition:** Your Honor previously held in abeyance loanDepot's motion for leave to take a limited deposition of Mr. Leonhardt. We now renew our motion. At the discovery conference held on April 21, 2023, Your Honor stated that, before ruling on loanDepot's request, you would first need to consider what CCM's other witnesses had to say about Mr. Leonhardt, as well as the topics about which Mr. Leonhardt would be questioned. *See* ECF No. 346 at 80:22-81:10. At the conference, CCM argued that "Mr. Leonhardt does not have unique knowledge that cannot be obtained by the other people who are actually being deposed in this case: Justin Lieberman, Matthew Reid, DJ Mellay." *See id.* at 79:6-11. CCM also argued that Mr. Leonhardt "did not have any of the direct personal involvement that these other three had." *Id.* at 79:17-18. The deposition testimony of Messrs. Lieberman, Reid, and Mellay, as well as that of the Departed NY Employees, show otherwise.

Only Mr. Leonhardt can testify about his role in the Departed NY Employees' recruitment. Mr. Bonora testified that Mr. Leonhardt had been trying to recruit him since 2018. *See* **Ex. 4** (Bonora) at 45:9-17. Mr. Lieberman, as CCM's representative, testified he was unaware that Mr. Leonhardt approved the offers made to the Departed NY Employees, despite internal communications showing that he did. *Compare* **Ex. 5** (Lieberman) at 63:6-64:21, 146:24-149:16, *with* **Ex. 6** (Lieberman, Ex. 20).

Similarly, only Mr. Leonhardt can testify about how special financing positioned CCM to recruit the Departed NY Employees as part of an "inorganic" growth strategy. *See* **Ex. 7** (Lieberman Dep. Ex. 1). Mr. Lieberman, speaking as CCM's corporate representative, testified that he did not often speak to Mr. Leonhardt about recruitment, and did not know what Mr. Leonhardt's view was on growth strategy. *See* **Ex. 5** (Lieberman) at 51:1-52:17.

Finally, Mr. Leonhardt also has unique testimony about the trip that CCM organized for certain of the Departed NY Employees to visit CCM headquarters in Ohio. Mr. Leonhardt was part of an internal CCM planning email discussing what Bonora wanted the group to hear about during their visit. *See* **Ex. 8** (CCMNY_00022403). The Departed NY Employees testified that the group flew to Ohio on Mr. Leonhardt's plane. *See* **Ex. 9** (Nadler) at 30:10-31:2; **Ex. 10** (Meidan) at 59:20-25. Although Mr. Lieberman testified that Mr. Leonhardt only attended a dinner, other testimony had Mr. Leonhardt speaking and/or meeting with the group at CCM's information sessions as well. *See, e.g.*, **Ex. 9** at 30:25-31:8; **Ex. 11** (Ayala) at 80:14-81:7. This information is all relevant to loanDepot's claims against CCM for tortious interference, among other claims. The *Guild* court compelled Mr. Leonhardt's deposition testimony on this same topic (a group trip to CCM headquarters), notwithstanding his declaration in opposition, in which he stated, *inter alia*: "I recall attending one meeting with the former Guild employees before they were hired. That meeting was also attended by other CCM employees who were directly involved in the recruitment of the former Guild employees." *See* **Ex. 12** (Minute Order) at 2. Despite this declaration and deposition testimony identifying another CCM employee as the recruitment point-person, the court compelled Mr. Leonhardt's testimony. We respectfully request that this Court similarly permit loanDepot to depose Mr. Leonhardt, for up to two hours, for each of the above-referenced topics.

We thank the Court for its time and attention to these matters.

Hon. Sarah L. Cave
March 11, 2024
Page 4

Respectfully submitted,

*/s/ Miguel Lopez*

Miguel Lopez
Shareholder

ML/ck