# JONES DAY

NORTH POINT • 901 LAKESIDE AVENUE • CLEVELAND, OHIO 44114.1190

TELEPHONE: +1.216.586.3939 • FACSIMILE: +1.216.579.0212

Direct Number: (216) 586-7221
maplatt@JonesDay.com

March 20, 2024

VIA ELECTRONIC CASE FILING
Hon. Sarah L. Cave, United States Magistrate Judge
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, New York, New York 10007-1312

Re: *loanDepot v. CrossCountry Mortgage*, No. 1:22-cv-05971-AS-SLC (S.D.N.Y.)

Dear Judge Cave:

loanDepot asserts CCM must produce text messages and personal emails, even though it long ago abandoned any request for such discovery. It further renews its request to depose CCM's most senior executive, CEO Ron Leonhardt, even though its purported grounds for doing so do not come close to satisfying New York's "apex doctrine." Those purported discovery disputes, which loanDepot apparently manufactured to muddy the waters and divert attention from its refusal to produce highly relevant discovery—*see* ECF No. 445—should be rejected in their entirety.

**Text Messages and Personal Emails:** Since the outset of this case, loanDepot has known CCM's position regarding the production of text messages and personal emails. loanDepot insists on a pressing need for that discovery, and yet since **October 2022**, it knew that CCM was not going to collect and produce such documents. On October 26, 2022, CCM sent loanDepot "a comprehensive proposal with search terms, custodians, and other ESI parameters it would use to search for and review documents responsive to loanDepot's discovery requests," and listing the precise CCM email accounts to be searched (the "ESI Proposal"). ECF No. 268 at 1; ECF No. 268-1 at 1, 28-29. After nearly six weeks without a response, loanDepot sent CCM a deficiency letter on December 6, 2022, raising disputes regarding many of the **same** document requests they raise in their present motion. Ex. 1 (alleging deficiencies as to CCM's responses to nearly all of loanDepot's initial document requests, including RFP Nos. 1, 3, and 8). After that, loanDepot and CCM exchanged pages and pages of emails regarding loanDepot's demands to expand CCM's ESI Proposal. *See* ECF No. 268-3 at 1-25. But **never** throughout that entire time or correspondence did loanDepot take issue with CCM's position that a reasonable investigation would not include any text messages or personal emails of CCM employees. *See id.* Then, on March 7, 2023, loanDepot filed a letter motion to compel challenging the scope of CCM's ESI Proposal, including as to many of the same requests at issue now regarding the recruitment, hiring, and onboarding of the Individual Defendants (RFP Nos. 1 and 9), and further asked the Court to include Mr. Leonhardt as a custodian as to all its requests (but never asked for his personal texts and emails). ECF No. 260. That resulted in an Order rejecting loanDepot's request to have CCM supplement its production, and directing CCM to conduct an additional search for certain specific emails by Mr. Leonhardt. ECF No. 295. Then, on April 19, 2023, loanDepot asserted deficiencies as to CCM's responses to its Third Set of RFPs, ECF No. 331 at 3 (alleging deficiencies regarding RFP Nos. 5, 9 and 10), among other discovery disputes, ECF Nos. 314, 343, which resulted in additional Orders from this Court, ECF Nos. 320 and 348. Yet loanDepot still never raised any issue about texts or personal email. Thus, loanDepot has **already litigated the sufficiency of CCM's ESI Proposal and production**, and had ample opportunity to raise any issue regarding text messages and personal email, yet chose not to. All the

ALKHOBAR • AMSTERDAM • ATLANTA • BEIJING • BOSTON • BRISBANE • BRUSSELS • CHICAGO • CLEVELAND • COLUMBUS • DALLAS
DETROIT • DUBAI • DÜSSELDORF • FRANKFURT • HONG KONG • HOUSTON • IRVINE • LONDON • LOS ANGELES • MADRID • MELBOURNE
MEXICO CITY • MIAMI • MILAN • MINNEAPOLIS • MOSCOW • MUNICH • NEW YORK • PARIS • PERTH • PITTSBURGH • RIYADH
SAN DIEGO • SAN FRANCISCO • SÃO PAULO • SHANGHAI • SILICON VALLEY • SINGAPORE • SYDNEY • TAIPEI • TOKYO • WASHINGTON

while, loanDepot knew CCM would not be collecting text messages or personal email, and further knew that the Individual Defendants had produced 8,896 documents consisting almost entirely of text messages and personal emails, including with CCM employees. Knowing all that, loanDepot proceeded to take 13 depositions of defendants. Not until **February 22, 2024**—after CCM served discovery requests regarding loanDepot's illegal compensation practices—did loanDepot spring on CCM for the first time the present dispute. Simply put, loanDepot long ago abandoned this issue. *See Rapp v. Fowler*, 2022 WL 1214778, at *2-3 (S.D.N.Y. Apr. 25, 2022) (denying motion to compel where plaintiff had reason to know of the existence of discovery, failed to address objections to document requests before depositions, and "waited almost two full months after defendant objected to his new discovery requests to move to compel"); *see also* Fed. R. Civ. P. 26(b)(2)(C)(ii).

Additionally, loanDepot fails to offer any reason why it needs this discovery. Texts and personal email from CCM employees can already be found in the 8,896 documents produced by the Individual Defendants. loanDepot concedes this, but postulates that other communications "may have been deleted from the Departed NY Employees' devices." ECF No. 440 at 1, 2. loanDepot does not offer any reason to think that happened, nor does it point to any supposed evidence of deletions. loanDepot's "speculation is not a basis for this Court to compel discovery." *Tapjets Inc. v. United Payment Servs., Inc.*, 2020 WL 13581674, at *7 (E.D.N.Y. Sept. 17, 2020) (citations omitted). Simply put, there is no reason to believe that loanDepot's new effort to obtain texts and personal email is anything "more than merely a fishing expedition." *Gonzalez v. Allied Concrete Indus., Inc.*, 2016 WL 4444789, at *2, 4 (E.D.N.Y. Aug. 23, 2016) ("Defendants merely speculate that in light of Plaintiffs' general allegations in their [] Complaint, somehow their cell phone records for the past six years will lead to promising evidence. … [S]uch an unsupported theory is entirely too speculative to warrant a wholesale intrusion into the private affairs of the Plaintiffs.") (citations omitted). Further, asking CCM to collect communications already produced by the Individual Defendants is the essence of "unreasonably cumulative or duplicative." Fed. R. Civ. P. 26(b)(2)(C)(i).[1]

**Deposition of Ron Leonhardt:** On April 21, 2023, this Court held in abeyance the deposition of Ron Leonhardt—at CCM's request—to allow the depositions of CCM employees Justin Lieberman, DJ Mellay, and Matthew Reid, "at which point [the parties will] have a clear record" that would show "that Mr. Leonhardt does not have any unique knowledge" and "did not have any of the direct personal involvement that" those three deponents had. ECF No. 346 at 79:12-21; ECF No. 337 at 4. That record, along with the testimony of Individual Defendants, only **confirms** that Mr. Leonhardt "could contribute nothing beyond that which would be gleaned form an examination of" those employees. *M.A. Porazzi Co. v. The Mormaclark*, 16 F.R.D. 383, 383 (S.D.N.Y. 1951).

"Under th[e] [apex] doctrine, unless the executive 'has unique evidence, personal knowledge of the claims at issue,' and 'other witnesses are incapable of providing testimony about the conduct

---

[1] loanDepot claims that CCM's position is contradicted by its subpoenas to former employees in this case, which asked for texts and personal email. ECF No. 440 at 2. But CCM asked its former employees for their personal communications just like loanDepot sought such communications from the Individual Defendants; CCM has never insisted *loanDepot* search for texts and personal emails. Nor is loanDepot helped by its assertion that a California state court recently directed CCM to produce text messages and personal emails from Mr. Leonhardt. *Id.* That decision was premised on an entirely different fact record where—unlike here—Mr. Leonhardt was alleged to have been extensively involved in the recruitment of those employees, and the plaintiff had not abandoned its effort to obtain such communications.

March 20, 2024
Page 3

alleged,' executives are safeguarded from depositions." *Harapeti v. CBS Television Stations Inc.,* 2021 WL 3932424, at *2 (S.D.N.Y. Sept. 2, 2021) (citation omitted). Thus, "[w]here a party is unable to show that a high-ranking corporate official possesses knowledge that is both unique and relevant to the issues in the case, a court may prevent deposition of that official." *Guan Ming Lin v. Benihana Nat'l Corp.*, No. 10 Civ. 1335(VM)(JCF), 2010 WL 4007282, at *2 (S.D.N.Y. Oct. 5, 2010).

loanDepot asserts that "[o]nly Mr. Leonhardt can testify about his role in the Departed NY Employees' recruitment." ECF 440 at 3. loanDepot conveniently ignores that it has already obtained extensive testimony regarding CCM's recruitment efforts that unmistakably shows Mr. Leonhardt's superficial and non-unique knowledge of those circumstances. loanDepot also ignores that CCM produced Mr. Leonhardt's emails (in accordance with parameters ordered by the Court, ECF No. 295; *see also* ECF 330-9 at 3), and found only **four** unique, responsive documents that reflect Mr. Leonhardt's tangential, hands-off role in approving compensation, among other innocuous communications. *E.g.,* Ex. 2. Every piece of "evidence" loanDepot claims supports its unique-knowledge theory shows that Mr. Leonhardt had limited-to-no involvement, simply saying "approved" as to sign-on bonuses in response to *two other* lower-level HR employees' requests, ECF 442-1 at 2, or was copied on emails where *other employees* discussed recruiting the Individual Defendants, without any comment from Mr. Leonhardt, ECF 440-6 at 2–4. The record is that Mr. Leonhardt rubber-stamped compensation proposed by other CCM employees who have already been deposed, not that he has any unique knowledge.[2]

As for the trip to Ohio, loanDepot's extensive questioning on that issue in *nearly every deposition* revealed that not only did Individual Defendants and Justin Lieberman attend along with other CCM employees, but Mr. Leonhardt's role was limited to one dinner, and perhaps a short greeting during presentations to the employees. Ex. 3 at 69:16–73:9 (testifying that about 8 Individual Defendants went on the trip, that they attended "information sessions" at CCM headquarters, that Lieberman "was the one who was making sure that everyone was there and who was going to be speaking," and that Mr. Leonhardt was present at a dinner "[t]he night before" the information sessions); *see also* Exs. 4, 5 (describing a casual dinner with Leonhardt, Lieberman, Reid, and Individual Defendants in attendance). loanDepot's supposed evidence only confirms the same—Mr. Leonhardt had limited involvement, and only briefly appeared during the trip. ECF Nos. 440-7, 442-2 (stating that attendees on the trip took Mr. Leonhardt's plane without him being present); ECF No. 440-8 at 80:3–81:15 (testimony that Lieberman and Reid took part in meetings with Individual Defendants, and that "people other than Ron Leonhardt" spoke as well). loanDepot's attempt to compare the *Guild* matter to the instant action ignores that the record established by their counsel in depositions *here* unequivocally shows that Mr. Leonhardt has no unique knowledge unobtainable from any of the lower-level CCM employees or the Individual Defendants.

   For the foregoing reasons, the Court should deny loanDepot's pre-motion letter to compel.

---

[2] loanDepot also asserts that only Mr. Leonhardt "can testify about how special financing positioned CCM to recruit the Departed NY Employees as part of an 'inorganic' growth strategy." ECF 440 at 3. loanDepot attempts to connect a statement *not made by any CCM employee* in a news article as if it has some direct relevance to the instant litigation. ECF 440-5 at 2 (quoting an Ares Credit Group partner generally describing an "organic and inorganic growth strategy"). Not only is a financial analyst's interpretation of CCM's general strategy irrelevant to the recruitment of the employees in this litigation, **Mr. Leonhardt never even said it**. There is no basis to depose Mr. Leonhardt on that statement.

JONES DAY

March 20, 2024
Page 4

                                        Respectfully submitted,

                                        *s/ Michael A. Platt*

                                        Michael A. Platt

cc:  All counsel of record (by ECF)