# JONES DAY

July 25, 2024

VIA ELECTRONIC CASE FILING

Hon. Sarah L. Cave, United States Magistrate Judge
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, New York, New York 10007-1312

Re: *loanDepot v. CrossCountry Mortgage*, No. 1:22-cv-05971-AS-SLC (S.D.N.Y.)

Dear Judge Cave:

Pursuant to Your Honor's July 18, 2024 Order (ECF No. 508), the Parties submit this joint status letter to advise the Court regarding outstanding discovery disputes ripe for the Court's attention. The Parties have met and conferred regarding the below dispute as between CCM and loanDepot, and respectfully submit each party's respective positions in anticipation of the July 29, 2024 conference:

A. **CCM's Position:** On April 9, 2024, the Court ordered loanDepot to investigate one specific loan to determine "(i) whether the Loan was referred to an internal loan consultant, (ii) whether the Loan was characterized as a 'corporate loan' (ECF No. 445 at 2), and (iii) the compensation Mr. Bonora and Stan Aleshin received in connection with the Loan." ECF No. 467 at 5. The Court further ordered that "[o]nce LD completes the investigation, LD shall produce the information to CC and the parties shall promptly meet and confer regarding what, if any, additional documents CC is seeking." *Id.* That Order related to CCM's request for documents in support of its affirmative defense of antecedent breach (*i.e.*, that loanDepot violated its compensation agreements with the Departed NY Employees, and the CFPB's Regulation Z, by mischaracterizing the Departed NY Employees' self-sourced loans as corporate loans or forcing those loans to be referred to ILCs, which reduced the Departed NY Employees' compensation). On July 2, 2024, loanDepot produced two commission sheets in response to the April 9, 2024 Order. Those documents showed that Mr. Aleshin was compensated correctly for that self-sourced loan. After further investigation by CCM, Mr. Aleshin is prepared to testify that the reason he was properly paid for that loan is that, in the face of his and Mr. Bonora's objections to referring that loan to an ILC (as reflected in ECF No. 445-3), their boss at loanDepot, Mark McGowen, relented and allowed the loan to be closed as a self-sourced loan. Messrs. Bonora and Aleshin are also prepared to testify that there were many other occasions in 2020 and 2021 when Mr. McGowen did not relent, resulting in loanDepot improperly compensating the Departed NY Employees. That also confirms CCM's position that allowing discovery on just a single loan was insufficient. Accordingly, pursuant to the second part of the Court's April 9, 2024 Order, CCM promptly met and conferred with loanDepot's counsel and made a reasonable and non-burdensome request for a discrete set of additional documents that are necessary to identify which loans were improperly mischaracterized as corporate loans or transferred to an ILC: a printout of loanDepot's commission statements for the Departed NY Employees from 2020 to 2021. Those are routine corporate records that are easily computer-generated and would list the commission that was paid to the Departed NY Employees on each loan, none of which requires any loan-by-loan examination before production. Nonetheless,

JONES DAY

July 25, 2024
Page 2

    loanDepot has refused to provide any additional discovery on this issue, even though this Court explicitly stated that "the parties can meet and confer, and if this is an issue that [CCM] wants to pursue more broadly . . . you'll have to let me know whether this is an issue that we still need to continue to pursue." 4/9/24 Tr. at pp. 66-67. CCM therefore has no choice but to ask the Court for its help in obtaining these highly relevant records, which will confirm the Departed NY Employees' anticipated testimony that loanDepot engaged in widespread misconduct that breached their employment agreements with loanDepot. loanDepot also improperly attempts to impugn the merits of CCM's affirmative defense, which has no place in deciding a discovery dispute. We look forward to discussing this issue at the July 29 conference.

B. **loanDepot's Position:**  On March 11, 2024, CCM filed a letter with the Court requesting sweeping discovery from loanDepot based on its speculative theory that loanDepot "falsely" designated self-generated loans as company-generated loans. ECF No. 445. loanDepot opposed on the grounds that CCM seeks irrelevant discovery on an unavailable affirmative defense; is engaged in a quintessential fishing expedition; and CCM's requests would interject a series of mini trials-within-a-trial. ECF No. 451; 4/9/24 Tr. at pp. 50-51. At the April 9 hearing, CCM identified only one loan, involving an email chain with Stan Aleshin, which it claimed was "evidence of illegality." *Id.*, pp. 53, 55. The Court asked CCM if there was any "similar type of chain" for "any of the other individual defendants." *Id.*, p. 53. CCM admitted that it was not aware of any. *Id.* ("I don't have that"). The Court acknowledged that CCM's requests would require a (burdensome) individualized, loan-by-loan analysis. Consequently, the Court correctly limited discovery to the one loan identified by CCM to see "whether there's any validity to Mr. Platt's illegality theory" which is the "only example… that's clear enough and narrow enough" for discovery. *Id.* at 65. The Court held that, thereafter, "the parties can meet and confer about whether there's anything else **specific to this loan**." *Id.* at 66 (emphasis added). The Court stated it was "very skeptical of opening the door to any, at this stage in discovery, a loan by loan examination as to the individual defendants… I haven't been persuaded by [CCM] that that's necessary or appropriate at this particular point in time." *Id.* at 67; *see also* ECF No. 467. In response to the Court's April 9 Order (ECF No. 467), loanDepot produced documents for the at-issue loan. As CCM now concedes, loanDepot's production and CCM's own investigation reveal that, despite previously claiming "evidence of illegality," Mr. Aleshin was **correctly compensated** for the at-issue loan. **There was nothing "illegal" about it**. Despite this, CCM continues to pursue additional voluminous discovery outside the scope of this specific loan, namely, individual commission statements for 24 different Former NY Employees for a period spanning two years. CCM's request should be denied. The same issues previously articulated by loanDepot, and noted by the Court, have not disappeared, and are still ever present (namely the irrelevance of the discovery, speculative nature of CCM's request, disproportionality, burden, and mini-trial issues). In addition, just because a loan might be corporate-generated (indeed, CCM itself has a designation for branch-generated loans) or handled by an ILC does not mean that it was "mischaracterized" in any way. Hence, CCM's sweeping, 24-person, two-year discovery requests do not even support its speculative theory. As Judge Subramanian recently held in upholding this Court's prior order limiting CCM's vast discovery requests, this Court may properly consider that prior discovery on a topic did

JONES DAY

July 25, 2024
Page 3

not yield a return (like the Aleshin loan here) (ECF No. 506), and we request that the Court deny CCM's request for irrelevant, disproportional, speculative, and burdensome discovery.

We appreciate the Court's attention to this matter.

Respectfully submitted,

*s/ Michael A. Platt*

Michael A. Platt

cc: All counsel of record (by ECF)